**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DARRYL COLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-1348** |
| **OCEANEERING INTERNATIONAL, INC.** | **SECTION: D (5)** |

**ORDER AND REASONS**

Before the Court is Huisman North American Services, LLC's Motion for Judgment on the Pleadings or, Alternatively, Motion for Partial Summary Judgment.[1]  Defendant, Oceaneering International, Inc., opposes the Motion,[2] and Huisman has filed a Reply.[3]  Plaintiff, Darryl Cole, filed a response to the Motion "to clarify alleged uncontested facts," noting that he "neither supports nor opposes" the motion.[4]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **GRANTED in part and DENIED in part.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This is a maritime personal injury case, and the motion before the Court concerns a dispute between Oceaneering International, Inc. ("Oceaneering") and Huisman North American Services, LLC ("Huisman") regarding Oceaneering's defense and indemnity claim asserted against Huisman in its Third-Party Complaint.[5]  Cole alleges that on or about the night of February 17, 2021, while

---

[1] R. Doc. 57.
[2] R. Doc. 61
[3] R. Doc. 78.
[4] R. Doc. 62 at p. 1.
[5] R. Doc. 14.

working as a crane operator for Oceaneering aboard the M/V OCEAN PATRIOT, he began to feel lightheaded, became dizzy, and vomited in the trash can in his quarters.[6] Cole alleges that he felt sick and vomited a second time around 2:00 a.m. that same night, and that at around 5:30 a.m. on February 18, 2021, he reported to the captain that he was feeling pain and numbness in his head, eyes, and neck, and was also experiencing dizziness, lightheadedness, and nausea.[7] Cole asserts that he asked to see the on-board medic, that he reported his symptoms to the medic around 6:00 a.m. on February 18, 2021, and that the medic who examined him diagnosed him with seasickness and an abscess in his mouth.[8] Cole alleges that for the remainder of the day on February 18, 2021 through February 19, 2021, the vessel was down due to bad weather, during which time he stayed in bed, but that his symptoms persisted and got worse.[9] Cole claims that he continued to complain to the medic who was checking in on him, and that the medic continued to give him crackers, antibiotics, and seasickness pills.[10]

Cole asserts that on February 20, 2021, he thought he felt good enough to relieve another crane operator for about half an hour so the other crane operator could have dinner, after which Cole returned to his bed.[11] Cole alleges that he tried to work his shift on February 21, 2021, but at around 9:00 a.m. he began feeling dizzy, lightheaded, nauseated, and had the same pain/numbness from his neck to his eyes,

---

[6] R. Doc. 1 at ¶ 8.
[7] *Id*. at ¶ 9.
[8] *Id*. at ¶¶ 10-11.
[9] *Id*. at ¶ 12.
[10] *Id*.
[11] *Id*. at ¶ 13.

and he vomited, became delusional, and fell in and out of consciousness during this time.[12]  Cole asserts that the medic thought he might have COVID-19, but that he tested negative twice.[13]  Despite his condition, Cole alleges that he was not evacuated from the vessel by helicopter until 3:00 p.m. on February 21, 2021, and that he was taken immediately to the emergency room at West Jefferson Medical Center, where it was determined that he had experienced a stroke.[14]

On July 15, 2021, Darryl Cole filed a Complaint for Damages in this Court against Oceaneering pursuant to the Jones Act, 46 U.S.C. § 30104, and general maritime law, asserting claims for Jones Act negligence, general maritime law negligence and unseaworthiness, general maritime law maintenance and cure, and negligence under Louisiana law.[15]  Although Huisman was not named as a defendant, Cole alleged in the Complaint that Huisman was his direct employer and that Oceaneering was his Jones Act employer at the time of his injuries.[16]  On December 27, 2021, with the Court's consent, Cole filed an Amended Complaint for Damages, naming Huisman as an additional defendant and asserting a claim for maintenance and cure benefits against Huisman.[17]  The Amended Complaint contains the same factual allegations regarding the events that transpired between February 17, 2021 and February 21, 2021.[18]

---

[12] *Id*. at ¶ 14.
[13] *Id*.
[14] *Id*. at ¶ 15.
[15] *Id*. at ¶¶ 20-42.
[16] *Id*. at ¶ 6.
[17] R. Docs. 16, 18, & 19.  R. Doc. 19 at ¶¶ 3, 22, 46-53.
[18] R. Doc. 19 at ¶¶ 9-17.

