## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARRYL COLE**                                                    **CIVIL ACTION**

**VERSUS**                                                         **NO. 21-1348**

**OCEANEERING INTERNATIONAL, INC.**              **SECTION: D (5)**

## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Reconsideration of Order Granting Motion for Summary Judgment, filed by Darryl Cole.[1] Defendant, Oceaneering International, Inc. ("Oceaneering"), opposes the Motion,[2] and Cole has filed a Reply.[3] Cole seeks reconsideration of this Court's April 26, 2023 Order and Reasons, in which the Court granted Oceaneering's Motion for Partial Summary Judgment and dismissed with prejudice Cole's Jones Act claims on the basis that Cole was not a Jones Act seaman.

Also before the Court is Plaintiff's Motion for Partial Summary Judgment on Jones Act Status.[4] Oceaneering opposes that Motion, adopting the arguments made and evidence submitted in support of its Motion for Partial Summary Judgment,[5] and Cole has filed a Reply.[6]

After careful consideration of the parties' memoranda and the applicable law, Cole's Motion for Reconsideration is **GRANTED**, the Court's prior Order and Reasons

---

[1] R. Doc. 206.
[2] R. Doc. 213.
[3] R. Doc. 217.
[4] R. Doc. 67.
[5] R. Doc. 85 (*citing* R. Docs. 45 & 80). The Court notes that Oceaneering refers to its prior Reply brief as "Rec. Doc. 65," but R. Doc. 65 was marked as deficient and re-filed into the record as R. Doc. 80.
[6] R. Doc. 99.

is **VACATED in part,** Oceaneering's Motion for Partial Summary Judgment is **DENIED,** and Cole's Motion for Partial Summary Judgment on Jones Act Status is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns a maritime personal injury.  The pertinent facts and procedural history of this case were fully recited in the Court's April 26, 2023 Order and Reasons,[7] and will not be restated herein.  In that Order and Reasons, the Court concluded that Cole failed to raise a genuine dispute regarding his status as a Jones Act seaman.  Applying the two-part substantial connection test set forth in *Chandris, Inc. v. Latsis*, the Court concluded that while Cole's work as a crane operator aboard the M/V OCEAN PATRIOT, which was owned and operated by Oceaneering, contributed to the function of the vessel and the accomplishment of its mission as a diving support vessel,[8] Cole's connection to the M/V OCEAN PATRIOT was not substantial in duration based upon Cole's time aboard Oceaneering vessels during his three-year employment with his direct employer, Huisman North American Services, LLC ("Huisman").[9]  The Court did not address whether Cole's connection to the M/V OCEAN PATRIOT was substantial in nature, since that issue was not addressed by the parties.[10]

---

[7] R. Doc. 205.
[8] *Id*. at pp. 7-9.
[9] *Id*. at pp. 9-21.  *See, Chandris, Inc. v. Latsis*, 515 U.S. 347, 368-72, 115 S.Ct. 2172, 2189-92, 132 L.Ed.2d 314 (1995).
[10] *See*, R. Doc. 45.

### A. Cole's Motion for Reconsideration

Cole moves for reconsideration of the Court's April 26, 2023 Order and Reasons, arguing that the Court erred in concluding that he does not satisfy the duration prong of the *Chandris* substantial connection test on the basis that he did not spend 30% of his total time employed by Huisman working aboard Oceaneering vessels.[11]  Cole asserts that because there is no evidence that he was a land-based employee, the *Chandris* test is not applicable in this case.[12]  Cole points to *Meaux v. Cooper Consolidated, LLC*, a case in which another Section of this Court found the *Chandris* 30% analysis irrelevant where, like here, the plaintiff was not a land-based employee and spent 100% of his time working aboard a vessel for his Jones Act employer.[13]  Cole urges the Court to reach the same result in this case, since it is undisputed that he was not a land-based worker and spent 100% of his time working on vessels at sea.[14]  Cole also asserts that the Court erred in discounting the analysis employed by the district court in *Bayham v. Grosse Tete Well Serv., Inc.*, claiming that it remains relevant authority and supports his position that he was a seaman at the time of his injuries.[15]

Cole further argues that if the Court insists on applying the *Chandris* 30% analysis to his employment period with Huisman rather than Oceaneering, his

---

[11] R. Doc. 206-1 at pp. 1-3 & 4-6.  As explained later in this Order, the Supreme Court in *Chandris* adopted the Fifth Circuit's general rule of thumb that a worker who spends less than about 30% of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act.  515 U.S. at, 115 S.Ct. at 2191.

[12] R. Doc. 206-1 at pp. 4-5.

[13] *Id*. at pp. 4-7 (citing *Meaux*, 477 F. Supp. 3d 515, 529 (E.D. La. 2020)).

[14] R. Doc. 206-1 at pp. 4-5 & 7.

[15] *Id*. at pp. 10-12 (citing *Bayham*, Civ. A. No. 11-1815, 2012 WL 1865737, at *5-6 (E.D. La. May 22, 2012) (Fallon, J.)).

reassignment from Hornbeck Offshore Services LLC ("Hornbeck") vessels to Oceaneering's M/V OCEAN PATRIOT was a fundamental change in assignment.[16] Cole claims that this change in assignment "either establishes Mr. Cole's seaman status as a matter of law or at the very least raises a fact question regarding whether Mr. Cole was permanently assigned to the DSV Ocean Patriot and/or whether that was a change in assignment that would provide an exception to the 30% test."[17]  Cole further asserts that the Court, in reviewing its prior Order and Reasons, should address the six pending motions and cross-motions filed by Cole and Oceaneering regarding seaman status, vicarious liability, and borrowed servant status, which Cole contends are intertwined.[18]

Oceaneering opposes the Motion, asserting that Cole merely recites the same arguments that were before the Court when it issued its April 26, 2023 Order and Reasons, which arguments are unsupported by summary judgment evidence.[19] Oceaneering claims that in ruling on its Motion for Partial Summary Judgment, this Court properly considered all undisputed facts, as supported by the evidence in this case, the Court's ruling was proper, and Cole has not established a legitimate justification for the immediate reconsideration of the Court's April 26, 2023 Order and Reasons.  Oceaneering further asserts that Cole ignores the undisputed fact that he was merely a land-based worker who happened to be on an Oceaneering vessel at the time of his injuries, thereby rendering application of the *Chandris* 30% analysis

---

[16] R. Doc. 206-1 at pp. 14-16.
[17] *Id.* at p. 16.
[18] *Id.* (*citing* R. Docs. 45, 52, 55, 67, 70, & 71).
[19] R. Doc. 213 at pp. 1-2.

relevant and critical to the analysis of his seaman status.[20]  Oceaneering points out that Cole was never permanently assigned to Oceaneering's vessels and that he is an itinerant worker who had multiple, transitory, and different assignments to many distinct, unrelated vessels over the course of his employment with Huisman.[21] Oceaneering argues that *Meaux* makes clear that the 30% test applies in such circumstances, and the fact remains that Cole does not satisfy the substantial duration element of the Jones Act seaman test.[22]  Oceaneering further asserts that granting reconsideration would result in unnecessary delay of this case, which is set for trial in July 2023.[23]  Oceaneering notes that Cole is not left without a remedy, as he could qualify as a longshoreman under the Longshore and Harbor Workers' Compensation Act, and that he maintains a right to appeal the Court's decision.[24]

