**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DARRYL COLE**                                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 21-1348**

**OCEANEERING INTERNATIONAL, INC.**              **SECTION: D (5)**

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by Oceaneering International, Inc. ("Oceaneering"), regarding vicarious liability.[1]  Plaintiff, Darryl Cole, opposes the Motion,[2] and Oceaneering has filed a Reply.[3]  The Court also allowed Oceaneering to file a Supplemental Memorandum in further support of its Motion.[4]

Also before the Court is Plaintiff's Motion for Partial Summary Judgment Regarding Vicarious Liability.[5]  Oceaneering opposes the Motion, adopting the arguments it made and the evidence it submitted in support of its Motion for Summary Judgment,[6] and Cole has filed a Reply.[7]

After careful consideration of the parties' memoranda and the applicable law, Oceaneering's Motion for Summary Judgment is **DENIED** and Cole's Motion for Partial Summary Judgment Regarding Vicarious Liability is **GRANTED.**

---

[1] R. Doc. 52.
[2] R. Doc. 59.
[3] R. Doc. 81.
[4] R. Doc. 153.
[5] R. Doc. 71.
[6] R. Doc. 86 (*citing* R. Docs. 52 & 81).
[7] R. Doc. 100.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[8]

This matter arises out of a claim for personal injuries allegedly sustained by Darryl Cole while he was working aboard the M/V OCEAN PATRIOT, an offshore diving and support vessel owned and operated by Oceaneering.  Cole asserts that while working aboard the M/V OCEAN PATRIOT, he fell ill on or about February 18, 2021, and was misdiagnosed by the onboard medic with seasickness and an abscess in his mouth, which delayed his evacuation from the vessel.  Cole alleges that when he was finally evacuated on February 21, 2021 and taken to a hospital, it was determined that he had experienced a stroke.[9]  Pertinent to the instant cross-motions, the medic was aboard the M/V OCEAN PATRIOT pursuant to a contract between Oceaneering and Pharma-Safe Industrial Services, Inc. ("Pharma-Safe"), through which Pharma-Safe provided medical services to Oceaneering's employees working aboard the vessel.[10]  Cole and Oceaneering dispute whether Oceaneering can be held vicariously liable for the negligence of Keith Thompson, the onboard medic who treated Cole.

### A. Oceaneering's Motion for Summary Judgment

Oceaneering argues that Cole's allegations against it rest on one theory – that Oceaneering is vicariously responsible for the alleged negligence of Thompson, the onboard medic who treated him.[11]  Oceaneering claims that because the undisputed

---

[8] The Court set forth the facts and procedural history of this case in great detail in its March 31, 2023 Order and Reasons (R. Doc. 189) and, for the sake of brevity, they will not be repeated here.

[9] R. Doc. 19 at ¶¶ 9-17.

[10] R. Doc. 52-1 at p. 4; R. Doc. 52-3 at p. 1; R. Doc. 71-2 at p. 3.

[11] R. Doc. 52 at p. 1.

facts show that the medic was Oceaneering's independent contractor and Oceaneering relinquished all control over his work, there can be no implication of vicarious liability.[12]   Oceaneering asserts that it contracted with Pharma-Safe on August 27, 2008 for the supply of specialized medical management services aboard Oceaneering's vessels, and that the contract specifies that Pharma-Safe was engaged as an independent contractor.[13]   Oceaneering claims that the contract also provides that Pharma-Safe personnel would employ their own means and methods and exercise their own professional judgment in the performance of their services, and that they would not be subject to the control or direction of Oceaneering.[14] Oceaneering argues that the clear and unambiguous language of the contract shows that it is beyond dispute that Pharma-Safe, and its onboard medic, were to be deemed independent contractors at all times.[15]   Relying upon Fifth Circuit authority, Oceaneering further asserts that it cannot be held liable for the actions of the onboard medic because Cole cannot show that Oceaneering retained operational control over the onboard medic's actions.[16]   Citing the language of the contract, Oceaneering asserts that it did not reserve, and clearly relinquished, any such right of operational control over Pharma-Safe's work.[17]   Oceaneering contends that the Pharma-Safe

---

[12] *Id.*; R. Doc. 52-1 at p. 1.

[13] R. Doc. 52-1 at p. 4 (*citing* R. Doc. 52-3).

[14] R. Doc. 52-1 at p. 4 (*citing* R. Doc. 52-3).

[15] R. Doc. 52-1 at p.4.

[16] *Id.* at pp. 4-7 (citing *Waggoner v. Wilson Welding*, Civ. A. No. 97-1899, 1998 WL 404653, at *3 (E.D. La. July 16, 1998) (Duval, J.) (citing *Ellison v. Conoco, Inc.*, 950 F.2d 1196 (5th Cir. 1992)); *Texas Eastern Trans. Corp. v. McMoRan Offshore Explor. Co.*, 877 F.2d 1214 (5th Cir. 1989); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989); *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir. 1984); *Gregory v. Kirby Inland Marine, LP*, Civ. A. No. 08-4183, 2009 WL 1402229, at *2 (E.D. La. May 14, 2009) (Lemelle, J.)).

[17] R. Doc. 52-1 at pp. 6-7 (*quoting* R. Doc. 52-3).

medic is the only individual responsible for exercising judgment or otherwise making decisions relative to the employment of medical services aboard the M/V OCEAN PATRIOT.[18]  As such, Oceaneering argues it is entitled to summary judgment and dismissal of Cole's claims against it.