On December 20, 2021, also with the Court's consent, Oceaneering filed a Third-Party Complaint against Huisman, which is at the center of the instant dispute. [19]   Oceaneering asserts a claim for defense and indemnity, as well as attorney's fees and costs, against Huisman for any and all claims asserted by Cole against Oceaneering based upon the terms and conditions contained in the February 9, 2021 Purchase Order (the "2021 Purchase Order") entered into between Oceaneering and Huisman, through which Huisman was to supply a crane operator to Oceaneering.[20]   Oceaneering asserts that the crane operator supplied by Huisman was Darryl Cole.[21]   The Court notes that Oceaneering did not attach a copy of the 2021 Purchase Order to its Third-Party Complaint.[22]

In the instant Motion, Huisman asserts that it is entitled to judgment on the pleadings under Fed. R. Civ. P. 12(c) as to Oceaneering's defense and indemnity claim or, alternatively, that it is entitled to summary judgment on the claim.[23]   Huisman argues that it is entitled to judgment on the pleadings because, by its own terms, the 2021 Purchase Order relied upon by Oceaneering is preempted by a prior written contract under which Oceaneering and Huisman negotiated and agreed to the terms and conditions that would govern any future services Huisman provided to Oceaneering pursuant to an Oceaneering purchase Order.[24]   According to Huisman, the prior contract, executed on March 12, 2013 and titled "Mutual Indemnity and

---

[19] R. Docs. 12-14.
[20] R. Doc. 14 at ¶¶ 6-10 & 13.
[21] *Id*. at ¶ 7.
[22] *See, generally*, R. Doc. 14.
[23] R. Doc. 57 & R. Doc. 57-1 at pp. 12-13.
[24] R. Doc. 57-1 at p. 3.

Waiver Agreement" (hereafter, the "2013 MSA"), provides that Huisman will defend and indemnify Oceaneering only for injury and illness that "arises out of or is incident to the Services" Huisman might later agree to provide, which, in this instance, is "Crane Operations."[25]  Alternatively, if the terms and conditions of the 2021 Purchase Order apply, Huisman argues that it is entitled to summary judgment because there is no evidence that Cole's stroke arose out of or relates to the services for which Huisman conceivably agreed to indemnify Oceaneering.[26]

Oceaneering counters that the 2021 Purchase Order governs the relationship between the parties, as it specifies that its terms and conditions "***supersede*** *all representations, understandings, or agreements **and shall prevail** notwithstanding any variance with terms and conditions of any order submitted prior.*"[27]  Oceaneering further asserts that, "because Plaintiff was on the vessel by virtue of the Purchase Order, and thus subject to his crane duties, that he <u>was</u> performing a service of the contract at all times" and, as such, his injuries arise out of or relate to the services for which Huisman agreed to indemnify Oceaneering.[28]

## II.   LEGAL STANDARD

### A. Rule 12(c) Motion for Judgment on the Pleadings.

Pursuant to Fed. R. Civ. P. 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[29]  "A

---

[25] *Id*. ta pp. 3-5.
[26] R. Doc. 57 at p. 1; R. Doc. 57-1 at pp. 9-10 & 14-22.
[27] R. Doc. 61 at pp. 2-5 (*quoting* R. Doc. 61-2) (internal quotation marks omitted) (emphasis added by Oceaneering).
[28] R. Doc. 61 at pp. 7-8.  *See, Id.* at pp. 6-12.
[29] Fed. R. Civ. P. 12(c).

motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[30] According to the Fifth Circuit, the standard for deciding a Rule 12(c) motion for judgment on the pleadings "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[31]  In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[32]  Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[33]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[34]  The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed liberally."[35]

---

[30] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted).  *See*, *Addy's Burger, LLC v. Paradigm Investment Group, LLC*, Civ. A. No. 17-2400, 2018 WL 2569928, at *2 (E.D. La. June 4, 2018) (North, M.J.) (citing *Great Plains*, *supra*).

[31] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).

[32] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[33] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[34] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

[35] *Great Plains*, 313 F.3d at 312 (quotation and internal quotation marks omitted).