In response, Cole maintains that he is not a land-based worker and points out that Oceaneering did not claim that he was a land-based worker in its Statement of Uncontested Facts filed with its Motion for Partial Summary Judgment.[25]  Cole asserts that Oceaneering has already admitted that he was assigned to the M/V OCEAN PATRIOT,[26] and further claims that the only remaining question is whether

---

[20] *Id.* at p. 5.
[21] *Id.* at pp. 6-7.
[22] *Id.* at p. 7 (citing *Meaux v. Cooper Consolidated, LLC*, 477 F. Supp. 3d 515, 526 (E.D. La. 2020)).
[23] R. Doc. 213 at p. 9.  The Court notes that Oceaneering filed its Opposition brief on May 8, 2023.  On May 18, 2023, the Court continued the trial until August 15, 2023 in order to address the Motion for Reconsideration.  R. Doc. 218.
[24] R. Doc. 213 at p. 10.
[25] R. Doc. 217 at pp. 3-4 (*citing* R. Doc. 45-5).
[26] R. Doc. 217 at pp. 5-6 (*citing* R. Doc. 58-10 at p. 2 & R. Doc. 58 at p. 2).

that assignment was more or less permanent, as that term is used by the Fifth Circuit.[27]

### B. Cole's Motion for Partial Summary Judgment on Jones Act Status

Like Oceaneering, Cole also moved for partial summary judgment on his status as a Jones Act seaman.[28]   Cole's arguments in support of summary judgment are similar to the arguments raised in his Motion for Reconsideration, namely that he is a seaman because he was a crane operator assigned to a diving support vessel and only worked aboard the vessel performing tasks essential to the mission and purpose of the vessel.[29]   Cole asserts that the *Chandris* 30% analysis does not apply in this case because he was not a land-based worker who spent some of his time working on vessels and some of his time working shoreside.[30]   Relying upon *Bayham*, Cole argues that he is a seaman because he "spent 100% of his working time in the service of vessels for the entirety of his employment with Huisman."[31]   Cole claims that one hitch aboard the M/V OCEAN PATRIOT would have been sufficient to satisfy the permanence aspect of his assignment, and that, "[t]wo hitches in a row is decidedly a significant amount of time."[32]   Because he was scheduled to work on the M/V OCEAN PATRIOT for an additional two hitches, Cole argues his connection to the vessel was

---

[27] R. Doc. 217 at p. 5.

[28] R. Doc. 67.

[29] R. Doc. 67-2 at p. 8.

[30] *Id*. at pp. 7-9 (citing *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Bayham v. Grosse Tete Well Serv., Inc.*, Civ. A. No. 11-1815, 2012 WL 1865737, at *5 (E.D. La. May 22, 2012)).

[31] R. Doc. 67-2 at p. 9 (*citing* R. Doc. 67-5 at ¶ 6).  *See,* R. Doc. 67-2 at pp. 8-10 (citing *Bayham*, Civ. A. No. 11-1815, 2012 WL 1865737 at *5-6).

[32] R. Doc. 67-2 at p. 10-12 (citing *Joseph v. Marine Mgmt. Contractors, Inc.*, Civ. A. No. 06-0405, 2007 WL 1964527, at *8 (S.D. Tex. July 3, 2007) (Johnson, M.J.)).

substantial in nature.[33]  Cole further asserts that he satisfies the first prong of the *Chandris* substantial connection test because he was undeniably doing the ship's work, his crane operation contributed to the mission and purpose of the M/V OCEAN PATRIOT, and he was part of the M/V OCEAN PATRIOT's crew.[34]

In its Opposition brief, Oceaneering asserts that Cole's arguments "are essentially a recitation of the arguments raised by Plaintiff in response to Oceaneering's earlier filed Motion for Partial Summary Judgment on the same issues of seaman status (Rec. Doc. 45)."[35]  As such, "Oceaneering submits that its Motion (Rec. Doc. 45) and Reply Memorandum in support thereof (Rec. Doc. 65) . . . should collectively serve as an Opposition to Plaintiff's cross-motion on those very same issues (Rec. Doc. 67)."[36]  Relying on its prior briefing, Oceaneering maintains that Cole does not qualify as a Jones Act seaman because he lacked the requisite connection to a vessel, or identifiable group of vessels, at the time of his alleged injuries.[37]  Oceaneering furth asserts that it "will submit additional briefing on the issue of Plaintiff's Jones Act seaman status should the Court so desire."[38]

In response, Cole first asserts that Oceaneering failed to rebut his Statement of Uncontested Material Facts, which should be deemed admitted for purposes of his Motion.[39]  Cole argues that Oceaneering is bound by its own admission that Huisman

---

[33] R. Doc. 67-2 at p. 12.
[34] *Id.* at pp. 12- 13.
[35] R. Doc. 85 at p .1.
[36] *Id.*
[37] *Id.*
[38] *Id.* at p. 2.
[39] R. Doc. 99 at pp. 1-6 (*citing* R. Doc. 67-1).

assigned him to the M/V OCEAN PATRIOT,[40] and further claims that Oceaneering has failed to present any evidence to contradict Cole's statements in his affidavit that he did not perform any land-based work while employed by Huisman or while assigned to the M/V OCEAN PATRIOT.[41]  Cole also points out that Oceaneering failed to submit any evidence to contradict Cole's statement in his affidavit that he ate and slept on the M/V OCEAN PATRIOT for the entirety of his two hitches aboard the vessel.[42]  Cole asserts that both Oceaneering's answer to a request for admission and the testimony of Robert Thompson, Huisman's corporate representative, demonstrate that he was assigned to the M/V OCEAN PATRIOT.[43]  Cole maintains that because he was never a land-based employee, the *Chandris* 30% analysis is not applicable, and that the issue before the Court is whether he was permanently assigned to the M/V OCEAN PATRIOT.[44]  Cole reiterates that he was assigned to the M/V OCEAN PATRIOT for two hitches, that he had been requested for two additional hitches after that, and that he did all of his work aboard the vessel, thereby making his assignment to the vessel dispositive of the question of seaman status.[45]

## II.  LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of

---

[40] R. Doc. 99 at p. 2 (*citing* R. Doc. 99-1 at p. 2).
[41] R. Doc. 99 at pp. 3-4 (citing *C.R. Pittman Const. Co., Inc. v. National Fire Ins. Co. of Hartford*, 453 Fed.Appx. 439, 443-44 (5th Cir. 2011)).
[42] R. Doc. 99 at p. 4.
[43] *Id*. at pp. 4-5.
[44] *Id*. at pp. 6-7.
[45] *Id*. at pp. 7-8.

law.[46]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[47]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[48]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[49]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[50]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[51]

---

[46] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[47] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[48] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[50] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[51] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**B. Reconsideration Under Fed. R. Civ. P. 54(b)**[52]

Cole seeks reconsideration of the Court's April 26, 2023 Order and Reasons granting Oceaneering's Motion For Partial Summary Judgment pursuant to Fed. R. Civ. P. 54(b).[53]  Rule 54(b) provides, in pertinent part, that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Under Rule 54(b), "the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."[54]  Whether to grant a motion to reconsider under Rule 54(b) "rests within the discretion of the court."[55]  The Fifth Circuit has held that Rule 54(b) is "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires."[56]  Thus, a court conducting a Rule 54(b) inquiry may consider new arguments that could have been previously raised.[57]

---

[52] While Cole seeks reconsideration under Fed. R. Civ. P. 54(b), Oceaneering, in its Opposition brief, suggests that the Court apply the Rule 59(e) analysis.  *See,* R. Doc. 213.  The Court finds it appropriate to consider the Motion for Reconsideration under Rule 54(b).