Cole counters that Oceaneering's Motion should be denied because Oceaneering owed a non-delegable duty to provide prompt and adequate medical care to Cole and the other seamen and it is vicariously liable for the negligence of those with whom it contracted to fulfill that duty, including Pharma-Safe and its onboard medic, Thompson.[19]  Cole asserts that, in addition to liability for those over whom Oceaneering exerted operational control, Oceaneering is liable "for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'"[20]  Cole claims that the word "agents" requires only that the "employee's injury [be] caused in whole or in part by the fault of others performing, under contract, operational activities of his employer." [21]  Cole asserts that one such operational activity necessarily includes Oceaneering's nondelegable duty to provide prompt and adequate medical care to its seamen.[22]  Cole argues that Oceaneering is liable under the Jones Act to its seamen, including Cole, when it fails to provide proper medical care.[23]  Cole claims that there are two separate and distinct theories for vicarious

---

[18] R. Doc. 52-1 at p. 7 (*citing* R. Doc. 52-2).

[19] R. Doc. 59 at p. 1.

[20] *Id*. at p. 5 (quoting *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)).

[21] R. Doc. 59 at p. 5 (quoting *Hopson*, 383 U.S. at 264, 86 S.Ct. 765).

[22] R. Doc. 59 at p. 5 (citing *De Zon v. Am. President Lines*, 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed. 1065 (1943); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986); *Adams v. Liberty Mar. Corp.*, 560 F. Supp. 3d 698, 721 (E.D.N.Y. 2020)).

[23] R. Doc. 59 at p. 5 (citing *Central Gulf S.S. Corp. v. Sambula*, 405 F.2d 291, 298 (5th Cir. 1968)).

liability, operational control or operational activities, and that his claims against Oceaneering are based upon the latter.[24]  Cole argues that there is no dispute that Pharma-Safe, and by extension its onboard medic, Thompson, was performing, under contract, Oceaneering's operational activities and that Oceaneering is therefore vicariously liable for any negligence attributable to Thompson.[25]

In response, Oceaneering asserts that Cole's entire Opposition brief is premised upon the legal assumptions that he is both an employee and a Jones Act seaman of Oceaneering, and argues that because Cole is neither an employee nor a seaman the cases cited by Cole regarding Oceaneering's non-delegable duty are inapplicable to the facts of this case.[26]  Oceaneering likewise asserts that although Cole claims that Oceaneering is vicariously liable because it chose the onboard medic, Pharma-Safe chose the medic and Cole admitted that he chose to seek the care of the medic.[27]  Oceaneering further asserts that while Cole relies upon one sentence from a district court case indicating that operational control is different from operational activity, Cole provides no additional authority to elaborate on this distinction, nor does he provide any such authority to support the notion that the implication of vicarious liability for an independent contractor is warranted by a finding of either control or operational activity.[28]  Oceaneering maintains that the degree of control retained is the threshold by which vicarious liability can be imputed to a principal in

---

[24] R. Doc. 59 at pp. 1 & 6.

[25] *Id*. at pp. 6-7.

[26] R. Doc. 81 at pp. 1-3. The Court notes that it has since ruled that Cole is a borrowed servant of Oceaneering and a Jones Act Seaman.  *See*, R. Docs. 223 & 224.

[27] R. Doc. 81 at pp. 2-3 (*citing* R. Doc. 81-1 at p. 3; R. Doc. 81-2 at p. 2).

[28] R. Doc. 81 at p. 4.

an independent contractor relationship,[29] and that Cole fails to address the line of cases on that specific issue.[30]  Oceaneering also maintains that it is entitled to summary judgment because Cole fails to offer any evidence that Oceaneering controlled or directed the medic's activities.[31]  Oceaneering further asserts that, "Additionally, there is no logical connection between Oceaneering and that of Pharma-Safe's self-selected onshore physician Dr. Davis whom himself is second [sic] layer independent contractor."[32]

In its Supplemental Memorandum, Oceaneering asserts that Thompson, the onboard medic, recently confirmed during his deposition that he was the only individual aboard the M/V OCEAN PATRIOT responsible for exercising judgment or making medical decisions at the time of Cole's injuries.[33]  As such, Oceaneering argues it is undisputed that Oceaneering relinquished all control over Thompson's work aboard the vessel and that there can be no implication of vicarious liability for his actions.

### B. Cole's Motion for Partial Summary Judgment Regarding Vicarious Liability

In his own Motion, Cole argues that he is entitled to partial summary judgment that Oceaneering is vicariously liable for the negligence of the medic it chose to fulfill its duty to provide prompt and adequate medical care to its crewmembers aboard the

---

[29] *Id*. at p. 1.
[30] *Id*. at p. 4 (citing authority).
[31] *Id*. at p. 5.
[32] *Id*.
[33] R. Doc. 153 at pp. 1-2 (*citing* R. Doc. 153-1 at p. 2).