**B.  Rule 56 Motion for Summary Judgment.**

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[36]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[37]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[38]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[39]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[40]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court

---

[36] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[37] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

[38] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

[39] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[40] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[41]

## III.   ANALYSIS

### A. Huisman is Not Entitled To Judgment on the Pleadings under Rule 12(c).

At the outset, the Court notes that both parties rely extensively upon documents outside the pleadings to support their position regarding Huisman's request for judgment on the pleadings under Fed. R. Civ. P. 12(c).  Specifically, the parties rely upon the 2021 Purchase Order and the 2013 MSA.  Although the Court is normally prohibited from considering documents beyond the pleadings in this context, the rules governing Rule 12(b)(6) motions to dismiss apply, and those rules allow the Court to consider documents outside of the complaint or, in this instance, Oceaneering's Third-Party Complaint, when they are: (1) attached to the motion; (2) referenced in the Third-Party Complaint; and (3) central to Oceaneering's claims.[42] The Court finds that while the 2021 Purchase Order meets all three of these requirements, since it was attached to the Motion,[43] it is referenced in the Third-Party Complaint,[44] and it is central to Oceaneering's defense and indemnity claim,[45] the 2013 MSA does not meet the requirements because it is not referenced in the Third-Party Complaint or central to Oceaneering's claims.[46]  Huisman has not cited

---

[41] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[42] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[43] R. Doc. 57-7.
[44] R. Doc. 14 at ¶¶ 6-9.
[45] *Id.* at ¶¶ 6-11.
[46] *See, generally*, R. Doc. 14.  *See also*, R. Doc. 57-9.

any authority indicating that this Court may consider documents outside of the pleadings that do not fit within the three parameters set forth above.  As such, and because the sole basis of Huisman's argument in favor of obtaining a judgment on the pleadings is that the 2013 MSA preempts the terms and conditions of the 2021 Purchase Order, the Court finds that Huisman has failed to show that it is entitled to judgment on Oceaneering's defense and indemnity claim based upon the pleadings. Accordingly, the Motion is denied to the extent that Huisman requests a judgment on the pleadings under Rule 12(c).

### B. Huisman is Entitled To Summary Judgment.

Alternatively, Huisman asserts that it is entitled to summary judgment regarding Oceaneering's defense and indemnity claim because Cole's injuries do not arise out of or relate to services for which Huisman conceivably agreed to indemnify Oceaneering under the 2021 Purchase Order.[47]  Pointing to the 2013 MSA between itself and Oceaneering, Huisman asserts that, "to the extent it is enforceable," it requires Huisman to provide defense and indemnity for an injury, illness, death, damage, or loss that "arises out of or is incident to the services."[48]  Huisman claims that indemnity agreements are strictly construed in this Circuit[49] and that, "courts within the Fifth Circuit have repeatedly recognized a more limited scope for agreements that contain limiting phrases like 'arising out of or incident to.'"[50]

---

[47] R. Doc. 57 at p. 1.

[48] R. Doc. 57-1 at pp. 14-15 (*quoting* R. Doc. 57-9 at p. 2, ¶ 2) (internal quotation marks omitted).

[49] R. Doc. 57-1 at p. 15 (quoting *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986)).

[50] R. Doc. 57-1 at p. 15 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 590-91 (5th Cir. 1986); *Int'l Marine, LLC v. Integrity Fisheries, Inc.*, 860 F.3d 754, 759 (5th Cir. 2017)).

Relying upon *Marathon Pipe Line Co. v. M/V Sea Level II* and *International Marine, LLC v. Integrity Fisheries, Inc.*, Huisman argues that the Fifth Circuit has held that indemnity is only possible where an injury occurs during a contractor's performance of services, and even then it is only enforceable where there is a causal connection between the two.[51]   Huisman asserts that no crane operations were being performed when Cole suffered his stroke, nor when Pharma-Safe's medic allegedly provided him substandard care.[52]   Huisman contends that, because its potential for liability is possible only during its performance of services under the contract with Oceaneering, no indemnity is owed here.[53]

Huisman further asserts that the Fifth Circuit has repeatedly applied the causal connection requirement of *Marathon Pipe* in the personal injury context, including in *Smith v. Tenneco Oil Co., Lanasse v. Travelers Insurance Co.*, and *Hobbs v. Teledyne Movible Offshore, Inc.*[54]   Huisman contends that in all three cases, the Fifth Circuit found that limiting language prevented enforcement of an indemnity provision where the potential indemnitor's performance of its services did not contribute to the injury.[55]   Huisman argues that the same outcome is required here, where Huisman's obligation to indemnify Oceaneering is not triggered where the crane operation services it agreed to provide did not cause, and were not underway,