[53] R. Doc. 206-1 at pp. 3-4.

[54] *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds*, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)) (internal quotation marks omitted).

[55] *Namer v. Scottsdale Insur. Co.*, 314 F.R.D. 392, 393 (E.D. La. 2016) (Africk, J.) (quoting *Bernard v. Grefer*, Civ. A. No. 14-887, 2015 WL 3485761, at *5 (E.D. La. June 2, 2015) (Fallon, J.)) (internal quotation marks omitted).

[56] *Austin*, 864 F.3d at 336-37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)) (internal quotation marks omitted).

[57] *McClendon v. United States*, 892 F.3d 775, 781-82 (5th Cir. 2018) (citing *Austin*, 864 F.3d at 337).

## III.   ANALYSIS

### A. Jones Act Seaman Status.

The Jones Act grants a "seaman" injured in the course of employment a cause of action against his employer in negligence.[58]  The term "seaman" is not defined in the Jones Act.[59]  As such, "A plaintiff claiming the benefits of the Jones Act bears the burden of establishing seaman status." [60]  The Supreme Court has held that determining seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury."[61]  "If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of the crew,' it is a question for the jury."[62]  Thus, summary judgment is appropriate when the law and undisputed material facts support only one reasonable inference.[63]

According to the Supreme Court, seamen "owe their allegiance to a vessel and not solely to a land-based employer."[64]  It is "well settled" that, "the Jones Act inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and

---

[58] *Sanchez v. Smart Fabricators of Texas, LLC*, 997 F.3d 564, 568-69 (5th Cir. 2021) (en banc) (*citing* 46 U.S.C. § 30104).

[59] *See*, 46 U.S.C. § 30104.

[60] *Crochet v. Morton Salt, Inc.*, 433 F. Supp. 3d 977, 984 (W.D. La. 2020) (citing *Becker v. Tidewater, Inc.*, 335 F.3d 376, 390 (5th Cir. 2003)).

[61] *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554, 117 S.Ct. 1535, 1540, 137 L.Ed.2d 800.  *See*, *Becker*, 335 F.3d at 386 (same).

[62] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 369, 115 S.Ct. 2172, 2190, 132 L.Ed.2d 314 (1995) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991)).

[63] *Harbor Tug*, 520 U.S. at 554, 117 S.Ct. at 1540 (quoting *Wilander*, 498 U.S. at 356, 111 S.Ct. at 818).

[64] *Chandris*, 515 U.S. at 359, 115 S.Ct. at 2185 (quoting *Wilander*, 498 U.S. at 347, 111 S.Ct. at 813) (internal quotation marks omitted).

seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." [65]   Additionally, "In evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ 'a "snapshot" test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.'"[66]   "Thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured."[67]

The Supreme Court in *Chandris* established a two-prong test for determining seaman status.[68]  First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission."[69]  The Supreme Court has made clear that, "this threshold requirement is very broad" and extends "to those maritime employees who do the ship's work."[70]  Second, the employee "must have a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial in terms of both its duration and its nature."[71]  According to the Supreme Court:

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory

---

[65] *Chandris*, 515 U.S. at 363, 115 S.Ct. at 2187.

[66] *Id.* (quoting *Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)).

[67] *Chandris*, 515 U.S. at 363, 115 S.Ct. at 2187 (citing *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1256 (3rd Cir. 1994)).

[68] *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

[69] *Id.* (quoting *Wilander*, 498 U.S. at 355, 111 S.Ct. at 817) (internal quotation marks omitted).

[70] *Chandris*, 515 U.S. at 368, 115 S.Ct. at 2190.

[71] *Id.*

or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.[72]

Additionally, "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on a vessel at a given time."[73]

In determining the substantial duration aspect of the *Chandris* substantial connection test, the Supreme Court has adopted the Fifth Circuit's general rule of thumb that, "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act."[74] The Supreme Court clarified that, "This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases."[75] The Fifth Circuit recently overhauled the standard applicable for determining whether a worker satisfies the substantial in nature aspect of the *Chandris* test. In *Sanchez v. Smart Fabricators of Texas, LLC*, the Fifth Circuit, sitting en banc, expressly overruled the panel decision in *Naquin v. Elevating Boats, LLC*[76] and called into question the panel decision in *In re Endeavor Marine, Inc.*[77] to the extent they held that the substantial in nature prong was

---

[72] *Id.* (citation omitted).
[73] *Id.*, 515 U.S. at 370, 115 S.Ct. at 2190-91.
[74] *Id.*, 515 U.S. at 371, 115 S.Ct. at 2191.
[75] *Id.*
[76] 744 F.3d 927, 932 (5th Cir. 2014).
[77] 234 F.3d 287, 291 (5th Cir. 2000).

satisfied if the plaintiff was exposed to the "perils of the sea."[78]  The Fifth Circuit in *Sanchez* held that, in addition to asking whether a worker was subject to the perils of the sea, courts must also make the following inquiries:

> (1) Does the worker owe his allegiance to the vessel, rather than simply to a shoreside employer?
> (2) Is the work sea-based or involve seagoing activity?
> (3) (a) Is the worker's assignment to a vessel limited to performance of a discrete task after which the worker's connection to the vessel ends, or (b) Does the worker's assignment include sailing with the vessel from port to port or location to location?[79]

## B. Reconsideration of the Court's April 26, 2023 Order and Reasons Granting Oceaneering's Motion for Partial Summary Judgment.