M/V OCEAN PATRIOT.[34]  Cole asserts that he is a borrowed servant and a seaman of Oceaneering who was assigned to the M/V OCEAN PATRIOT, and that Oceaneering owed him a non-delegable duty to provide prompt and adequate medical care under the Jones Act.[35]  Cole again asserts that there are two separate theories of Jones Act liability – based upon operational control or operational activities – and because Pharma-Safe was performing Oceaneering's operational activities (providing medical services to its crewmembers), Oceaneering is vicariously liable for the negligence of Pharma-Safe and/or its medic as a matter of law.[36]  Relying extensively upon the Fifth Circuit's decision in *Randle v. Crosby Tugs, LLC*, Cole repeats the same arguments made in his Opposition brief to Oceaneering's Motion, namely that a shipowner such as Oceaneering is vicariously liable for the injuries negligently inflicted on its employees by its officers, agents, or employees, and that the word "agents" requires only that the employee's injury be caused in whole or in part by the fault of others performing, under contract, operational activities of his employer.[37]  Cole maintains that it is "beyond dispute" that Oceaneering contracted with Pharma-Safe to provide medical services aboard its vessels so Pharma-Safe and, by extension Thompson, was performing Oceaneering's operational activities.[38]  As such, Cole argues Oceaneering is vicariously liable for any negligence attributable to Pharma-Safe and/or Thompson in treating Cole.[39]

---

[34] R. Doc. 71.
[35] R. Doc. 71-2 at p.1.
[36] *Id*. at p. 3 (*citing* R. Doc. 59 at p. 6).
[37] R. Doc. 71-2 at pp. 4-5 (quoting *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 264, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)) (internal quotation marks omitted).
[38] R. Doc. 71-2 at pp. 6-7.
[39] *Id*. at p. 7 (citation omitted).

Oceaneering opposes the Motion, but "submits that its Motion (Rec. Doc. 52) and Reply Memorandum in support thereof (Rec. Doc. 81) (attached hereto as Exhibits 'A' and 'A-2', respectively) should collectively serve as an Opposition to Plaintiff's cross-motion on those very same issues (Rec. Doc. 71)."[40]  Oceaneering asserts that, "As the prior briefing by Oceaneering makes clear, the medic at issue was an independent contractor of Oceaneering at all times, and that Oceaneering relinquished all control over his work, there can be no implication of vicarious liability for his actions."[41]  As such, Oceaneering asserts that Cole's claims against him must be dismissed, with prejudice, as a matter of law.[42]  Oceaneering further advises the Court that Thompson's deposition is scheduled to take place about two weeks after Oceaneering filed its Opposition brief, and that Oceaneering anticipates Thompson testifying that he is independent of Oceaneering and responsible for all medical decision-making aboard the vessel.[43]

In response, Cole asserts that Oceaneering does not dispute that Pharma-Safe was performing, under contract, Oceaneering's operational activities, which is fatal to Oceaneering's attempt to circumvent liability for any negligence attributable to Pharma-Safe or its personnel, including Thompson or Dr. Robert Davis.[44]  Cole contends that Oceaneering continues to rely on an inapplicable theory of a lack of operational control to avoid liability for Thompson and is "grasp[ing] at straws" in

---

[40] R. Doc. 86 at p. 1.
[41] *Id.*
[42] *Id.*
[43] *Id.* at pp. 1-2.
[44] R. Doc. 100 at p. 1.

arguing that it did not select Thompson or Dr. Davis to treat its crewmembers.[45]  Cole claims it is undisputed that Thompson was put on the M/V OCEAN PATRIOT by Oceaneering pursuant to its contract with Pharma-Safe to treat those who became ill while working on the vessel.[46]  Cole likewise asserts that Oceaneering's claim that he is somehow not a seaman because he asked the captain for medical treatment is baseless.[47]  Relying upon the same two district court cases that were cited in his Opposition brief to Oceaneering's Motion, Cole asserts that he did not address the operational control case law cited by Oceaneering because it does not apply here, where the Jones Act employer, Oceaneering, is liable for the negligent actions of its agents performing one of its operational activities.[48]  Although Dr. Davis, the onshore physician who treated Cole, is not mentioned in Cole's Motion or Oceaneering's Opposition brief, Cole asserts in his Reply brief that, "because Pharma-Safe's personnel, Mr. Thompson and Dr. Davis, were performing, under contract, Oceaneering's operational activities, Oceaneering is vicariously liable for any negligence attributable to either/both of them."[49]

## II.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of

---

[45] *Id*. at p. 2 (*citing* R. Doc. 86-3 at p. 2).

[46] R. Doc. 100 at p. 2.

[47] *Id*. at p. 3 (*citing* R. Doc. 86-3 at p. 3).

[48] R. Doc. 100 at pp. 3-5 (citing *Gregory v. Kirby Inland Marine, LP*, Civ. A. No. 08-4183, 2009 WL 1402229, at *3 (E.D. La. May 14, 2009); *Sanders v. Diamond Offshore Drilling, Inc.*, Civ. A. No. 00-2307, 2002 WL 31654973, at *3 (E.D. La. Nov. 21, 2002) (Vance, J.)).

[49] R. Doc. 100 at p. 6.

law.[50]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[51]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[52]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[53]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[54]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[55]

---

[50] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[51] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

[52] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

[53] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[54] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.