---

[51] R. Doc. 57-1 at pp. 15-18 (citing *Marathon Pipe*, 806 F.2d at 590-91; *Int'l Marine*, 860 F.3d at 758-61).
[52] R. Doc. 57-1 at p. 18.
[53] *Id.*
[54] *Id.* at pp. 18-20 (citing *Smith*, 803 F.2d 1386 (5th Cir. 1986); *Lanasse*, 450 F.2d 580 (5th Cir. 1971); *Hobbs*, 632 F.2d 1238 (5th Cir. 1980)).
[55] R. Doc. 57-1 at p. 19.

when Cole was allegedly injured by the negligence of a different contractor, Pharma-Safe.[56]

Finally, Huisman asserts that there is no evidence to suggest that Cole's claim against Oceaneering arises from or is incident to the crane operation services Huisman agreed to provide.[57]   Huisman points to the deposition testimony of Dr. David Khoobehi, who reviewed an MRI of Cole's head the day after he was taken to the emergency room at West Jefferson General Hospital and determined that Cole had suffered a left posterior inferior cerebellar artery ("L PICA") stroke.[58]   According to Huisman, Dr. Khoobehi was asked during his deposition what caused Cole's stroke, and he opined that the most likely cause was Cole's lifestyle and risk factors, including his uncontrolled diabetes and smoking.[59]   Huisman claims that the mere fact that Cole was on the M/V OCEAN PATRIOT to perform work under the 2013 MSA does not trigger Huisman's obligation to provide indemnity to Oceaneering for an illness or misdiagnosis that was "not even remotely related" to Huisman's services.[60]   Huisman further asserts that Oceaneering's demand for defense and indemnity runs afoul of the foreseeability standard applied by *Marathon Pipe* and its progeny, and that when Huisman agreed to provide a crane operator onboard the M/V

---

[56] R. Doc. 57-1 at p. 20.   Huisman asserts that both the onboard medic, Keith Thompson, and the shoreside physician that he consulted regarding Cole's care are employees of Pharma-Safe, "a non-party to this suit contracted by Oceaneering to provide medical services onboard the [M/V] OCEAN PATRIOT."   *Id.* at pp. 1-2.   While Pharma-Safe was not named as a defendant in the Amended Complaint, the Court allowed Huisman to file a Third-Party Complaint against Pharma-Safe.   *See,* R. Docs. 27, 101, & 108.

[57] R. Doc. 57-1 at pp. 9 & 20.

[58] *Id.* at pp. 9-10 (*citing* R. Doc. 57-17 at pp. 2-3 & 4).

[59] R. Doc. 57-1 at pp. 9-10 (*citing* R. Doc. 57-17 at pp. 4-5, 6-8, 9, 10-11, 12, 16, & 17).

[60] R. Doc. 57-1 at p. 20.

OCEAN PATRIOT, it was not foreseeable that he would suffer a stroke, seek medical care from another contractor of Oceaneering, be continually misdiagnosed by Oceaneering's contracted paramedic and medical doctor over the course of three days, and be placed on bed rest rather than taken to shore for further evaluation and treatment.[61]  As such, Huisman asserts that it is entitled to summary judgment dismissing all claims asserted by Oceaneering in its Third-Party Complaint.

Oceaneering asserts that because Cole was only aboard its vessel by virtue of the 2021 Purchase Order, Cole "was subject to crane duties at any given time," and that, "This constitutes a continuous service such that any claims by Plaintiff occurring aboard the vessel would be deemed to be services under the Purchase Order."[62]  Oceaneering contends that the Fifth Circuit broadly construes indemnity agreements with provisions like "arising in connection herewith" or "arising out of or incident to the work to be performed under this contract" as unambiguously encompassing all activities reasonably incident or anticipated by the principal activity of the contract.[63]  Oceaneering points out that the indemnity obligations in the 2021 Purchase Order are broad, and further asserts that Huisman's reliance upon *Marathon Pipe* and *Int'l Marine* is misplaced because Oceaneering does not dispute that potential liability under indemnity provisions is only possible during the

---

[61] R. Doc. 57-1 at p. 21.  Huisman argues that it was Pharma-Safe that agreed to indemnify Oceaneering from "any liability for damages or injury caused by or resulting from negligent or intentional acts or omissions by Pharma-Safe, its employees or agents."  *Id*. (*quoting* R. Doc. 57-13 at ¶¶ 1 & 6, and the appended Cost Proposal).