Cole seeks reconsideration of the portion of this Court's April 26, 2023 Order and Reasons in which the Court determined that he is not a Jones Act seaman because he does not satisfy the duration prong of the *Chandris* substantial connection test.  Neither party contests the Court's determination that Cole meets the first prong of the test—namely, that Cole's duties as a crane operator contributed to the function of the M/V OCEAN PATRIOT and to the accomplishment of its mission.[80]  As such, that portion of the Court's prior ruling remains intact.  The parties likewise do not seek reconsideration or review of the Court's decision to not address the substantial in nature prong of the *Chandris* test, which was not addressed by the parties.[81]  Thus, the only portion of the Court's prior ruling that is now at issue is the Court's

---

[78] *Sanchez*, 997 F.3d 564, 573 (5th Cir. 2014).
[79] *Id*. at 574.
[80] R. Doc. 205 at pp. 7-9.  *See, generally*, R. Docs. 206, 213, & 217.
[81] R. Doc. 205 at p. 21, n.107.  *See, generally*, R. Docs. 45-1, 58, & 80.

determination that Cole does not satisfy the substantial duration element of the *Chandris* substantial connection test.[82]

After further review of the pertinent Fifth Circuit authority on the issue, specifically *Meaux v. Cooper Consolidated, LLC*,[83] the Court finds it appropriate to reconsider its ruling regarding whether Cole's connection to the M/V OCEAN PATRIOT was substantial in duration.  The plaintiff in *Meaux*, Jonathan R. Meaux, was hired by Savard Labor & Marine Personnel, Inc. d/b/a Savard Labor & Marine Personnel, Inc. ("Savard") in January 2019 to work at Cooper Consolidated LLC ("Cooper") as a flagger and utility man in the service of crane barges owned and operated by Cooper.[84]  After attending an orientation conducted at Cooper's office on January 3, 2019, Meaux began work the next day as a flagger and utility man on several of Cooper's crane barges.[85]  On February 19, 2019, Meaux was injured while working as a deckhand on one of Cooper's barges and sustained injuries to his neck and head.[86]  As a result of his injuries, Meaux sued both Savard and Cooper, alleging that he was a Jones Act seaman and Cooper's borrowed employee, and sought damages for negligence under the Jones Act, 46 U.S.C. § 30104, maintenance and cure, and punitive damages and attorney's fees for Cooper and Savard's failure to pay such benefits.[87]  Alternatively, if the court determined that he was not a Jones Act

---

[82] The Court addresses the substantial in nature prong of the *Chandris* test in its analysis of Cole's Motion for Partial Summary Judgment.  *See,* Section III (C), herein.

[83] 477 F. Supp. 3d 515 (E.D. La. 2020) (hereafter, *"Meaux I"*).

[84] *Meaux I*, 477 F. Supp. 3d at 520.

[85] *Id*.

[86] *Id*. at 520-21.

[87] *Id*. at 521 (citations omitted).

seaman, Meaux sought benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA").[88]

Meaux and Cooper filed cross-motions for summary judgment on seaman status, with Cooper arguing that Meaux was not a seaman because he lacked a connection to a Cooper vessel or fleet of vessels that was substantial in both nature and duration.[89]  The district court concluded that Meaux was a Jones Act seaman, finding, with respect to the first *Chandris* factor, that all of his work was performed over water while in the service of a Cooper vessel and advanced the function and mission of the vessel.[90]  Turning to the substantial duration element, the court found that, "there is no summary-judgment evidence that Meaux did ***any*** work on land or as a crewmember of any non-Cooper vessel, so as to make the *Chandris* 30-percent analysis relevant."[91]  The court explained that, "All of Meaux's work was performed as a crewmember of a Cooper barge.  Thus, no hours tallying is necessary to conclude that the durational aspect of the vessel-connection requirement is readily satisfied."[92]  Although Cooper and Savard went "to great lengths to analyze the percentage of time Meaux physically spent aboard the Cooper barges as opposed to the time he was physically positioned on the non-Cooper vessels being loaded and unloaded to perform

---

[88] *Id*. at 521-22.  Although not mentioned in the opinion, Meaux alleged in his First Supplement [sic] and Amended Complaint for Damages that he "was a Jones Act seaman and employee of defendant Cooper (borrowing employer) and/or Savard (hiring employer)."  *See*, R. Doc. 4 at ¶ IV in *Jonathon R. Meaux v. Cooper Consolidated, LLC, et al.*, Civ. A. No. 19-10628 (E.D. La.).
[89] *Meaux I*, 477 F. Supp. 3d at 522.
[90] *Id*. at 526.
[91] *Id*. (emphasis in original).
[92] *Id*.

his assigned duties as a signalman for the crane operators on the Cooper barges," the *Meaux* court found that, in doing so, Cooper and Savard "miss the point."[93]

The court explained that, "the purpose of the duration test is to determine whether the employee's attachment to a vessel was substantial. Here, Meaux's was since it was permanent: for the entire period of his employment, he was assigned as a crewmember to one of Cooper's barges (except for a brief period of training)."[94] The court further explained that, "This is not an instance (like cases involving wireline operators or similar itinerant maritime workers) in which an employee might have multiple transitory and different assignments to many distinct unrelated vessels over the course of his or her employment."[95] The court held that, "even while physically located on the non-Cooper vessels, just yards away from and always visible to the Cooper barges, Meaux was still doing the work of the Cooper barges as a permanently-assigned member of their crews."[96] The court further found that Meaux satisfied the substantial in nature requirement because in performing his work, he was regularly exposed to the perils of the sea.[97] As such, on the issue of seaman status, the court granted Meaux's motion for summary judgment and denied Cooper's cross-motion for summary judgment.[98]

---

[93] *Id.*

[94] *Id.*

[95] *Id.* (citing authority).

[96] *Id.* at 527.

[97] *Id.* (citing *In re Endeavor Marine, Inc.*, 234 F.3d 287, 291-92 (5th Cir. 2000); *Naquin v. Elevating Boats, LLC*, 744 F.3d 927, 934-35 (5th Cir. 2014)). The Court notes that *Meaux I* was decided before the Fifth Circuit revised the substantial in nature test in *Sanchez v. Smart Fabricators of Texas, LLC*, 997 F.3d 564 (2021).

[98] *Meaux I*, 477 F. Supp. 3d at 527.

Cooper moved for reconsideration under Fed. R. Civ. P. 54(b), arguing that the court had erred by concluding that Meaux satisfied the duration prong of the *Chandris* test when he did not spend 30% of his total time employed by Cooper physically aboard the Cooper barges.[99]  Cooper also argued that the court had erred in finding that Meaux's connection to its barges was substantial in nature, since he was doing classic longshore work and was not exposed to the perils of the open seas.[100] The court denied the motion, explaining that while it had been "careful to apply the *Chandris* test" in its prior Order and Reasons, it was unnecessary to confine the hours tallied to only those Meaux spent aboard Cooper's barges because: (1) there was no summary-judgment evidence that he did any land-based work or was assigned as a crewmember of a non-Cooper vessel; and (2) all of Meaux's work was performed in furtherance of the mission of the Cooper barges.[101]  As such, the court reaffirmed its finding that, "Meaux's connection to the Cooper vessels was substantial (very nearly 100% of his time), not sporadic, transitory, or intermittent."[102]  The court further held that, "seaman status turns on being 'in the service' of the vessel or fleet of vessels," and that, "since both parties agree that Meaux's entire employment with Cooper (except orientation) was spent aboard Cooper's barges or the vessels they were loading or unloading while 'in the service' of the mid-stream cargo-handling function and mission of the Cooper crane barges, Meaux has satisfied the duration prong of

---

[99] *Meaux v. Cooper Consolidated, LLC*, Civ. A. No. 19-10628, 2020 WL 5436572, at *1 (E.D. La. Sept. 10, 2020) (Ashe, J.) (hereafter, "*Meaux II*").
[100] *Id*.
[101] *Id*. at *2.
[102] *Id*. (citation omitted).

the *Chandris* test."[103]  The court also reaffirmed its finding that Meaux satisfies the nature prong of the *Chandris* test because he was exposed to the perils of the sea.[104] As a result, the court denied Cooper's motion for reconsideration, as well as Cooper's alternative request to certify interlocutory appeal.