[55] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III.   ANALYSIS

The question before the Court in these cross-motions for summary judgment is a legal one: whether, and upon what basis, can Oceaneering be held liable for the actions of Pharma-Safe and/or Keith Thompson, the onboard medic selected by Pharma-Safe to work aboard the M/V OCEAN PATRIOT. [56]   In the Amended Complaint for Damages (the "Amended Complaint"), Cole alleges that, "Oceaneering is the Jones Act employer of Plaintiff, who was a seaman and member of the crew of the DSV Ocean Patriot and was at all relevant times a borrowed employee of Oceaneering . . . ."[57]   Cole asserts five causes of action in his Amended Complaint, four of which are asserted only against Oceaneering.[58]   In Count One, Cole asserts a "Jones Act Negligence" claim against Oceaneering,[59] in which he alleges that, "Under

---

[56] While both parties reference for the first time in their Reply briefs, somewhat in passing, Oceaneering's alleged liability or lack thereof for the negligence of Pharma-Safe's onshore physician, Dr. Robert Davis (R. Doc. 81 at p. 5; R. Doc. 100 at p. 6), the Court finds that issue is not properly before the Court.   "Arguments raised for the first time in a reply brief are generally waived."   *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005); *Iteld, Bernstein & Associates, LLC v. Hanover Ins. Group*, Civ. A. No. 06-3418, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (Vance, J.) ("[A]rguments raised for the first time in a Reply brief are waived.")).   *See, Little Tchefuncte River Association v. Artesian Utility Company, Inc.*, 155 F. Supp. 3d 637, 657 (E.D. La. 2015) ("[A]rguments cannot be raised for the first time in a reply brief.") (quoting *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)).   The Court agrees that, "it is improper for the movant to sandbag and raise wholly new issues in a reply memorandum.   The scope of the reply should be limited to addressing the arguments raised by the memorandum in opposition."   *Weems v. Hodnett*, Civ. A. No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (Hornsby, M.J.) (citation omitted).   Perhaps even more pointed, Oceaneering's Motion only addresses whether "Oceaneering is vicariously liable for the alleged negligence of the onboard medic who assisted Plaintiff at the time of his injuries."   R. Doc. 52 at p. 1.   Likewise, Cole's Motion makes clear that he "moves the Court for partial summary judgment regarding whether Oceaneering International, Inc. ('Oceaneering') is vicariously liable for the negligence of the medic it chose to be aboard the DSV OCEAN PATRIOT and who treated Mr. Cole and delayed his evacuation from the vessel for days.   R. Doc. 71 at p. 1.   As such, this Order and Reasons does not address whether Oceaneering can be held liable for the actions of the onshore physician, Dr. Davis.

[57] R. Doc. 19 at ¶ 7.

[58] *Id*. at ¶¶ 24-53.

[59] *Id*. at ¶¶ 24-26.

the Jones Act, Oceaneering owed Plaintiff a safe place to work and prompt and adequate medical care, which duty was violated through the negligence of Oceaneering, its officers, agents, and/or employees."[60]  Cole further alleges that his injuries and damages "were the proximate result of Oceaneering's negligent acts or omissions in failing to provide Plaintiff with a safe work environment, an adequate and competent crew, prompt and adequate medical care . . . and other acts/omissions which will be shown at trial."[61]

In its Motion for Summary Judgment, Oceaneering argues that it cannot be held vicariously liable for Thompson's actions because its contract with Pharma-Safe specifies that it engaged Pharma-Safe "as an independent contractor to operate as its specialized medical management provider,"[62] and because Oceaneering did not exert any operational control over Thompson.  In contrast, Cole argues that Oceaneering can be held liable for Thompson's actions because Oceaneering owed a non-delegable duty to provide prompt and adequate medical care to Cole and the other Jones Act seaman aboard the M/V OCEAN PATRIOT, which it chose to fulfill by contracting with Pharma-Safe, and Oceaneering can be held vicariously liable for the negligence of those with whom it contracted to fulfill that duty, including Pharma-Safe.[63]  While Oceaneering argues that Pharma-Safe and Thompson are independent contractors, Cole argues that they are Oceaneering's agents, as that term is defined by the

---

[60] *Id.* at ¶ 25.
[61] *Id.* at ¶ 26.
[62] R. Doc. 52-3 at ¶ 1.
[63] R. Doc. 71-2 at pp. 1-2.

Supreme Court in *Hopson v. Texaco, Inc.*[64]   The Court notes that neither side addresses the jurisprudence cited by the other.   Oceaneering claims that because it disputes that Cole was its employee or a seaman at any time, "the nondelegable duty referenced by Plaintiff under the Jones Act is inapplicable to Plaintiff."[65]   Cole similarly argues that the operational control case law cited by Oceaneering "does not apply to the situation presented in this case.  As a Jones Act employer, Oceaneering is liable 'for the injuries negligently inflicted on its employees by its "officers, agents, or employees.""'[66]

While Cole and Oceaneering dispute the legal basis upon which Oceaneering can be held vicariously liable for the actions of Pharma-Safe and Thompson, they cite the same case, *Gregory v. Kirby Inland Marine, LP*,[67] to support their respective positions.[68]  In *Gregory*, the plaintiff "while employed as Jones Act Seaman by Kirby" was allegedly injured while working as a deckhand aboard the Kirby-owned tug, the M/V The City of New Orleans.[69]   The plaintiff allegedly suffered injuries while attempting to release a securing wire back to a barge that was secured to the tug. The plaintiff asserted, among other things, that the barge employees who caused or contributed to his injuries were acting as agents of Kirby and that Kirby was liable for their actions.[70]   Kirby filed a motion for summary judgment arguing, among other things, that it "is not responsible for the actions of the individuals on the barge as the