[62] R. Doc. 61 at p. 2.

[63] *Id*. at p. 6 (quoting *Fontenot v. Mesa Petroleum co.*, 791 F.2d 1207, 1214-15 (5th Cir. 1986) (internal quotation marks omitted)).

contractor's performance of services under the contract.[64]   Instead, Oceaneering contends that because Cole was on the vessel by virtue of the 2021 Purchase Order, he was subject to his crane duties and was performing a service of the contract at all times.[65]

Oceaneering further asserts that, "longstanding Fifth Circuit precedent holds that 'it is irrelevant that the person is not at that moment performing services or that the injury results from an activity not encompassed by the employer's contractual undertakings.'"[66]   Oceaneering again emphasizes that Cole was only aboard the M/V OCEAN PATRIOT to perform services in furtherance of Huisman's 2021 Purchase Order with Oceaneering.[67]   Oceaneering asserts that, "Huisman cannot avoid its contractual responsibilities simply because Plaintiff was not performing the specific services contemplated by the Purchase Order at the moment of injury, as such attempts to do so have been rejected by the Fifth Circuit."[68]   As such, Oceaneering asserts that Huisman is not entitled to a partial summary judgment on its defense and indemnity claim.

The bulk of Huisman's Reply brief addresses why the 2013 MSA governs Oceaneering's defense and indemnity claim and whether the 2021 Purchase Order defers to or supersedes the 2013 MSA.[69]   Huisman then argues that, regardless of which terms and conditions apply, it does not owe indemnity to Oceaneering because

---

[64] R. Doc. 61 at p. 7.
[65] R. Doc. 61 at pp. 7-8.
[66] *Id*. at p. 8 (quoting *Fontenot*, 791 F.2d at 1215).
[67] R. Doc. 61 at p. 8.
[68] *Id*.
[69] R. Doc. 78 at pp. 1-6.

Cole's stroke arose completely independent of Huisman's crane operation services.[70] Huisman asserts that Oceaneering's Opposition brief ignores the *Smith*, *Hobbs*, and *Lanasse* cases cited in its Motion, and also ignores the result and reasoning in *Int'l Marine*, which recognized a key exception to *Fontenot* that Huisman contends is applicable to this case.[71]  Namely, the Fifth Circuit in *Int'l Marine* held that, "It is only when the alleged indemnitor's contractual performance is *completely independent* of another party's negligent act that caused damage that we apply a limitation to this general rule."[72]  Huisman also claims that Oceaneering ignored the rule announced in *Marathon Pipe*, and recognized in *Int'l Marine*, that indemnity is owed only where there is a causal connection between the injury and the performance of services.[73]  Huisman maintains that there is no evidence that Cole's stroke, or the delay in his treatment, were related in any way to the crane operator services Huisman agreed to provide.[74]  As such, Huisman asserts that it is entitled to summary judgment and dismissal of Oceaneering's defense and indemnity claim.

While Oceaneering and Huisman disagree regarding which terms and conditions govern Oceaneering's defense and indemnity claim – the 2013 MSA or the 2021 Purchase Order – the Court need not reach that issue because both documents contain the same limiting language in their indemnity provisions.  Namely, they both provide that Huisman agrees to "INDEMNIFY AND HOLD HARMLESS"

---

[70] *Id*. at p. 6.
[71] R. Doc. 78 at p. 7.
[72] *Id*. (quoting *Int'l Marine, LLC v. Integrity Fisheries, Inc.*, 860 F.3d 754, 761 (5th Cir. 2017)) (internal quotation marks omitted).
[73] R. Doc. 78 at pp. 7-8 (citing *Int'l Marine,* 860 F.3d at 760 n.1).
[74] R. Doc. 78 at pp. 9-10.

Oceaneering "from any and all suits, claims, losses, costs, damages, expenses . . . or liability . . . arising out of, as a result of or in connection with this Purchase Order or any goods supplied or services rendered hereunder . . . ."[75] Thus, the only question before the Court is whether Oceaneering has raised a genuine issue of material fact regarding whether Cole's stroke arose out of or was incident to the crane operating services Huisman agreed to provide for Oceaneering. The Court concludes that it has not.