Cooper subsequently filed a renewed motion for reconsideration of the court's order regarding Meaux's seaman status.[105]  This time around, Cooper argued that reconsideration was appropriate because Meaux could not meet the nature prong of the seaman status test as articulated by the Fifth Circuit in *Sanchez v. Smart Fabricators of Texas, LLC*.[106]  On June 25, 2021, the court, finding that the motion was "well-taken and the issue of the nature of Meaux's connection to a vessel or identifiable fleet of vessels is a close call after *Sanchez*," concluded that Meaux was a seaman because he satisfied the *Sanchez* test "although just barely."[107]  As such, the court denied Cooper's renewed motion for reconsideration.  The court, however, found that interlocutory appeal of the question of Meaux's seaman status was "warranted at this juncture."[108]  The Fifth Circuit denied Cooper's motion for leave to appeal from the district court's interlocutory order on July 26, 2021.[109]

---

[103] *Id*. at *3.
[104] *Id*. at *4.
[105] *Meaux v. Cooper Consolidated, LLC*, 545 F. Supp. 3d 383 (E.D. La. 2021) (hereafter, "*Meaux III*").
[106] *Id*. at 386 (citing *Sanchez*, 997 F.3d 564 (5th Cir. 2021)).
[107] *Meaux III*, 545 F. Supp. 3d at 388.
[108] *Id*. at 390.
[109] *See*, R. Doc. 123 in *Jonathon R. Meaux v. Cooper Consolidated, LLC, et al.*, Civ. A. No. 19-10628 (E.D. La.).  The Court notes that after a bench trial, the *Meaux* court concluded that Meaux was not a Jones Act seaman because the evidence presented at trial established that the balance of the *Sanchez* factors weighed against seaman status.  *See*, R. Doc. 159 at p. 18, ¶ 16 in *Jonathon R. Meaux v. Cooper Consolidated, LLC, et al.*, Civ. A. No. 19-10628 (E.D. La.).

While not cited by either party in connection with Oceaneering's Motion for Partial Summary Judgment, which was the subject of the Court's April 26, 2023 Order and Reasons,[110] the Court finds the decisions in *Meaux* instructive regarding whether and how to apply the *Chandris* 30% analysis when the alleged Jones Act employer is not the plaintiff's direct employer.  At the outset, the Court notes that it is not immediately apparent from *Meaux I* whether the substantial connection analysis was limited to Meaux's length of employment with Savard (his direct employer) or Cooper (his alleged Jones Act/borrowed employer).[111]  That may be because Meaux was hired by Savard "[i]n January 2019," attended an orientation conducted by a Cooper employee at a Cooper's office on January 3, 2019, and "began work the next day as a flagger and utility man in the service of crane barges owned and operated by Cooper."[112]  Thus, unlike in the instant case, Meaux began working for his alleged Jones Act employer almost immediately after he was hired by his direct employer.

Nonetheless, in its two subsequent rulings on Cooper's motions for reconsideration, the *Meaux* court clarified that it had previously held that:

> Meaux's connection to Cooper's barges was substantial in terms of both its nature and duration because, *for the entire period of his employment with Cooper* (except orientation), he was always assigned to Cooper's barges to assist in their cargo handling, even when physically aboard the non-Cooper cargo vessels to perform his duties of signaling the crane operators on Cooper's barges to safely load and unload the vessels, and

---

[110] *See,* R. Docs. 45, 45-1, 58, & 80.
[111] *See, generally*, *Meaux I*, 477 F. Supp. 3d 515, 524-27 (E.D. La. 2020).
[112] *Id*. at 520.

this work regularly exposed him to the perils of the sea (the Mississippi River).[113]

In reviewing Cooper's first motion for reconsideration, the *Meaux* court further clarified that, "since both parties agree that Meaux's *entire employment with Cooper* (except orientation) was spent aboard Cooper's barges or the vessels they were loading or unloading while 'in the service' of the mid-stream cargo-handling function and mission of the Cooper crane barges, Meaux has satisfied the duration prong of the *Chandris* test."[114]  In its review of Cooper's renewed motion for reconsideration, the court reiterated that Meaux satisfied the substantial duration prong because "Meaux spent *all of his employment with Cooper* (except orientation) assigned to and working on or from its crane barges."[115]  Thus, in applying the *Chandris* substantial connection test, the *Meaux* court considered only the length of Cole's employment with his alleged Jones Act employer, not his direct employer.

The Court agrees with the well-reasoned analysis conducted by the court in *Meaux* regarding how to apply the *Chandris* substantial connection test when the alleged Jones Act employer is not the plaintiff's direct employer.  The Court therefore finds that in determining whether Oceaneering is entitled to summary judgment regarding Cole's seaman status, the Court must apply the *Chandris* substantial connection test in the context of Cole's employment with his alleged Jones Act employer, Oceaneering, and *not* his nearly three-year employment with his direct

---

[113] *Meaux II*, Civ. A. No. 19-10628, 2020 WL 5436572 at *1 (E.D. La. Sept. 10, 2020) (emphasis added); *Meaux III*, 545 F. Supp. 3d 383, 386 (E.D. La. 2021) (emphasis added).
[114] *Meaux II*, Civ. A. No. 19-10628, 2020 WL 5436572 at *3 (emphasis added).
[115] *Meaux III*, 545 F. Supp. 3d at 386 (emphasis added).

employer, Huisman.[116]   According to the evidence submitted in connection with Oceaneering's Motion for Partial Summary Judgment, Cole was employed by Huisman in November 2017, and later Huisman assigned Cole to the M/V OCEAN PATRIOT.[117]   The evidence further shows that Cole worked two hitches aboard the M/V OCEAN PATRIOT from December 11, 2020 to January 14, 2021 and from February 9, 2021 to February 21, 2021.[118]   Accordingly, in reconsidering Oceaneering's Motion for Partial Summary Judgment regarding Cole's seaman status, the Court will apply the *Chandris* substantial connection test to Cole's work for Oceaneering aboard the M/V OCEAN PATRIOT between December 11, 2020 and February 21, 2021.