---

[64] 383 U.S. 262, 263-64, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966).
[65] R. Doc. 81 at p. 5.
[66] R. Doc. 100 at pp. 3-4 (quoting *Hopson*, 383 U.S. at 263, 86 S.Ct. 765).
[67] Civ. A. No. 08-4183, 2009 WL 1402229 (E.D. La. May 14, 2009).
[68] R. Doc. 52-1 at pp. 5 & 6; R. Doc. 59 at p. 6; R. Doc. 100 at p. 4.
[69] Civ. A. No. 08-4183, 2009 WL 1402229 at *1.
[70] *Id.*

third party fleeting services are performed by an independent contractor and is not part of a service Kirby is obligated to provide to its crew."[71]  Addressing the issue of vicarious liability, the district court in *Gregory* recognized that, "Examination of vicarious liability centers around operational activities and operational control."[72] The *Gregory* court first reviewed the jurisprudence regarding operational activities, namely *Hopson v. Texaco*, in which the Supreme Court held that an employer is liable for the injuries negligently inflicted by its agents, and that such agents include those performing, under contract, operational activities of the employer.[73]  The *Gregory* court recognized that an activity is an "operational activity" if it is necessary or vital to the defendant's operations.[74]  The *Gregory* court then pointed out that, "Another section of this Court found an employer liable for the negligent acts of its catering contractor because the 'daily and routine running of a cafeteria is . . . an operational activity necessary to the functioning of a rig.'"[75]

The *Gregory* court then reviewed the jurisprudence regarding operational control, recognizing that a principal can be liable for the injuries negligently caused by an independent contractor if the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts.[76]  While the defendant in *Gregory* attempted to distinguish *Hopson* and characterize it as a case

---

[71] *Id.*
[72] *Id.* at *2.
[73] *Id.* (quoting *Hopson*, 383 U.S. 262, 263-64, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)).
[74] Civ. A. No. 08-4183, 2009 WL 1402229 at *2 (citing *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 327, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958)) (internal quotation marks omitted).
[75] Civ. A. No. 08-4183, 2009 WL 1402229 at *2 (quoting *Sanders v. Diamond Offshore Drilling, Inc.*, Civ. A. No. 00-2307, 2002 WL 31654973, at *3 (E.D. La. Nov. 21, 2002)).
[76] Civ. A. No. 08-4183, 2009 WL 1402229 at *2 (quoting *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911-12 (5th Cir. 1997)) (internal quotation marks omitted).

about sufficient operational control, the court held that *Hopson*, "spoke not about control over the work being performed but whether the work was an operational activity, one necessary or vital to the employer's operations, and the employer's responsibility for those it selected to do the work."[77]  Relevant to the instant case, the *Gregory* court held that, "Operational control is a separate theory, and the post-*Hopkins* [sic] cases reviewed by the Court evaluate either operational control as articulated in *McCormack* or operational activity under *Hopkins* [sic] but not both."[78]  The *Gregory* court ultimately denied the defendant's motion for summary judgment, finding that questions of fact remained regarding whether the wire release process and/or various parts of the process were part of the operational activities of Kirby, and regarding the degree of control, if any, Kirby had over the actions of the fleeting service employees.

This Court's review of the post-*Hopson* jurisprudence likewise shows that courts have addressed vicarious liability in the maritime context based upon either operational control or operational activity, but not both.  The Court further notes that none of the operational control cases cited by Oceaneering involve claims brought by a seaman seeking to hold his Jones Act employer liable for the negligence of its agent or contractor.[79]  Thus, the cases cited by Oceaneering are distinguishable from the

---

[77] Civ. A. No. 08-4183, 2009 WL 1402229 at *3.  The Court notes that while the *Gregory* court referred to "*Hopkins*," this appears to be a grammatical error and a reference to *Hopson*, cited earlier in the opinion.

[78] *Id*. (citing *McCormack v. Noble Drilling Corp.*, 608 F.2d 169, 174-75 (5th Cir. 1979)).

[79] *See, Ellison v. Conoco, Inc.*, 950 F.2d 1196 (5th Cir. 1992) (no allegation that plaintiff was a Jones Act seaman); *Texas Eastern Trans. Corp. v. McMoRan Offshore Explor. Co.*, 877 F.2d 1214 (5th Cir. 1989) (no reference to the Jones Act and no allegation that plaintiff was a Jones Act seaman); *Landry v. Huthnance Drilling Co.*, 889 F.2d 1469 (5th Cir. 1989) (no reference to the Jones Act and no allegation that plaintiff was a seaman); *Wallace v. Oceaneering Int'l*, 727 F.2d 427, 437 (5th Cir. 1984)

facts of this case, where the Court has determined that Cole was Oceaneering's borrowed servant and a Jones Act seaman at the time of his alleged injuries[80] and Cole seeks to hold his Jones Act employer vicariously liable for the actions of its contractor.  To the extent Oceaneering argues that the non-delegable duty owed by a shipowner to its seamen to provide prompt and adequate medical care does not apply to Cole because he is not a seaman,[81] that argument is now moot based on this Court's earlier rulings.