The Fifth Circuit squarely addressed the scope of maritime indemnity provisions in *International Marine, LLC v. Integrity Fisheries, Incorporated*, which involved a similar indemnity provision containing the "arising out of" language.[76] In *Int'l Marine*, Tesla Offshore, LLC ("Tesla") was tasked with performing a sonar survey in the Gulf of Mexico and contracted with the owners of two vessels to provide the services, including a tow vessel (the M/V INTERNATIONAL THUNDER) and a chase vessel (the F/V LADY JOANNA).[77] In the master service agreements ("MSA's") governing these contractual relationships, the JOANNA's owners agreed to defend and indemnify Tesla for damage to third-party property "arising out of or related in any way to the operation of any vessel owned . . . by [JOANNA's owners] . . . to perform work under this agreement except to the extent such loss, harm, infringement, destruction, or damages is caused by [Tesla's or its contractor's] gross negligence or willful misconduct."[78] During the survey operation, a "towfish" attached to a cable

---

[75] R. Doc. 57-19 at p. 1, ¶ 9; *See,* R. Doc. 57-9 at p. 2, ¶ 2.
[76] 860 F.3d 754 (5th Cir. 2017).
[77] 860 F.3d at 757.
[78] *Id.* at 758 (internal quotation marks omitted).

and towed by the THUNDER collided with an underground mooring cable, giving rise to a third-party's damage claim for which Tesla demanded indemnity from the JOANNA's owners.[79]  The district court granted summary judgment in favor of the JOANNA's owners, concluding that the claims for damages "did not arise out of, and are not related to, the operation of the F/V LADY JOANNA."[80]

On appeal, the Fifth Circuit affirmed, explaining that, "Under federal maritime law, an indemnity contract covers losses within the contemplation of the parties but not those which are 'neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.'"[81]  The *Int'l Marine* court further explained that, "We look to the contract as a whole and can only look beyond the contract if there is an ambiguity."[82]  "[W]e have broadly construed language identical or similar to the 'arising in connection herewith' language in [the agreement at issue] to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract."[83]  Pertinent to the instant case, the Fifth Circuit clarified that, "Though broad, however, such an undertaking is not limitless."[84]  The *Int'l Marine* court further cautioned that, "When one party's negligent contractual

---

[79] *Id*. at 757.
[80] *Id*. at 758.
[81] *Id*. at 760 (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).
[82] *Int'l Marine*, 860 F.3d at 759 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).
[83] *Int'l Marine*, 860 F.3d at 759 (quoting *Fontenot*, 791 F.2d at 1214) (internal quotation marks omitted).
[84] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986) (rejecting a construction that would "read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on [the company's] pipeline")).

performance causes third party property damage independent of the alleged indemnitor's contractual performance, indemnity is usually not required absent a clear indication that the parties agreed to such an unusual undertaking."[85]

The Fifth Circuit in *Int'l Marine* then reviewed its prior holding in *Marathon Pipe Line Co. v. M/V Sea Level II*, and observed that, "We explained [in *Marathon Pipe*] that the contract could not 'be read in a vacuum to apply to any situation for which a colorable argument could be made that loss of property was somehow related to Oceanonics' services under the contract.'"[86] The Fifth Circuit held that, like in *Marathon Pipe*, the negligence of Tesla and the THUNDER's owners and the resulting property damage were independent of the operation of the JOANNA.[87] The Fifth Circuit in *Int'l Marine* held that the principal activity of the contract between Tesla and the JOANNA's owners was for the JOANNA's owners to operate the JOANNA as a chase vessel, and that the "MSAs are clear" that damage "must relate to or arise out of the operation of the JOANNA before an indemnity obligation arises."[88] The Fifth Circuit further held that, "Nothing about the JOANNA's successful operation as a chase vessel . . . related to Tesla's decisions to redeploy the towfish near the NAUTILUS and take the route back toward the grid that caused an allision with a submerged mooring line."[89] The Fifth Circuit in *Int'l Marine* found that the "undisputed evidence" showed that Tesla and THUNDER's owners "were

---

[85] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591).
[86] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591).
[87] *Int'l Marine*, 860 F.3d at 760.
[88] *Int'l Marine*, 860 F.3d at 760.
[89] *Id.*

solely responsible" for the towfish and the actions leading up to the allision, and held that, "Indemnity is not owed merely because Tesla and [the THUNDER's owners] were negligent during the survey, in the absence of the requisite connection to the JOANNA's operation."[90]   The Fifth Circuit then held that, "Because the summary judgment evidence supports only the conclusion that the JOANNA's operation made no contribution to the negligent act causing the NAUTILUS's damages, indemnity is not owed under the MSA's."[91]   In doing so, the Fifth Circuit concluded that, "To be clear, we continue to subscribe to the general rule articulated in *Fontenot* that indemnity agreements containing language such as 'arising out of' should be read broadly,"[92] but cautioned that, "It is only when the alleged indemnitor's contractual performance is *completely independent* of another party's negligent act that caused damage that we apply a limitation to this general rule."[93]