In doing so, the Court expressly rejects Oceaneering's suggestion that Cole's nearly three-year employment with Huisman is relevant to the *Chandris* substantial connection test.   Oceaneering cites no legal authority supporting its contention that this Court should look beyond Cole's employment with his alleged Jones Act employer in applying the substantial connection test, and this Court has found none.   As Cole correctly points out,[119] the cases relied upon by this Court in its April 26, 2023 Order and Reasons to reach the opposite conclusion involve claims brought against a Jones Act employer who was also the plaintiff's direct employer, thereby rendering the

---

[116] *See, Chandris, Inc. v. Latsis*, 515 U.S. 347, 372, 115 S.Ct. 2172, 2191, 132 L.Ed.2d 314 (1995) ("When a maritime worker's basic assignment changes, his seaman status may change as well.").  *See also*, *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1077 (5th Cir. 1986) (Rubin, J., dissenting) ("An assignment to work as a crew member, like the voyage of a vessel, may be brief, and the *Robison* test is applicable in deciding the worker's status during any such employment.").
[117] R. Doc. 45-2 at p. 1; R. Doc. 58-10 at p. 2.
[118] R. Doc. 45-3.  There is also evidence before the Court showing that Oceaneering had requested Cole for two additional hitches "in April and again in July" of 2021.  *See*, R. Doc. 45-2 at p. 4.
[119] R. Doc. 206-1 at pp. 9-10.

employment period with the direct employer relevant to the substantial connection analysis.[120]  Because Cole has not alleged that his direct employer, Huisman, is also his Jones Act employer, the foregoing cases are inapposite.  The Court further notes that the two Fifth Circuit cases cited by Oceaneering to support its position likewise involve Jones Act claims brought by a plaintiff against his direct employer.[121]  As such, the Court remains convinced that the correct approach is the one taken by the *Meaux* court, and the one now taken by this Court, which considered only the plaintiff's length of employment with his alleged Jones Act employer in determining whether he was a Jones Act seaman.

Turning to the substantial duration prong of the substantial connection test, the Court agrees with Cole that the 30% analysis is not applicable here because, like in *Meaux*, there is <u>no</u> evidence before the Court that Cole was a land-based employee. Oceaneering has not submitted any evidence, nor is there any in the record, showing that Cole performed work on land at any time during his employment with Huisman, either before or after his assignment to the M/V OCEAN PATRIOT in December 2020.[122]  There is also no evidence before the Court that Cole was assigned to any non-Oceaneering vessel after December 11, 2020.  Instead, the evidence submitted by Oceaneering shows that Cole worked aboard the M/V OCEAN PATRIOT for 48 days

---

[120] *See,* R. Doc. 205 at pp. 10-17 (citing *Sanchez v. Smart Fabricators of Texas, LLC,* 997 F.3d 564 (5th Cir. 2021); *Sanchez v. American Pollution Control Corp.,* 542 F. Supp. 3d 446 (E.D. La. 2021); *Barlow v. BP Expl. & Prod., Inc.,* Civ. A. No. 12-2248, 2022 WL 3221822 (E.D. La. Aug. 8, 2022) (Fallon, J.); *Perez v. Aquaterra Contracting, LLC,* 593 F. Supp. 3d 444 (E.D. La. 2022); *Johnson v. Cooper T. Smith Stevedoring Co., Inc.,* 610 F. Supp. 3d 867, 871-72 (M.D. La. 2022); *Blanda v. Cooper/T. Smith Corp.,* 599 F. Supp. 3d 385, 397 (M.D. La. 2022)).

[121] R. Doc. 45-1 at pp. 7-10 (citing *Roberts v. Cardinal Servs., Inc.,* 266 F.3d 368 (5th Cir. 2001); *Sanchez,* 997 F.3d 564); R. Doc. 80 at pp. 2-3 (citing *Roberts, supra; Sanchez, supra*).

[122] *See, generally,* R. Docs. 45, 45-1, 45-2, 45-3, 45-4, 45-5, 80, & 80-1.

between December 11, 2020 and February 21, 2021.[123]   The Court notes that Oceaneering relied on that evidence to assert that Cole worked aboard the M/V OCEAN PATRIOT "for a combined total of 48 days."[124]  Thus, there is no dispute between the parties that after December 2020, Cole did not perform any work on land or on any non-Oceaneering vessels.  Because there is no summary judgment evidence suggesting that Cole performed any work on land or that he spent "only a small fraction of his working time on board a vessel," the Court need not determine whether the time Cole spent aboard the M/V OCEAN PATRIOT satisfies the temporal requirement of *Chandris* by applying the 30% analysis.[125]  The undisputed evidence shows that while working aboard the M/V OCEAN PATRIOT, Cole was a sea-based maritime employee.

The evidence also shows that Huisman assigned Cole to the M/V OCEAN PATRIOT in December 2020.  Oceaneering vehemently denies that Cole was ever assigned to the M/V OCEAN PATRIOT because Thompson, Huisman's corporate representative, testified during his deposition that, "No one is assigned specifically to a vessel."[126]  As Cole points out,[127] however, in response to a request for admission propounded by Cole, Oceaneering admitted that, "plaintiff was employed by Huisman North America Services *who assigned him to the OCEAN PATRIOT*."[128]  Federal Rule of Civil Procedure 36 governs requests for admissions and provides that, "A matter

---

[123] R. Doc. 45-3.
[124] R. Doc. 45-1 at p. 5 (*citing* R. Doc. 45-3).
[125] *Chandris, Inc. v. Latsis*, 515 U.S. 347, 371, 115 S.Ct. 2172, 2191, 132 L.Ed.2d 314 (1995).
[126] R. Doc. 45-1 at pp. 5 & 6 (*citing* R. Doc. 45-2 at p. 4).
[127] R. Doc. 58 at p. 8, n.20 (*citing* R. Doc. 58-10 at p. 2).
[128] R. Doc. 58-10 at p. 2 (emphasis added).

admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."[129] Additionally, "Rule 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment."[130] The Fifth Circuit has held that, "A party who makes an admission, whether express or by default, is bound by that admission for summary judgment purposes–not even contrary evidence can overcome an admission at the summary judgment stage."[131] Thus, Oceaneering is bound by its admission that Huisman assigned Cole to the M/V OCEAN PATRIOT.

The evidence before the Court further shows that Cole was a member of the crew of the M/V OCEAN PATRIOT. Cole provided a copy of the M/V OCEAN PATRIOT's Daily Vessel Log, dated February 13, 2021, that includes "Darryl Cole" in the list of the "Vessel Crew."[132] Oceaneering does not address or otherwise dispute this evidence in its Reply brief.[133] While Thompson testified during his deposition that, "No one is assigned specifically to a vessel," he also stated that, "Once deployed to Oceaneering or to Hornbeck or to wherever, once he's on that boat, he's theirs until otherwise."[134] When asked to elaborate on that statement, Thompson testified that, "Once an employee is out there, they're out there for that client, for that hitch, for

---

[129] Fed. R. Civ. P. 36(b).
[130] *In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) (*citing* Fed. R. Civ. P. 56(c)); *Poon-Atkins v. Sappington*, No. 21-60467, 2022 WL 102042, at *1 (5th Cir. Jan. 10, 2022) (*citing* Fed. R. Civ. P. 56(c)).
[131] *Poon-Atkins*, No. 21-60467, 2022 WL 102042 at *1 (citing *In re Carney*, 258 F.3d at 420).
[132] R. Doc. 58-9.
[133] *See, generally,* R. Doc. 80.
[134] R. Doc. 58-7 at p. 3.

whatever the terms of the contract.  That employee is theirs at that point,"[135] and that, "while he was with Oceaneering, he's with Oceaneering."[136]