As the Court has determined that Cole is a Jones Act seaman and that Oceaneering is his Jones Act employer, the Court finds that the jurisprudence cited by Cole is directly on-point and applies to his claim regarding Oceaneering's vicarious liability.  In *Hopson v. Texaco, Inc.*, the plaintiffs brought Jones Act claims to recover damages for injuries sustained by a seaman and for the death of another seaman, which resulted from an automobile accident in Trinidad that occurred when the ill seamen were being transported to a United States Consul's Office, as required by federal law.[82]  The question before the Supreme Court was whether the appellate court erred in reversing the district court's determination that the defendant-shipowner was liable to the plaintiffs for the negligence of the taxi driver.  The

---

(finding that the offshore oil field diver-plaintiff was a Jones Act seaman of his employer, Oceaneering International, Inc., and that Cities Service Co., the well owner, could not be held liable for the plaintiff's injuries resulting from the negligence of the drilling contractor (Zapata Offshore Co.) and diving contractor (Oceaneering)); *Waggoner v. Wilson Welding*, Civ. A. No. 97-1899, 1998 WL 404653, at *3 (E.D. La. July 16, 1998) (where the plaintiff alleged that he was a Jones Act seaman, the defendant did not concede his status as a seaman, and there was no determination as to the plaintiff's seaman status, the court concluded that the defendant lacked operational control over an independent contractor and could not be held responsible for any negligence of the contractor).

[80] R. Docs. 223 & 224.

[81] R. Doc. 81 at p. 5.

[82] 383 U.S. 262, 262, 86 S.Ct. 765, 765, 15 L.Ed.2d 740 (1966).

Supreme Court began its analysis by observing that, "The Jones Act incorporates the standards of the Federal Employers' Liability Act, as amended, which renders an employer liable for the injuries negligently inflicted on its employees by its 'officers, agents, or employees.'"[83]   The Supreme Court in *Hopson* explained that, "In order to give 'an accommodating scope * * * to the word 'agents', we concluded that 'when (an) * * * employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of . . . FELA.'"[84]   The Supreme Court concluded that because the defendant had a statutory duty to get the two ill seaman to the United States Consul's office and the defendant had selected, "as it had done many times before," the taxi service, "Respondent—the law says—should bear the responsibility for the negligence of the driver which it chose."[85]

In *Randle v. Crosby Tugs, LLC,* the Fifth Circuit applied *Hopson* in a case factually similar to this one, wherein a Jones Act seaman suffered a stroke while working aboard a vessel and brought direct and vicarious liability claims against the shipowner/Jones Act employer for allegedly breaching its duty under the Jones Act to provide prompt and adequate medical care.[86]   Addressing the vicarious liability

---

[83] 383 U.S. at 263, 86 S.Ct. at 766 (footnotes omitted).

[84] 383 U.S. at 264, 86 S.Ct. at 766 (quoting *Sinkler*, 353 U.S. at 330-32, 78 S.Ct. at 762-63) (internal citation omitted).

[85] *Hopson*, 383 U.S. at 264, 86 S.Ct. at 766.

[86] 911 F.3d 280, 281, 283 (5th Cir. 2018) ("Randle argues that Crosby, through its employees, acted negligently by merely calling 911 in response to his stroke.  Randle *also* argues that Crosby is vicariously liable for the [Teche Regional Medical Center] physicians' alleged medical malpractice.  We address each argument in turn.") (emphasis added).  *See, Id.* at 283 & 284 ("Randle contends that Crosby breached its duty to provide adequate medical care by merely calling 911 in response to his stroke. . . . . Randle argues that Crosby should also be held vicariously liable for the TRMC physicians' alleged medical malpractice.").

claim, the Fifth Circuit, citing *Hopson*, recognized that, "A shipowner is liable for the injuries negligently inflicted on its employees by its officers, agents, or employees."[87] The Fifth Circuit acknowledged that, "The word 'agents' is given 'an accommodating scope,' requiring only that the 'employee's injury [be] caused in whole or in part by the fault of others performing, under contract, operational activities of his employer.'"[88]  The Fifth Circuit in *Randle* then pointed out that it had previously held that a shipowner is vicariously liable for the negligence of an on-board physician in its employ,[89] and that a shipowner is vicariously liable for an onshore physician that "it chooses to treat its seaman."[90]  The Fifth Circuit also warned, however, that the "accommodating scope" of the word "agents," as used in this context, is not boundless, noting that even in the context of FELA, the Supreme Court has defined an agent as one "performing, *under contract*, operational activities of [the] employer."[91]  The Fifth Circuit in *Randle* further observed that, "We are not aware of any case holding that FELA overrides agency principles such that an employer will be liable for the acts of an unrelated third party.  Accordingly, we have recognized that a shipowner will not

---

[87] *Randle*, 911 F.3d at 284 (quoting *Hopson v. Texaco, Inc.*, 383 U.S. 262, 263, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)) (internal quotation marks omitted).

[88] *Randle*, 911 F.3d at 284 (quoting *Hopson*, 383 U.S. at 264, 86 S.Ct. 765).

[89] *Randle*, 911 F.3d at 284 (citing *De Zon v. Am. President Lines*, 318 U.S. 660, 668, 63 S.Ct. 814, 87 L.Ed.1065 (1943)).

[90] *Randle*, 911 F.3d at 284 (quoting *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986)).  *See also*, *Cent. Gulf S.S. Corp. v. Sambula*, 405 F.2d 291, 299 (5th Cir. 1968) (stating standard for vicarious liability for on-shore physician as "whether the ship was negligent in selecting and relying upon [the physician["].