Applying *Int'l Marine* to the facts of this case, the Court finds that Oceaneering has failed to raise a genuine issue of material fact regarding whether Cole's stroke "arose out of" or "relates to" the crane operator services for which Huisman conceivably agreed to indemnify Oceaneering.   The Fifth Circuit has repeatedly held that the "arising under" language at issue in Oceaneering's indemnity provision should be "broadly construed . . . to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the

---

[90] *Id.*
[91] *Id.* at 760-61.
[92] *Id.* at 761 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).
[93] *Int'l Marine,* 860 F.3d at 761 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986) (emphasis in original).

contract."[94]  Oceaneering, however, has failed to direct the Court to any evidence or legal authority suggesting that a stroke constitutes an activity "reasonably incident or anticipated by the principal activity of the contract," which, in this case, is Cole's crane operation services.

Instead, Oceaneering contends that, under *Fontenot*, Cole's mere presence aboard the M/V OCEAN PATRIOT as a result of the 2021 Purchase Order "constitutes a continuous service such that any claims by Plaintiff occurring aboard the vessel would be deemed to be services under the Purchase Order."[95]  The Fifth Circuit flatly rejected that argument in *Marathon Pipe*, concluding that, "This view of the contract, however, would have us read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on TETCO's pipeline."[96]  The Fifth Circuit reasoned that, "The contract language in question, while broad, cannot be read in a vacuum to apply to any situation for which a colorable argument could be made that loss of property was somehow related to Oceanonics' services under the contract."[97]  In *Int'l Marine*, the Fifth Circuit reaffirmed its ruling in *Marathon Pipe*, finding that, while broad, the "arising out of" language in an indemnity provision "is not limitless."[98]  The Court reaches the same conclusion in this case.  Oceaneering asks this Court to take the untenable position of ignoring the "arising out of, as a

---

[94] *Int'l Marine*, 860 F.3d at 759 (quoting *Fontenot*, 791 F.2d at 1214) (internal quotation marks omitted).
[95] R. Doc. 61 at pp. 2, 7-8, & 8.
[96] *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986).
[97] *Id*.
[98] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986)).

result of or in connection with this Purchase Order or any goods supplied or services rendered" language contained in the indemnity provision and find that "any claims by Plaintiff occurring aboard the vessel would be deemed to be services under the Purchase Order."[99]  The Court declines that invitation, which runs contrary to clear Fifth Circuit authority, as set forth above.  Relying upon that authority, namely *Marathon Pipe* and *Int'l Marine*, which Oceaneering curiously did not address at all in its Opposition brief, despite the fact that Huisman extensively relied on both cases in support of its Motion, the Court rejects as completely baseless Oceaneering's contention that Cole's stroke arose out of his crane operating services merely because he was on the M/V OCEAN PATRIOT at the time it occurred.

The Court further agrees with Huisman that the Fifth Circuit requires a causal connection between Cole's stroke and the services that Huisman agreed to provide to Oceaneering under the 2021 Purchase Order.[100]  Oceaneering has failed to produce any evidence showing that Cole's stroke was caused by his crane operator duties.  In contrast, Huisman has provided the Court with a portion of the deposition testimony of Dr. David Khoobehi, who reviewed an MRI of Cole's head the day after he was taken to the emergency room at West Jefferson General Hospital and determined that Cole had suffered a left posterior inferior cerebellar artery ("L PICA") stroke.[101]

---

[99] R. Doc. 61 at p. 2.
[100] *See, Int'l Marine*, 860 F.3d at 761 (citing *Marathon Pipe,* 806 F.2d at 592) ("Indemnity is not owed merely because Tesla and International were negligent during the survey, in the absence of the requisite connection to the JOANNA's operation."); *Marathon Pipe*, 806 F.2d at 592 ("The district court's finding, which we affirm, that Oceanonics' involvement in such an effort–marking all pipelines– did not cause the accident and did not contribute to Turner's decision to drop the anchor across Marathon's pipeline also ends the viability of this position.").
[101] R. Doc. 57-17 at pp. 2-3 & 4.