Thompson further testified that, "When the [crane] operator is on board, he melds into the crew and he becomes part of whatever they want or however they instruct him to do it."[137]  Thompson testified that with respect to a crane operator like Cole, "We send him out there, he's to be part of the crew and do anything the crew asks, within reason," and that, "He is to meld in and function as part of the crew, replacing their own operator."[138]  Thompson further explained that, "there are two Oceaneering crane operators that are directly employed by Oceaneering.  There is a rental operator by me.  Those crane operators are part of the crew.  He's part of the crew."[139]  Oceaneering does not contest or otherwise dispute this evidence in its Reply brief.[140]  The Court therefore finds that the undisputed evidence shows that Cole was a member of the crew of the M/V OCEAN PATRIOT.  Further, because the undisputed evidence shows that Cole worked exclusively aboard the M/V OCEAN PATRIOT once his assignment began on December 11, 2020, the Court finds that he was "permanently assigned" to that vessel, as contemplated by the Jones Act.[141]  The Court's finding is further buttressed by the Fifth Circuit's determination that, "We

---

[135] *Id*. at pp. 3-4.
[136] *Id*. at p. 4.
[137] *Id*. at p. 5.
[138] *Id*. at p. 9.
[139] *Id*. at pp. 10-11.
[140] Despite Oceaneering's assertions to the contrary, the evidence of record, including evidence submitted by Oceaneering, shows that Cole was also requested for two additional hitches with Oceaneering after February 21, 2021.  *Id*. at pp. 2-3; R. Doc. 45-2 at p. 4.
[141] *Bayham v. Grosse Tete Well Service Inc.*, Civ. A. No. 11-1815, 2012 WL 1865737, at *5 (E.D. La. May 22, 2012).

have recognized that performing a substantial part of one's work aboard a vessel or identifiable fleet offers an alternative ground for meeting the permanency requirement."[142]

Based on the evidence of record, the Court finds that Cole's connection to the M/V OCEAN PATRIOT was substantial in duration. To the extent the Court reached the opposite conclusion in its April 26, 2023 Order and Reasons,[143] that portion of the ruling is vacated and Oceaneering's Motion for Partial Summary Judgment[144] is denied.[145]

**C. Cole's Motion for Partial Summary Judgment on Jones Act Status.**

Because the Court previously determined that Cole satisfies the first element of the *Chandris* substantial connection test[146] and the Court has now determined that Cole satisfies the substantial duration prong of the second element, and Oceaneering did not submit any additional arguments or evidence regarding these two issues in its Opposition to Cole's Motion,[147] the only remaining issue before the Court with respect to Cole's Motion is whether he satisfies the substantial nature prong of the second element of the *Chandris* test. In *Sanchez v. Smart Fabricators of Texas, LLC*,

---

[142] *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 432 (5th Cir. 1984) (citing *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 326 (5th Cir. 1977); *Bertrand v. Int'l Mooring & Maritime, Inc.*, 700 F.2d 240, 246 (5th Cir. 1983)). While the Fifth Circuit's decision in *Wallace* pre-dates *Chandris*, the Court finds the Fifth Circuit's reasoning relevant to the instant dispute.

[143] R. Doc. 205.

[144] R. Doc. 45.

[145] The Court notes that it would have reached the same conclusion even if the *Chandris* 30% analysis were applicable to the facts of this case. According to the evidence submitted by Oceaneering, of the 73 days during which Cole was assigned to the M/V OCEAN PATRIOT (between December 11, 2020 and February 21, 2021), he spent 48 days, or 65% of his time, aboard the M/V OCEAN PATRIOT. R. Doc. 45-3. As such, the Court remains convinced that Cole's attachment to the M/V OCEAN PATRIOT was substantial in duration.

[146] *See*, R. Doc. 205 at pp. 7-9.

[147] *See*, R. Doc. 85.

the Fifth Circuit overhauled the substantial in nature test and held that, in addition

to asking whether a worker was subject to the perils of the sea, courts must also make

the following inquiries:

> (1) Does the worker owe his allegiance to the vessel, rather than simply
> to a shoreside employer?
> (2) Is the work sea-based or involve seagoing activity?
> (3) (a) Is the worker's assignment to a vessel limited to performance of a
> discrete task after which the worker's connection to the vessel ends, or
> (b) Does the worker's assignment include sailing with the vessel from
> port to port or location to location?[148]

The parties did not address the substantial in nature prong of the substantial

connection test in their briefs.[149]  This may be because Cole claims in his Motion for

Reconsideration that, "There is no dispute that the substantial in nature prong has

been satisfied in this case."[150]  While not a model of clarity, Cole seems to rely upon

a pre-*Sanchez* decision from a Texas district court, wherein the court concluded that

because a plaintiff lived aboard a vessel for weeks at a time, at sea and away from

the shore, and spent 100% of his work time in service of the vessel, he was not a land-

based employee and, therefore, satisfied the substantial nature portion of the

*Chandris* test.[151]  In both his Motion and his Opposition to Oceaneering's Motion for

Partial Summary Judgment, Cole repeatedly asserts that he "spent 100% of his

working time in the service of vessels for the entirety of his employment with

Huisman,"[152] and that he spent 100% of his time working aboard the M/V OCEAN

---

[148] 997 F.3d 564, 574 (5th Cir. 2021).
[149] *See, generally*, R. Docs. 67, 85, 99; *See also*, R. Docs. 45 & 80.
[150] R. Doc. 206-1 at p. 8.
[151] R. Doc. 67-2 at p. 10 (quoting *Joseph v. Marine Mgmt. Contractors, Inc.*, Civ. A. No. 06-0405, 2007
WL 1964527, at *8 (S.D. Tex. July 3, 2007)).
[152] R. Doc. 67-2 at p. 9 (*citing* R. Doc. 67-3 at ¶ 6); R. Doc. 58 at p. 6 (*citing* R. Doc. 58-12).

PATRIOT during each hitch.[153]  Cole also asserts in his Motion that he ate and slept aboard the M/V OCEAN PATRIOT for the entirety of his hitches.[154]  Oceaneering does not address or contest these assertions in its summary judgment briefing.[155]

The undisputed evidence before the Court shows that Cole satisfies the *Sanchez* substantial in nature test.  Regarding the first factor, the evidence shows that Cole owed his allegiance to the M/V OCEAN PATRIOT, and not his shoreside employer, Huisman.  As previously discussed, there is no dispute between the parties that after his assignment in December 2020, Cole spent 100% of his working time as a crane operator aboard the M/V OCEAN PATRIOT.[156]  Further, the Court has determined that Cole's assignment to the M/V OCEAN PATRIOT was permanent, as contemplated by the Jones Act. Relying upon his own affidavit and deposition testimony, as well as Thompson's deposition testimony, Cole argues that that while aboard the M/V OCEAN PATRIOT, he took his orders from the vessel, including the captain, chief mate, chief engineer, and dive crew.[157]

Cole's testimony as to his status is corroborated by the testimony of Huisman's corporate representative.  Thompson testified that when a crane operator is on a vessel, "he melds into the crew and he becomes part of whatever they want or however they instruct him to do it."[158]  Thompson also testified that, "We send him out there,