[91] *Randle*, 911 F.3d at 285 (quoting *Hopson*, 383 U.S. at 264, 86 S.Ct. 765) (internal quotation marks omitted and emphasis added in *Randle*).

be held vicariously liable for the negligence of a physician that the seaman chooses himself."[92]

The *Randle* court reasoned, "As applied here, Crosby (the principal) had a nondelegable duty to provide adequate medical care to Randle [plaintiff]; Crosby would be vicariously liable if it had 'delegated performance of the duty' to an agent, and the agent acted negligently in carrying out the duty."[93] The Fifth Circuit ultimately concluded that no such agency relationship had been formed because there was no relationship between the defendant and the medical facility where the plaintiff had been treated.[94] The Fifth Circuit then addressed the plaintiff's argument that the district court's decision, granting the defendant's motion for summary judgment, was inconsistent with the Supreme Court's decision in *Hopson* and the Fifth Circuit's prior decisions in *De Centeno* and *Sambula*.[95] The Fifth Circuit pointed out that in *Hopson*, the Supreme Court held that a shipowner was liable for the negligence en route of a taxi it had hired to fulfill its statutory duty to take two ill seaman to the United States consulate.[96] The Fifth Circuit then acknowledged that in *De Centeno* it had previously held a shipowner vicariously liable for its chosen physician's negligence in misdiagnosing its seaman's diabetes,[97] and that in *Sambula* it had found a shipowner vicariously liable for the malpractice of a

---

[92] *Randle*, 911 F.3d at 285 (citing *Joiner v. Diamond M Drilling Co.*, 688 F.2d 256, 262 n.9 (5th Cir. 1982)).

[93] *Randle*, 911 F.3d at 285.

[94] *Id.*

[95] *Id.* (citing *Hopson*, 383 U.S. 262, 86 S.Ct. 765; *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138 (5th Cir. 1986); *Cent. Gulf S.S. Corp. v. Sambula*, 405 F.2d 291 (5th Cir. 1968)).

[96] *Randle*, 911 F.3d at 286 (citing *Hopson*, 383 U.S. at 264, 86 S.Ct. 765).

[97] *Randle*, 911 F.3d at 286 (citing *De Centeno*, 798 F.2d at 139-40).

general practitioner it had negligently selected to treat its seaman's eye injury.[98]  The Fifth Circuit held that these three cases "support the proposition that medical providers that a shipowner *selects* 'are deemed to be engaged in the ship's business as "agents" despite the fact that the practitioner may be an independent contractor or completely unrelated to the ship.'"[99]  Nonetheless, the Fifth Circuit cautioned that, "these cases do not override the basic principles of agency law requiring that an agency relationship arise from the principal's act in selecting the agent, rather than its nondelegable duty."[100]

The Court also finds *Sanders v. Diamond Offshore Drilling, Inc.*, a case from another Section of this Court, instructive.[101]  The court in *Sanders* found the shipowner/Jones Act employer liable for the negligent acts of its catering contractor. The question before the court in that case was "whether a Jones Act employer is liable for the negligent acts of its contractors."[102]  Relying upon *Hopson* and *Sinkler*, the *Sanders* court recognized that the Jones Act renders an employer liable for the negligence of its agents performing, under contract, operational activities of the employer, and that, "An activity is an 'operational activity' if it is necessary or vital to the defendant's operations."[103]  The *Sanders* court found that there was no dispute that the shipowner had contracted with ART Catering, Inc. to perform catering and

---

[98] *Randle*, 911 F.3d at 285 (citing *Sambula*, 405 F.2d at 300-01).
[99] *Randle,* 911 F.3d at 286 (quoting *Dise v. Express Marine, Inc.*, 476 Fed.Appx. 514, 521 (4th Cir. 2011)) (emphasis in original).  *See, Hopson*, 383 U.S. at 264, 86 S.Ct. 765; *De Centeno*, 798 F.2d at 139-40; *Sambula*, 405 F.2d at 300-01) (emphasis in original).
[100] 911 F.3d at 286.
[101] Civ. A. No. 00-2307, 2002 WL 31654973 (E.D. La. Nov. 21, 2002).
[102] *Id.* at *3.
[103] *Id*. (citing *Hopson*, 383 U.S. at 264, 86 S.Ct. at 766); *Sinkler v. Missouri Pac. R. Co.*, 356 U.S. 326, 327, 78 S.Ct. 758, 760, 2 L.Ed.2d 799 (1958)).

steward activities.  The court held that, "The daily and routine running of a cafeteria is certainly an 'operational' activity necessary to the functioning of a rig, where it is not uncommon for seamen, including plaintiff, to live and work for more than one week at a time."[104]  The *Sanders* court ultimately concluded that, "because ART Catering contracted with Diamond to perform an operational activity that is necessary to the functioning of the OCEAN QUEST, Diamond is liable under the Jones Act for the negligence of ART Catering employees."[105]  Because the plaintiff had raised a genuine issue of material fact regarding whether an ART Catering employee was negligent, the *Sanders* court denied the defendant's motion for summary judgment.[106]

Applying the foregoing legal authority to the facts of this case, the Court finds that Oceaneering, as the owner of the M/V OCEAN PATRIOT, had a non-delegable duty to provide prompt and adequate medical care to its seamen.[107]  Oceaneering does not contest this fact in its summary judgment briefs,[108] and appears to concede this point, although indirectly, in its Reply brief in support of its Motion for Summary Judgment.[109]  Oceaneering also asserts in its Reply brief that, "Oceaneering disputes, however, that Plaintiff was a seaman or an employee of Oceaneering <u>at any time</u>.  As such, the nondelegable duty referenced by Plaintiff under the Jones Act is

---

[104] Civ. A. No. 00-2307, 2002 WL 31654973 at *3.