When asked what caused Cole's stroke, Dr. Khoobehi initially suggested three possible causes: (1) atherosclerosis from Cole's chronic and poorly controlled diabetes, smoking, and high cholesterol, combined with risk factors such as Cole's age and ethnicity; (2) a dissection or "cut" in Cole's artery that caused a clot to form; or (3) a congenital feature in Cole's heart called a patent foramen ovale or "PFO."[102]  Dr. Khoobehi subsequently testified that, based on his review of the cardiology records, Cole did not have a PFO, an angiogram found no evidence of a dissection, and the most likely cause of Cole's stroke was his lifestyle and risk factors, including his uncontrolled diabetes and smoking.[103]  Dr. Khoobehi further testified that, "nothing related to his job caused a stroke."[104]  Oceaneering does not address this testimony in its Opposition brief, nor has it offered any evidence to contradict this testimony.  As such, the undisputed evidence before the Court is that Cole's stroke was not caused by anything related to his job as a crane operator aboard the M/V OCEAN PATRIOT or the services Huisman agreed to provide to Oceaneering.

Additionally, in *Marathon Pipe* and *Int'l Marine*, the Fifth Circuit made clear that, "When one party's negligent contractual performance causes third party property damage independent of the alleged indemnitor's contractual performance, indemnity is usually not required absent a clear indication that the parties agreed to such an unusual undertaking."[105]  Here, as in *Marathon Pipe* and *Int'l Marine*, Cole's stroke and the alleged negligence of the onboard paramedic and shoreside physician

---

[102] R. Doc. 57-17 at pp. 4-5, 7-8, 9, 12, & 16.
[103] *Id.* at pp. 13-14, 15, & 16.
[104] *Id.* at p. 12.
[105] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591).

who misdiagnosed his stroke as seasickness, a mouth abscess, and/or COVID-19 occurred independently of Huisman's provision of crane operator services.  There is no evidence before the Court indicating that Oceaneering sought, and Huisman agreed, to such an "unusual undertaking" of Huisman agreeing to indemnify Oceaneering for *any* injury or illness that Cole might experience while aboard the M/V OCEAN PATRIOT, regardless of its connection to his duties as a crane operator. The Fifth Circuit has expressly "refused to extend the reach of an indemnity provision beyond the intent of the parties to the agreement where the undertaking urged would create 'an unusual and surprising obligation.'"[106]  The Court finds that obligating Huisman to provide a defense and indemnity for Cole's claims stemming from a stroke would create such an "unusual and surprising obligation."

As in *Marathon Pipe,* this Court declines to characterize Cole's stroke as "arising out of, as a result of or in connection with [the 2021 Purchase Order] or any goods supplied or services rendered."  While Oceaneering claims that, "Huisman cannot avoid its contractual responsibilities simply because Plaintiff was not performing the specific services contemplated by the Purchase Order at the moment of injury, as such attempts to do so have been rejected by the Fifth Circuit,"[107] Oceaneering cites no legal authority to support its assertion.  To the extent Oceaneering may be relying upon *Fontenot* for this position, the Court has already pointed out that the Fifth Circuit explicitly rejected such a construction of *Fontenot*

---

[106] *Marathon Pipe,* 806 F.2d at 591 (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).
[107] R. Doc. 61 at p. 8.

in *Marathon Pipe*, and reaffirmed that position in *Int'l Marine*.[108]  Accordingly, Oceaneering has failed to raise a genuine issue of material fact as to whether Cole's stroke arose out of or in connection with his crane operator services aboard the M/V OCEAN PATRIOT, and the Court finds that Huisman is entitled to summary judgment on Oceaneering's defense and indemnity claim.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Huisman North American Services, LLC's Motion for Judgment on the Pleadings or, Alternatively, Motion for Partial Summary Judgment[109] is **GRANTED in part and DENIED in part.**  The Motion is **GRANTED** to the extent that Huisman seeks summary judgment as to the defense and indemnity claim of Oceaneering International, Inc. asserted in its Third-Party Complaint,[110] and that claim is **DISMISSED WITH PREJUDICE.**  The Motion is otherwise **DENIED.**

New Orleans, Louisiana, March 31, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[108] *See*, *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591 (rejecting a construction that would "read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on [the company's] pipeline.") (internal quotation marks omitted).
[109] R. Doc. 57.
[110] R. Doc. 14.