---

[153] R. Doc. 67-2 at p. 10, n.40; R. Doc. 58 at pp. 1, 3.  *See,* R. Doc. 206-1 at pp. 5 & 13 ("it is undisputed that Plaintiff spent 100% of his time working for Oceaneering, his alleged Jones Act employer, on vessels at sea.").
[154] R. Doc. 67-2 at p. 3 (*citing* R. Doc. 67-5 at ¶ 8).
[155] *See, generally,* R. Doc. 85 (*citing* R. Docs. 45 & 80).
[156] *See,* R. Doc. 45-1 at p. 5 (*citing* R. Doc. 45-3).  *See also,* R. Doc. 85 (*citing* R. Docs. 45 & 80).
[157] R. Doc. 67-2 at p. 5 (*citing* R. Doc. 67-5 at ¶ 11; R. Doc. 67-7 at pp. 4, 6, 7, 8, 9, 11, 18, 21, 22, & 23; R. Doc. 67-9 at pp. 5 & 6).
[158] R. Doc. 67-7 at p. 8.

he's to be part of the crew and do anything the crew asks, within reason. . . . He is to meld in and function as part of the crew, replacing their own operator."[159]   Cole likewise testified that his immediate boss on the M/V OCEAN PATRIOT was the captain and that the captain directed him to do his job.[160]   Oceaneering has not directed the Court to any evidence that contradicts this testimony.[161]   As such, the undisputed evidence before the Court shows that Cole owed his allegiance to the M/V OCEAN PATRIOT, not Huisman.

The Court further finds that Cole's work as a crane operator is sea-based or involves seagoing activity.   There is no dispute that all of Cole's work for Oceaneering was performed aboard the M/V OCEAN PATRIOT and according to Oceaneering, the M/V OCEAN PATRIOT "was operating in the Gulf of Mexico south of Port Fourchon, Louisiana."[162]   Relying upon his own affidavit, Cole asserts that he ate and slept on the M/V OCEAN PATRIOT for the entirety of his hitches, and that he sailed with the M/V OCEAN PATRIOT from Port Fourchon and from location to location.[163] Oceaneering asserts that Cole's self-serving affidavit is insufficient to defeat summary judgment.[164]   In doing so, Oceaneering ignores both Fed. R. Civ. P. 56(c) and Fifth Circuit authority explaining that, "The Federal Rules permit parties to rely on affidavits to oppose a motion for summary judgment if the affidavits are 'made on

---

[159] *Id*. at p. 21.  *See also*, *Id*. at pp. 22-23 ("He's part of the crew.  Once they step on board that gangway, they are to be part of whatever the - - I think by maritime law, at that point, the captain has jurisdiction over everything.  And at that point, he's to do what he's told within his capabilities.").

[160] R. Doc. 67-9 at p. 6.

[161] *See,* R. Docs. 85, 45-1, & 80.

[162] R. Doc. 45-1 at p. 2.

[163] R. Doc. 67-2 at p. 3 (*citing* R. Doc. 67-5 at ¶¶ 8 & 9).

[164] R. Doc. 80 at pp. 6-7 (citing *Tyler v. Cedar Hill Indep. Sch. Dist.*, 426 Fed.Appx. 306, 309 (5th Cir. 2011)).

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[165]   The Fifth Circuit noted that, "This is true even if the affidavit is self-serving and uncorroborated."[166]

The Fifth Circuit has held that, "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone."[167]   The Fifth Circuit shrewdly observed that, "If all 'self-serving' testimony were excluded from trials, they would be short indeed."[168]   The Court finds that Cole's affidavit, which is based upon his personal knowledge, constitutes competent summary judgment evidence. Importantly, as Cole points out, Oceaneering has not offered any evidence to contradict Cole's assertions that he ate and slept on the M/V OCEAN PATRIOT for the entirety of his two hitches and that he sailed with the M/V OCEAN PATRIOT from Port Fourchon and from location to location.[169]   Oceaneering likewise does not challenge Cole's assertion that the crane on the M/V OCEAN PATRIOT is essential to most, if not all, of the vessel's projects, which included underwater salvage

---

[165] *Great Amer. Ins. Co. v. Employers Mut. Cas. Co.*, 18 F.4th 486, 493 (5th Cir.2021) (*quoting* Fed. R. Civ. P. 56(c)(4)).

[166] *Great Amer. Ins. Co.*, 18 F.4th at 493 n.7 (citing *United States v. Stein*, 881 F.3d 853, 858-59 (11th Cir. 2018) (en banc); *McClendon v. United States*, 892 F.3d 775, 785 (5th Cir. 2018) (agreeing with *Stein*'s reasoning in a tax case); *C.R. Pittman Const. Co., Inc. v. National Fire Ins. Co. of Hartford*, 453 Fed.Appx. 439, 443 (5th Cir. 2011) (per curiam) ("[A]n affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving.")).

[167] *C.R. Pittman*, 453 Fed.Appx. at 443 (citing *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 513 (5th Cir. 1999), *superseded by* Fed. R. Evid. 103(a) *on other grounds as recognized in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient.  Much evidence is self-serving and, to an extent, conclusional.")).

[168] *C.R. Pittman*, 453 Fed.Appx. at 443.

[169] R. Doc. 99 at pp. 3-4.

operations, platform and stub removal, remotely operated underwater vehicle and diving support services, pipeline riser and subsea work, platform jacket repairs and other offshore subsea and surface inspection, maintenance, repair, and installation operations.[170] Further, as previously pointed out, Cole's testimony is supported by Thompson's testimony. As such, the undisputed evidence shows that Cole's work aboard the M/V OCEAN PATRIOT was sea-based or involved seagoing activity, satisfying the second *Sanchez* inquiry.

The evidence also shows that Cole's assignment was not limited to the performance of a discrete task, and included sailing with the M/V OCEAN PATRIOT from port to port, thereby satisfying the third *Sanchez* inquiry. Finally, the foregoing evidence demonstrates that Cole's work as a crane operator aboard the M/V OCEAN PATRIOT, which was operating in the Gulf of Mexico, subjected him to the perils of the sea. Accordingly, the Court finds that Cole's connection to the M/V OCEAN PATRIOT was substantial in nature under *Sanchez*.

Based on the foreign evidence and analysis, Cole has shown that he qualifies for seaman status because he contributed to the mission and function of Oceaneering's vessel, the M/V OCEAN PATRIOT, and his connection to the vessel was substantial in nature and duration. Oceaneering has failed to present any evidence to raise a genuine issue of material fact as to Cole's status as a Jones Act seaman. Cole is therefore entitled to summary judgment on the issue of seaman status.

---

[170] R. Doc. 67-2 at p. 3 (*citing*. R. Doc. 67-15). *See*, R. Doc. 85 (*citing* R. Docs. 45 & 80).

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Reconsideration of Order Granting Motion for Summary Judgment[171] is **GRANTED** and the Court's April 26, 2023 Order and Reasons[172] is **vacated in part** to the extent that the Court concluded that Cole was not a Jones Act seaman because his connection to the M/V OCEAN PATRIOT was not substantial in duration.

**IT IS FURTHER ORDERED** that Oceaneering's Motion for Partial Summary Judgment[173] regarding Cole's seaman status is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Jones Act Status[174] is **GRANTED.**

New Orleans, Louisiana, July 11, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[171] R. Doc. 206.
[172] R. Doc. 205.
[173] R. Doc. 45.
[174] R. Doc. 67.