[105] *Id*.

[106] *Id*. at *3-4.

[107] *Randle v. Crosby Tugs, LLC*, 911 F.3d 280, 283 (5th Cir. 2018) (citing *De Zon v. Am. President Lines*, 318 U.S. 660, 667, 63 S.Ct. 814, 87 L.Ed.1065 (1943); *De Centeno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 140 (5th Cir. 1986)).

[108] *See, generally*, R. Docs. 52-1, 52-4, 81, 153, 86, & 86-1.

[109] *See*, R. Doc. 81 at p. 3 ("Crewmembers do not seek consent to seek medical care; it is provided.").

inapplicable to Plaintiff."[110]  Because the Court has since determined that Cole was a borrowed servant and a Jones Act seaman of Oceaneering at the time of his injuries,[111] Oceaneering had a non-delegable duty to provide prompt and adequate medical care to Cole.

The Court further finds that Oceaneering can be held vicariously liable for Cole's injuries if Oceaneering delegated the performance of that duty to an agent and the agent acted negligently in carrying out that duty.[112]  Here, the undisputed evidence shows that Oceaneering entered into a contract with Pharma-Safe on August 27, 2008 "for the supply of specialized medical management services aboard Oceaneering's vessels."[113]  Thus, Oceaneering delegated to Pharma-Safe its duty to provide adequate medical care to its seamen.  The undisputed evidence also shows that Pharma-Safe selected Keith Thompson as the onboard medic to fulfill its contractual obligation to Oceaneering.[114]  The Court therefore finds that the undisputed evidence shows that Pharma-Safe and, by extension Thompson, was "performing, *under contract*" one of Oceaneering's operational activities by providing medical services to its seamen aboard the M/V OCEAN PATRIOT.[115]  Pursuant to *Hopson* and *Randle*, the Court finds that Oceaneering can be held vicariously liable for any negligence attributable to Pharma-Safe and/or Keith Thompson in rendering

---

[110] R. Doc. 81 at p. 5 (*citing* R. Docs. 45 & 55) (emphasis in original).
[111] *See,* R. Docs. 223 & 224.
[112] *Randle v. Crosby Tugs, LLC*, 911 F.3d 280, 285 (5th Cir. 2018).
[113] R. Doc. 52-1 at p. 4; R. Doc. 52-4 at ¶ 2; R. Doc. 71-2 at p. 3.
[114] R. Doc. 81 at p. 2; R. Doc. 71-2 at p. 3.
[115] *Randle*, 911 F.3d at 284, 285 (quoting *Hopson v. Texaco, Inc.*, 383 U.S. 262, 264, 86 S.Ct. 765, 15 L.Ed.2d 740 (1966)) (emphasis added by *Randle*).

medical care to Cole.[116]  Accordingly, Oceaneering's Motion for Summary Judgment is denied and Cole's Motion for Partial Summary Judgment is granted.[117]

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Oceaneering's Motion for Summary Judgment[118] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment Regarding Vicarious Liability [119] is **GRANTED**, and Oceaneering is vicariously liable as a matter of law for any negligence attributable to Pharma-Safe and/or Keith Thompson in rendering medical care to Cole when he was working aboard the M/V OCEAN PATRIOT.

New Orleans, Louisiana, July 11, 2023.

*Wendy B Vitter*

**WENDY B. VITTER**
**United States District Judge**

---

[116] The Court notes that the parties have not presented argument or evidence regarding Thompson's alleged negligence, beyond providing a medical record from Cole's treating neurologist, Dr. Kaveh Khoobehi of Culicchia Neurological, in which Dr. Khoobehi wrote, "I do believe this stroke could have been prevented if he had been sent to the ED on 2/16-2/21." R. Doc. 71-9 at p. 2.  The issue of whether the medic was negligent is outside the parameters of the motions before the Court, thus the Court makes no finding as to negligence.

[117] While not a model of clarity, it appears to the Court that Cole is not seeking partial summary judgment on the basis that Thompson and/or Pharma-Safe were, in fact, negligent in causing his injuries.  Instead, Cole seems to seek partial summary judgment regarding whether "Oceaneering is vicariously liable for any negligence attributable to Pharma-Safe or Mr. Thompson as a matter of law." R. Doc. 71-2 at p. 7; *See,* R. Doc. 100 at pp. 1 & 6.  As such, the Court finds that Cole is entitled to summary judgment that Oceaneering is vicariously liable, as a matter of law, to the extent that Cole's injuries were caused by any negligence attributable to Pharma-Safe and/or Thompson.  To the extent Cole also seeks to hold Oceaneering vicariously liable for the negligent actions of Pharma-Safe's onshore physician, Dr. Robert Davis, in his Reply brief (R. Doc. 100 at pp. 1 & 6), as the Court previously noted that issue has been waived.  *See, supra*, note 56.

[118] R. Doc. 52.

[119] R. Doc. 71.