UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRYL COLE                                    CIVIL ACTION

VERSUS                                         NO. 21-1348

OCEANEERING INTERNATIONAL, INC.                SECTION: D (5)

## ORDER AND REASONS

Before the Court is a Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction, filed by third-party defendant, Robert Davis, M.D.[1]  Third-party plaintiff, Huisman North America Services, LLC, and plaintiff, Darryl Cole, both oppose the Motion,[2] and Dr. Davis has filed a Reply.[3]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED in part and DENIED in part as moot.**

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The facts and procedural history of this case have been set forth in great detail in several orders issued by this Court and, for the sake of brevity, will not be repeated here.[4]  On July 15, 2021, Darryl Cole filed this maritime personal injury case against Oceaneering International, Inc. ("Oceaneering"), seeking damages after suffering a stroke in February 2021 while working as a crane operator aboard an Oceaneering vessel.[5]  Cole alleges that his stroke was caused by a delay in care due to his

---

[1] R. Doc. 116.
[2] R. Docs. 117 & 118.
[3] R. Doc. 122.
[4] *See*, R. Docs. 189, 205, 223, 224, 225, & 229.
[5] R. Doc. 1.

misdiagnosis by Oceaneering's onboard medic, Keith Thompson.[6]  Cole asserted claims against Oceaneering for Jones Act negligence, general maritime law negligence and unseaworthiness, general maritime law maintenance and cure, and negligence under Louisiana law.[7]  In the Complaint, Cole alleged that Huisman North America Services, LLC ("Huisman") was his direct employer, but that Oceaneering was his Jones Act employer at the time of his injuries through the borrowed employee doctrine.[8]

On December 20, 2021, Oceaneering filed a Third-Party Complaint against Huisman, asserting a claim for defense and indemnity and a breach of contract claim against Huisman based upon a 2021 Purchase Order entered into between the parties through which Huisman supplied Cole as a crane operator to Oceaneering.[9]  A week later, on December 27, 2021, Cole filed an Amended Complaint naming Huisman as an additional defendant and asserting a claim for maintenance and cure against Huisman.[10]

On October 10, 2022, Huisman filed a Third-Party Complaint Against Pharma-Safe Industrial Services Inc. ("Pharma-Safe") and Dr. Robert Davis, which is at the heart of the instant dispute.[11]  In it, Huisman alleges that Oceaneering contracted with Pharma-Safe to operate as its "specialized medical management provider," and to provide an available physician on a twenty-four hours per day, seven days per week

---

[6] R. Doc. 1.
[7] R. Doc. 1 at ¶¶ 20-42.
[8] *Id*. at ¶ 6.
[9] R. Doc. 14.
[10] R. Doc. 19.
[11] R. Doc. 108.

basis "for medical consultation by pager for emergency or non-emergency medical situations that may present to on duty emergency medical technicians."[12]  Huisman alleges that the on-board medic, Keith Thompson, and the on-shore physician, Dr. Davis, were employees and/or agents of Pharma-Safe and were acting in the course and scope of their employment with Pharma-Safe in furtherance of Pharma-Safe's obligations under its contract with Oceaneering.[13]  Huisman further alleges that if Cole was injured as alleged, his injuries were a result of the negligence, gross negligence, and/or fault of Thompson and Dr. Davis.[14]  Huisman asserts a third-party claim against Dr. Davis and Pharma-Safe pursuant to Fed. R. Civ. P. 14(a), alleging that it is entitled to contribution and/or indemnity from Pharma-Safe and/or Dr. Davis to the extent Huisman is ultimately held liable to Cole, including through defense and indemnity for any claim asserted by Cole against Oceaneering, to the extent any such injury resulted from the negligence, gross negligence, or fault of Pharma-Safe, its employees, its agents, and/or Dr. Davis.[15]  Huisman also asserts that it is entitled to indemnity from Pharma-Safe and/or Dr. Davis to the extent that their negligence, gross negligence, or fault gave rise to Cole's maintenance and cure claim against Huisman, "which claim was recently settled."[16]

---

[12] R. Doc. 108 at ¶ 10 (*quoting* R. Doc. 108-1 at p. 1, ¶ 1) (internal quotation marks omitted).

[13] R. Doc. 108 at ¶ 11.

[14] *Id*. at ¶ 16.

[15] *Id*. at ¶ 17.

[16] *Id*. at ¶ 18.  The Court notes that Huisman filed its Third-Party Complaint on October 10, 2022 (R. Doc. 108), but Cole did not file a motion to dismiss his claims against Huisman based upon the settlement between the parties until March 21, 2023.  *See*, R. Doc. 179.  The Court further notes that Huisman's Third-Party Complaint also includes a Rule 14(c) tender of Pharma-Safe and Dr. Davis as the proper defendants to all claims asserted by Cole, and a Rule 14(c) tender of Pharma-Safe "as the proper defendant to Oceaneering's defense and indemnity claim."  *Id*. at ¶¶ 19-24.  During a telephone status conference with a court reporter held on August 7, 2023, the Court granted Oceaneering's

On March 22, 2023, at Cole's request, the Court dismissed with prejudice Cole's direct claim against Huisman for maintenance and cure on the basis that Huisman and Cole had settled the claim.[17]  On March 31, 2023, the Court granted Huisman summary judgment on Oceaneering's third-party claim for defense and indemnity, and dismissed the claim with prejudice.[18]  On August 1, 2023, the Court granted Huisman summary judgment on Oceaneering's remaining third-party claim for breach of contract based upon Huisman's alleged failure to procure sufficient insurance, and dismissed that claim with prejudice.  Thus, all of Oceaneering's third-party claims against Huisman have been dismissed.[19]

In the instant Motion, Dr. Davis moves to dismiss Huisman's third-party claims against him and Huisman's Rule 14(c) tenders for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction under Rule 12(b)(1).[20]  Dr. Davis asserts that the medical malpractice claims forming the basis of the third-party claims and tender against him fall outside of this Court's admiralty jurisdiction and are governed by Louisiana state law.[21]  Specifically, Dr. Davis argues that the Court lacks admiralty jurisdiction because his alleged medical malpractice

---

Motion to Strike the Rule 14(c) Tenders of Huisman North America Services, LLC.  *See*, R. Docs. 123 & 248.

[17] R. Docs. 179 & 180.

[18] R. Doc. 189.

[19] *See,* R. Doc. 14.

[20] R. Doc. 116 at p. 1.  The Court notes that although Pharma-Safe did not file a motion to formally adopt Dr. Davis's Motion, in its Answer to Third-Party Complaint, Cross-Claim and Jury Demand, "Pharma-Safe adopts, as if copied *in extenso*, the defense to Huisman's Rule 14(c) tender and motion to dismiss the same asserted by defendant Dr. Robert Davis. Rec. Doc. 116." R. Doc. 125 at p. 5.  The Court further notes that Pharma-Safe did not adopt Dr. Davis's defenses to Huisman's Rule 14(a) third-party claims in its Answer.  *See, generally,* R. Doc. 125.

[21] R. Doc. 116-1 at pp. 2-3, 5-12, & 16-18.

does not satisfy the maritime locus or maritime nexus requirements for such jurisdiction, as set forth by the Fifth Circuit in *Miller v. Griffin-Alexander Drilling Co.*[22]  Alternatively, if the Court determines that it has admiralty jurisdiction over Huisman's third-party claims, Dr. Davis asserts that the Louisiana Medical Malpractice Act (the "LMMA") applies through maritime supplementation.[23]  Dr. Davis argues that, under either scenario, the claims against him are premature for failure to convene a medical review panel and should be dismissed without prejudice.[24]

Huisman argues that the Motion should be denied because its claims against Dr. Davis fall within the Court's admiralty jurisdiction, they are not premature, and dismissal is not warranted under Rule 12(b)(6) for failure to convene a medical review panel.[25]  Huisman asserts that the maritime locus requirement for admiralty jurisdiction is clearly met because Cole suffered a stroke aboard Oceaneering's vessel and no part of Cole' treatment by Dr. Davis or Pharma-Safe occurred on land.[26]  Huisman asserts that the two requirements for meeting the maritime nexus test are also met because Cole's alleged misdiagnosis caused an actual interruption of maritime commerce and because providing medical services to crew members aboard a vessel in navigable waters bears a significant relationship to traditional maritime activity.[27]  Huisman argues, in the alternative, that if the requirements for admiralty

---

[22] *Id.* at pp. 5-12 (citing *Miller*, 873 F.2d 809, 812 (5th Cir. 1989)).
[23] R. Doc. 116-1 at pp. 3 & 12-16.
[24] *Id.* at pp. 3 & 4.
[25] R. Doc. 117.
[26] *Id.* at pp. 4-9.
[27] *Id.* at pp. 9-12 (citing *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

jurisdiction are not met, the Court should exercise supplemental jurisdiction over Huisman's third-party claims against Dr. Davis pursuant to 28 U.S.C. § 1367 because Dr. Davis's alleged malpractice forms part of the case and controversy that Cole seeks to prosecute against Huisman and Oceaneering.[28]  Huisman further asserts that its Rule 14(c) tender of Dr. Davis should stand because Huisman's claims against Dr. Davis sound in maritime law and because they arise out of the same transaction or occurrence as Cole's original claims.[29]  Huisman also contends that its claims for contribution and indemnity against Dr. Davis are valid,[30] and argues that this Court should stay, rather than dismiss, its claims against Dr. Davis if the Court determines that Dr. Davis is entitled to a medical review panel.[31]

Cole likewise opposes Dr. Davis's Motion.[32]  Cole, however, takes no position regarding Huisman's Rule 14(c) tender of Dr. Davis as a defendant, explaining that, "To date, whether Dr. Davis did anything wrong is questionable.  The evidence thus far indicates that the medic, Keith Thompson, is the primary reason that Plaintiff was not given emergency treatment sooner, thereby causing the major deterioration of Plaintiff's condition."[33]  Cole maintains that Oceaneering is vicariously liable for the negligence of the medical professionals it chose to treat its crewmembers, such that it does not matter whether Dr. Davis is involved in this case as a direct defendant.[34]  Cole, however, opposes the Motion to the extent that Dr. Davis asserts

---

[28] R. Doc. 117 at pp. 13-16.
[29] *Id*. at pp. 16-18.
[30] *Id*. at pp. 18-20.
[31] *Id*. at pp. 20-21.
[32] R. Doc. 118.
[33] *Id*. at p. 1.
[34] *Id*.

that the Court lacks maritime jurisdiction and/or that the LMMA should supplant or supplement maritime law. Cole argues that it is undisputed that the maritime locality prong of the analysis is met, as he was injured at sea by the onboard medic, and any consulting or treatment by Dr. Davis was provided through the medic for the benefit of treating a seaman on a vessel at sea.[35] Cole contends that the fact that Dr. Davis provided consultation and/or treatment through the medic for the purpose of treating a Jones Act seaman on a vessel at sea satisfies the four factors of the maritime nexus prong of the analysis set forth in *Miller v. Griffin-Alexander Drilling Co.*, cited by Dr. Davis in his Motion.[36] Cole further argues that there is no basis for supplanting maritime law with the LMMA, as suggested by Dr. Davis.[37] Cole asserts that the Court should deny Dr. Davis's Motion because maritime law applies to this case and, "This case is and always has been focused on the negligence of the medic, Keith Thompson and his employer Pharma-Safe, for whom Oceaneering is vicariously liable."[38]

In response, Dr. Davis reiterates the arguments raised in his Motion,[39] and further asserts that the maritime nexus requirement of the *Miller* analysis cannot be met based upon the direct involvement of the onboard medic in this case.[40] Dr. Davis maintains that this Court lacks maritime jurisdiction over Huisman's third-party claims against him, that the LMMA clearly applies to the claims, that Huisman's

---

[35] *Id.* at pp. 2-3.
[36] *Id.* at pp. 2-5 (citing *Miller*, 873 F.2d 809, 812 (5th Cir. 1989)).
[37] R. Doc. 118 at pp. 6-8.
[38] *Id.* at p. 8.
[39] *See, generally*, R. Doc. 122.
[40] R. Doc. 122 at pp. 1-2.

Rule 14(c) tender is improper, and that the Court must dismiss the claims without prejudice as premature.

## II.   LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1) Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(1), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter.  Motions to dismiss under Rule 12(b)(1), however, are viewed with disfavor in this Circuit and are rarely granted.[41]  The Fifth Circuit has held that when subject matter jurisdiction is challenged, the district court is "free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case."[42]  Thus, in reviewing a motion to dismiss for lack of subject matter jurisdiction, this Court can based its decision on the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[43]  "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case."[44]

The Fifth Circuit has cautioned, however, that when issues of fact are central both to subject matter jurisdiction and the claim on the merits, the district court must

---

[41] *Smith v. Gusman*, Civ. A. No. 06-4121, 2007 WL 2407304, at *4 (E.D. La. Aug. 20, 2007) (Engelhardt, J.) (citing *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997)).

[42] *Montez v. Department of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)).

[43] *Montez*, 392 F.3d at 149 (quoting *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).

[44] *Montez*, 392 F.3d at 149.

assume jurisdiction and proceed on the merits.[45]  Further, when "'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56."[46]

### B. Fed. R. Civ. P. 12(b)(6) Motion to Dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[47]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[48]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[49]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[50]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[51]  The Court, however, is not bound to accept as true

---

[45] *Id.* at 150.

[46] *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)).

[47] Fed. R. Civ. P. 12(b)(6).

[48] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[49] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).

[50] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).

[51] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

conclusory allegations, unwarranted factual inferences, or legal conclusions. [52]

"Dismissal is appropriate when the complaint on its face shows a bar to relief."[53]  In

deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from

considering information outside the pleadings, but may consider documents outside

of the complaint when they are: (1) attached to the motion; (2) referenced in the

complaint; and (3) central to the plaintiff's claims.[54]  The Court can also take judicial

notice of matters that are of public record, including pleadings that have been filed

in a federal or state court.[55]

## III.   ANALYSIS

During a telephone status conference held with a court reporter on August 7,

2023, the Court issued an oral order granting Oceaneering's motion to strike

Huisman's Fed. R. Civ. P. 14(c) tenders of Dr. Davis and Pharma-Safe.[56]  Thus, to the

extent Dr. Davis seeks to dismiss Huisman's Rule 14(c) tenders,[57] the Motion is

denied as moot.  The remainder of this Order will therefore only address Dr. Davis's

request to dismiss Huisman's third-party claims asserted against Dr. Davis pursuant

to Fed. R. Civ. P. 14(a).

---

[52] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[53] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[54] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[55] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).

[56] *See*, R. Docs. 123 &  248.

[57] R. Doc. 116-1 at pp. 16-18.

### A. Admiralty Jurisdiction

Through 28 U.S.C. § 1333(1), Congress vested federal courts with original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." While the traditional test for admiralty tort jurisdiction asked only whether the tort occurred on navigable waters, the jurisdictional rule was qualified by three subsequent Supreme Court opinions "aimed at keeping a different class of odd cases out."[58]  In *Executive Jet Aviation, Inc. v. Cleveland*, the Supreme Court expanded the test to require the underlying wrong to bear "a significant relationship to traditional maritime activity."[59]  The Supreme Court further held in *Foremost Ins. Co. v. Richardson* that while the collision of two pleasure boats in a navigable river estuary "had little to do with the maritime commerce lying at the heart of the admiralty court's basic work," the necessary relationship existed based upon the collision's potential disruptive impact upon maritime commerce "when coupled with the traditional concern that admiralty law holds for navigation . . . ."[60]  Finally, in *Sisson v. Ruby*, the Supreme Court elaborated upon *Executive Jet* and *Foremost* "by focusing on two points to determine the relationship of a claim to the objectives of admiralty jurisdiction."[61]  In *Sisson*, the Supreme Court considered whether the incident causing the harm "was of a sort likely to disrupt maritime commercial activity," and

---

[58] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531, 532, 115 S.Ct. 1043, 1047, 1048, 130 L.Ed.2d 1024 (1995).

[59] *Grubart*, 513 U.S. at 532-33, 115 S.Ct. at 1048 (quoting *Executive Jet*, 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972)) (internal quotation marks omitted).

[60] *Grubart*, 513 U.S. at 533, 115 S.Ct. at 1048 (quoting *Foremost*, 457 U.S. 668, 675, 102 S.Ct. 2654, 2658, 73 L.Ed.2d 300 (1982)) (internal quotation marks omitted).

[61] *Grubart*, 513 U.S. at 534, 115 S.Ct. at 1048.

whether the activity from which the incident arose had a substantial relationship with traditional maritime activity. [62]

In *Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* which was decided over a decade after *Sisson,* the Supreme Court made clear that, "After *Sisson,* then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions of both location and of connection with maritime activity."[63]  The Supreme Court explained that the location test is satisfied if the tort occurred on navigable waters or if the injury occurred on land but was caused by a vessel on navigable waters.[64]  For the connection test, courts must: (1) assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce; and (2) determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.[65]  According to the Supreme Court, the first prong of the connection test turns "on a description of the incident at an intermediate level of possible generality." [66]  As to the second prong of the connection test, the Supreme Court held that courts must "ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to

---

[62] *Grubart,* 513 U.S. at 533-34, 115 S.Ct. at 1048 (quoting *Sisson,* 497 U.S. 358, 363-67, 110 S.Ct. 2892, 2896-98, 111 L.Ed.2d 292 (1990)) (internal quotation marks omitted).

[63] *Grubart,* 513 U.S. at 534, 115 S.Ct. at 1048.

[64] *Id.* (*citing* 46 U.S.C. App. § 740).  The Court notes that, effective October 6, 2016, 46 U.S.C. App. § 470 is cited as 46 U.S.C. § 30101.

[65] *Grubart,* 513 U.S. at 534, 115 S.Ct. at 1048.

[66] *Grubart,* 513 U.S. at 538, 115 S.Ct. at 1051.

activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[67]

The Fifth Circuit has consistently applied *Grubart*'s location and connection tests in determining whether a court has admiralty jurisdiction over a tort claim.[68] Regarding the location test, the Fifth Circuit has held that the tort "occurred on" navigable waters if the harm "took effect" there.[69] While Dr. Davis urges the Court to consider four additional factors in determining whether the connection test has been met, as set forth by the Fifth Circuit in *Kelly v. Smith*[70] and adopted by *Miller v. Griffin-Alexander Drilling Co.*,[71] the Supreme Court rejected a similar request from the plaintiff in *Grubart* to apply the four-factor test where most of the victims, and one of the tortfeasors, were based on land.[72] The Supreme Court explained that, "It is worth recalling that the *Sisson* tests are aimed at the same objectives invoked to support a new multifactor test, the elimination of admiralty jurisdiction where the rationale for the jurisdiction does not support it."[73] The Supreme Court reasoned that, "If the tort produces no potential threat to maritime commerce or occurs during

---

[67] *Grubart*, 513 U.S. at 539-40, 115 S.Ct. at 1051.

[68] *See, In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014); *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013); *In re Bertucci Contracting Co., LLC*, 544 Fed.Appx. 308, 315 (5th Cir. 2013); *In re Katrina Canal Breaches Litigation*, 324 Fed.Appx. 370, 376 (5th Cir. 2009).

[69] *In Re Louisiana Crawfish Producers*, 772 F.3d at 1029 (citing *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999)).

[70] 485 F.2d 520, 525 (5th Cir. 1973).

[71] R. Doc. 116-1 at pp. 6-10 (citing *Miller*, 873 F.2d 809, 812 (5th Cir. 1989)). *See, Miller*, 873 F.2d at 812 (citing *Kelly*, 485 F.2d at 525).

[72] *Grubart*, 513 U.S. at 544, 115 S.Ct. at 1053 ("Grubart and the city say that the Fifth Circuit has applied a somewhat similar 'four-factor test' looking to 'the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law.' *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973); . . . .").

[73] *Grubart*, 513 U.S. at 544-45, 115 S.Ct. at 1053-54.

activity lacking a substantial relationship to traditional maritime activity, *Sisson* assumes that the objectives of admiralty jurisdiction probably do not require its exercise, even if the location test is satisfied."[74]  Dr. Davis fails to direct the Court to any Fifth Circuit authority applying *Kelly's* additional four-factor test after the Supreme Court rendered the *Grubart* opinion, and the Court is not aware of any. Moreover, in cases decided after *Grubart*, the Fifth Circuit has not applied the four-factor test cited by Dr. Davis to the connection test.[75]  Thus, this Court will not apply the four additional *Kelly* factors cited by Dr. Davis in determining whether the connection test is met in this case.

       *1.*   <u>*The location test is met in this case.*</u>

The location test is easily satisfied in this case, as Cole suffered his alleged injuries while working as a Jones Act seaman aboard a vessel in navigable waters. Dr. Davis seems to assert that the location test is not met because he was "a land-based physician" who provided a telemedicine consult on-shore and because "the alleged injury of malpractice as to Dr. Davis occurred on land."[76]  The Fifth Circuit has made clear that a tort "occurred on navigable waters" if that's where the harm "took effect."[77]  While it is true that Dr. Davis provided a consultation as a shoreside physician, he did so in his capacity as the vessel's assigned physician.  Additionally,

---

[74] *Grubart*, 513 U.S. at 545, 115 S.Ct. at 1054.

[75] *See, supra*, note 68.

[76] R. Doc. 116-1 at pp. 5-8.  The Court notes that Dr. Davis seems to refer to the location test as "the maritime nexus requirement" in his Motion (*Id.*), even though he subsequently argues that, "Even if the maritime locus requirement could be satisfied, the maritime nexus requirement is clearly not satisfied much like in *Miller*." *Id.* at p. 8.

[77] *In Re Louisiana Crawfish Producers*, 772 F.3d 1026, 1029 (5th Cir. 2014) (citing *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999)).

the harm – the alleged misdiagnosis of Cole's condition by Dr. Davis and the onboard medic – occurred while Cole was aboard the Oceaneering vessel on navigable waters. In his Amended Complaint, Cole alleges that when he was evacuated from the vessel and taken to the emergency room at West Jefferson Medical Center, "it was then determined that Plaintiff had experienced a stroke."[78]  Thus, Cole seems to allege that he suffered the stroke while he was aboard the Oceaneering vessel.  Based upon these facts, the Court finds that Huisman's third-party claims against Dr. Davis for contribution and/or indemnity satisfy the location test.

The Court finds additional support for its conclusion from *Parker v. Gulf City Fisheries, Inc.*, a Fifth Circuit case in which a shoreside physician gave advice to the wife of a ship captain concerning the captain's condition and treatment while he was on a voyage as a seaman, and the captain subsequently suffered a stroke after returning from the voyage.[79]  The captain asserted a maritime tort claim against the physician based upon negligence, asserting that his condition worsened while he was at sea, and the Fifth Circuit held that the claim fell within the court's admiralty jurisdiction "at least for the part of the negligence whose impact occurred at sea."[80]  Like Dr. Davis, the doctor in *Parker* contested maritime locality, asserting that "he engages in a strictly land-based practice and that he rendered his advice to Parker through Parker's wife and his treatment to Parker solely on land."[81]  The Fifth Circuit rejected that argument, finding that, "We have long held that 'so long as the place of

---

[78] R. Doc. 19 at ¶ 17.
[79] 803 F.2d 808, 828 (5th Cir. 1986).
[80] *Id.* at 829 (citation omitted).
[81] *Id.*

the injury . . . occurs upon navigable waters, the fact that the negligent act may have occurred on shore is of no relevance.'"[82]   While the *Parker* decision, issued pre-*Grubart*, applied the four *Kelly* factors in determining whether the court had admiralty jurisdiction, the Fifth Circuit concluded that, "Although Dr. Blanks carries out his practice entirely on land and does not especially seek seamen as patients, he knew that Parker was serving as a ship's captain, and he knew that Parker was at sea when he gave the medical advice."[83]   Further, "We have previously recognized [] that injuries to workers aboard ship fall within the admiralty jurisdiction even though similar injuries to their counterparts on shore do not.  *Dr. Blanks knew he was treating a seaman who was aboard ship.  That suffices.*"[84]   At least one other court in this Circuit, citing *Parker*, has likewise held that, "Since the medical malpractice alleged by Antoine and Zapata apparently took place, at least in part, while the deceased was still aboard the vessel, the 'maritime locality' requirement of the *Executive Jet* test for admiralty subject matter jurisdiction is met for all the medical care defendants."[85]

The Court reaches the same conclusion in this case.  It is undisputed that Dr. Davis knew he was providing a medical consultation to the onboard medic for a crew member who was aboard an Oceaneering vessel while that vessel was at sea.  While Dr. Davis argues *Parker* is an "outlier case," that it is "light on analysis," and that it

---

[82] *Id.* at 829-30 (quoting *Sperry Rand Corp. v. Radio Corp. of America*, 618 F.2d 319, 321 (5th Cir. 1980)).

[83] *Parker*, 803 F.2d at 830 (citations omitted).

[84] *Id.* (citation omitted) (emphasis added).

[85] *Antoine v. Zapata Haynie Corp.*, 777 F.Supp. 1360, 1363 (E.D. Tex. 1991) (citing *Parker*, 803 F.2d 828).

should not apply because it predates the Fifth Circuit's decision in *Miller* and the Supreme Court's decision in *Sisson*,[86] *Parker* has not been overruled or abrogated by the Supreme Court or by an en banc decision from the Fifth Circuit. As such, *Parker* remains binding authority on this Court.[87]   Additionally, Dr. Davis fails to acknowledge the facts that distinguish *Miller* from *Parker*, namely where the medical treatment occurred in each case. The Fifth Circuit in *Miller* found the *Parker* case distinguishable because unlike in *Parker*, where the medical treatment (or lack thereof) "took place onboard a ship through an intermediary, just as though the seaman had inquired directly of the landside physician from shipboard," the plaintiff's treatment in *Miller* "did not take place during the course of a sea voyage," he "was not treated in an admiralty situs as in *Parker*," and his physician "unlike the physician in *Parker*, was not knowingly treating a sea captain and on notice of the maritime context of the medical advice."[88]   While the *Miller* court commented that the *Parker* case was a fact situation "at the extreme edge[]" of admiralty jurisdiction, it clearly left the ruling in *Parker* intact. Thus, as in *Parker*, the Court concludes that Huisman's third-party claims against Dr. Davis satisfy *Grubart*'s location test.

    2. *The connection test is also met.*

    As previously discussed, the connection test requires this Court to: (1) assess the general features of the type of incident involved to determine whether the incident

---

[86] R. Doc. 116-1 at p. 10.
[87] *Society of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991) ("In this circuit, one panel may not overrule the decision, right or wrong, of a prior panel in the absence of an intervening contrary or superseding decision by the court en banc or the Supreme Court.") (citing authority).
[88] *Miller v. Griffin-Alexander Drilling Co.*, 873 F.2d 809, 811 (5th Cir. 1989) (citation omitted).

has a potentially disruptive impact on maritime commerce; and (2) determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.[89]  Instead of addressing these two factors, Dr. Davis addresses the four *Kelly* factors that were specifically rejected by the Supreme Court in *Grubart*.[90]  Nonetheless, the Court surmises that Dr. Davis asserts that neither factor is met because the presence of other crane operators aboard the vessel "minimize[ed] any impact on maritime commercial activity" caused by his alleged injuries, and because "there is nothing particularly maritime about Dr. Davis evaluating medical information he receives and making a decision or recommendation based off of that information."[91]

In contrast, Huisman argues that its claim satisfies the first prong of the connection test because there was an actual interruption of maritime commerce due to Cole's alleged misdiagnosis, as the vessel had to cease all operations associated with its primary activity, oil production in the Gulf of Mexico, relocate to a nearby platform, and make arrangements for Cole to be brought onto the platform by basket transfer.[92]  Cole similarly asserts that the first prong of the connection test is met because the Oceaneering vessel "was forced to stop its mission, leave its location, and travel to a platform where a helicopter would be available to transport Mr. Cole to an

---

[89] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995).

[90] 513 U.S. at 544, 115 S.Ct. at 1053 (citing *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973).  *See, Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1118 (5th Cir. 1995) ("While this circuit formerly applied a multi-factor approach to determine whether there was a substantial relationship to traditional maritime activity, *see, e.g.*, *Kelly v. Smith*, 485 F.2d 520, 525 (5th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974), that approach was rejected by the Supreme Court in *Grubart*.").

[91] R. Doc. 116-1 at p. 8.

[92] R. Doc. 117 at pp. 10-11 (*citing* R. Doc. 117-2 at pp. 2-3).

appropriate medical facility."[93]  Huisman and Cole both cite *Coats v. Penrod Drilling Corp.* for the notion that, "worker injuries . . . can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel."[94] Huisman asserts that the second prong of the connection test is met because the onboard medical care of vessel crew members is a traditional maritime activity.[95] Cole likewise asserts that, "there is nothing bearing a more significant relationship to traditional maritime activity than the provision of medical services to injured seaman [sic] while they were working at sea, thus easily satisfying the second factor from *Sisson*."[96]

The Court agrees with Huisman and Cole that both prongs of the connection test are met in this case.  As to the first prong, the Court must determine whether "the general features of the type of incident involved" had a "potentially disruptive impact on maritime commerce."[97]  The incident in this case was the misdiagnosis of a crew member aboard a vessel at sea by the vessel's physician and onboard medic.[98] The Court finds that this type of incident is likely to have a disruptive impact on maritime commerce because an ill or incapacitated crew member whose symptoms are left untreated or misdiagnosed is likely to require emergency treatment, including

---

[93] R. Doc. 118 at p. 5.
[94] *See,* R. Doc. 117 at p. 10 (quoting *Coats*, 61 F.3d 1113, 1119 (5th Cir. 1995)) (internal quotation marks omitted); R. Doc. 118 at p. 5 (quoting *Coats*, 61 F.3d at 1119) (internal quotation marks omitted).
[95] R. Doc. 117 at pp. 11-12.
[96] R. Doc. 118 at p. 5 (citing *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).
[97] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 539, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).
[98] The Court previously determined that Oceaneering, as the owner of the M/V OCEAN PATRIOT, had a non-delegable duty to provide prompt and adequate medical care to its seamen, including Cole, that Oceaneering delegated that duty to Pharma-Safe, and that Pharma-Safe selected Keith Thompson as the onboard medic to fulfill its contractual obligation to Oceaneering.  R. Doc. 225 at pp. 21-23.

an emergency evacuation of the crew member, which will interrupt the vessel's mission.   At least one Louisiana court has recognized that, "Faulty medical evaluations and treatment of seamen would appear to have a direct impact on the duty of cure, and would thus impact maritime shipping and commerce."[99]

That's exactly what happened in this case.   Cole alleges in his Amended Complaint that his condition deteriorated when he was repeatedly misdiagnosed by the onboard medic and the shoreside doctor (Dr. Davis), and eventually had to be evacuated from the Oceaneering vessel to receive medical treatment.[100]   According to Cole and Huisman, when Cole was medically evacuated from the Oceaneering vessel, the vessel had to cease all operations associated with its primary activity (oil production in the Gulf of Mexico), relocate to a nearby platform, and make arrangements to transport Cole to the platform by basket transfer, where a helicopter was available to transport Cole to an appropriate medical facility.[101]   Dr. Davis does not contest these allegations in his Reply brief.[102]   Although Dr. Davis claims that the presence of other crane operators aboard the Oceaneering vessel minimized "any impact on maritime commercial activity,"[103] his position ignores the potential, and in this case actual, disruption that a medical misdiagnosis of a vessel crew member can, and did, have on maritime commerce.   As such, the Court finds that the first prong of the connection test is met.

---

[99] *Williams v. Reiss*, 94-0672 (La. App. 4 Cir. 9/29/94), 643 So.2d 792, 796.
[100] R. Doc. 19 at ¶¶ 9-17.
[101] R. Doc. 117 at p. 11 (*citing* R. Doc. 117-2 at pp. 2-3); R. Doc. 118 at p. 5.
[102] R. Doc. 122.
[103] R. Doc. 116-1 at p. 8.

Turning to the second prong of the connection test, the Court must determine whether "the general character" of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.[104]  The Court finds that this prong is easily met because the alleged misdiagnosis was made by the vessel's physician and its onboard medic.  As explained by one of our sister courts, "The relevant activity here is onboard medical care of vessel crew members.  The onboard health care and medical treatment of a vessel's crew . . . is an activity traditionally undertaken by vessels."[105]  The Court agrees, and finds that the onboard medical treatment of a vessel's crew, even if through an intermediary, bears a substantial relationship to a traditional maritime activity.

In *Parker,* which involved the medical treatment (or lack thereof) of a ship captain aboard a vessel by his onshore physician, the Fifth Circuit held that, "It is difficult to conceive of a tort more intimately related to maritime activities than causing illness to a seaman during the course of a voyage.  The functions and roles of the parties are maritime."[106]  This Court agrees.  The Fifth Circuit further held that, "Although Dr. Blanks carries out his practice entirely on land and does not especially seek seamen as patients, he knew that Parker was serving as a ship's captain, and he knew that Parker was at sea when he gave the medical advice."[107]  The same is true here, where it is undisputed that Dr. Davis knew that Cole was aboard a vessel

---

[104] *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995) (quoting *Sisson v. Ruby*, 497 U.S. 358, 365, 364, and n.2, 110 S.Ct. 2892, 2897, 2896, and n.2, 111 L.Ed.2d 292 (1990)) (internal quotation marks omitted).
[105] *Antoine v. Zapata Haynie Corp.*, 777 F.Supp. 1360, 1364 (E.D. Tex. 1991).
[106] *Parker By and Through Parker v. Gulf City Fisheries, Inc.*, 803 F.2d 828, 830 (5th Cir. 1986).
[107] *Id*. (internal citation omitted).

at sea when he rendered medical advice in consultation with the vessel's onboard medic. The Court concludes that the provision of medical care to crew members aboard a vessel while the vessel is at sea is a traditional maritime activity. Additionally, the Fifth Circuit has held that, "Providing compensation for shipboard injuries is a traditional function of the admiralty laws."[108]  As such, the Court finds that the activity giving rise to Cole's injuries has a sufficient connection to traditional maritime activity to support the exercise of this Court's admiralty tort jurisdiction. The Court therefore denies the Motion to the extent Dr. Davis seeks dismissal of Huisman's third-party claims against it for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

### B. Maritime Supplementation

Dr. Davis argues, in the alternative, that even if the Court has admiralty jurisdiction over him, the claims should be dismissed through maritime supplementation due to the lack of traditional maritime regulation of medical malpractice and the strong state interests in regulating medical malpractice.[109]  A court may supplement general maritime law with state law if: (1) it does not conflict with an applicable act of Congress; (2) it does not work material prejudice to a characteristic feature of general maritime law; or (3) it does not interfere with the proper harmony and uniformity of the general maritime law in its international and

---

[108] *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (citing *Sisson* 497 U.S. at 368-75, 110 S.Ct. at 2898-2902 (Scalia, J., concurring) (arguing that all vessel-related torts fall within the admiralty jurisdiction).
[109] R. Doc. 116-1.

interstate relations.[110]  Dr. Davis asserts that the Louisiana Medical Malpractice Act
(the "LMMA") does not conflict with any act of Congress, and further claims that,
"Congress has affirmatively indicated that state medical malpractice law should fully
apply if not supplement maritime law thus evidencing a strong state interest in
medical malpractice regulation and a weak interest in maritime uniformity in this
area."[111]  Dr. Davis cites 46 U.S.C. § 30510 to support his position, which provides
that:

> In a civil action by any person in which the owner or operator of a vessel
> or employer of a crewmember is claimed to have vicarious liability for
> medical malpractice with regard to a crewmember *occurring at a*
> *shoreside facility*, and to the extent the damages resulted from the
> conduct of any shoreside doctor, hospital, medical facility, or other
> health care provider, the owner, operator, or employer is entitled to rely
> on any statutory limitations of liability applicable to the doctor, hospital,
> medical facility, or other health care provider in the State of the United
> States in which *the shoreside medical care* was provided.[112]

The Court, however, agrees with Cole that Dr. Davis's reliance on this statute "is
misplaced," as it only applies to medical malpractice claims stemming from treatment
that occurred "at a shoreside facility." [113]  As previously discussed, the alleged
malpractice in this case did not occur at a shoreside medical facility.  Rather, Dr.
Davis's treatment occurred exclusively while Cole was aboard an Oceaneering vessel
that was at sea.  Thus, § 30510 does not apply to the facts of this case.

---

[110] *In re Antill Pipeline Const. Co., Inc.*, 866 F.Supp. 2d 563, 567 (5th Cir. 2011) (citation omitted).
[111] R. Doc. 116-1 at pp. 14-15.
[112] 46 U.S.C. § 30510 (emphasis added).
[113] *See, Adams v. Liberty Maritime Corp.*, 560 F. Supp. 3d 698, 724 (E.D.N.Y. 2020) ("However, § 30510
critically applies only to treatment 'occurring at a *shoreside facility*'; the provision reiterates this point
by stating that a vessel owner may rely on the statute of limitations in the State 'in which the *shoreside*
medical care was provided.'  46 U.S.C. § 30510 (emphasis added).").

Dr. Davis further asserts that, "the LMMA does not work prejudice on the features of general maritime law, nor does it interfere with uniformity" because the medical review panel requirement "is merely a pre-suit protection."[114]  Dr. Davis contends that a medical review panel also serves a useful purpose in the litigation as a source of expert evidence on complex issues of medical diagnoses, treatment, decision making, and ultimately the standard of care.[115]  Dr. Davis does not cite any legal authority to support this position.  While Dr. Davis asserts that, "Fifth Circuit precedent establishes that medical malpractice claims are not maritime,"[116] the language quoted by Dr. Davis is merely a district court's summary of a party's argument.[117]  This citation is misleading.[118]  Additionally, Dr. Davis follows that quote by stating that, "Indeed, a survey of case law on medical malpractice claims allegedly arising under the general maritime law reveals (1) relatively few cases where this type of claim even arises and (2) no particularized maritime rules, customs, or traditions for such a claim."[119]  Notably, and inexplicably, Dr. Davis does not cite any case to support this statement.

The Court recognizes that in the foregoing case quoted by Dr. Davis, *Derouen v. Hercules Liftboat Co., LLC*, another Section of this Court held that, "Fifth Circuit

---

[114] R. Doc. 116-1 at p. 14.

[115] *Id.*

[116] R. Doc. 116-1 at p. 14 (quoting *Derouen v. Hercules Liftboat Co., LLC*, Civ. A. No. 13-4805, 13-4806, 13-5060, 2016 WL 5869786, at *3 (E.D. La. Oct. 7, 2016) (Fallon, J.)).

[117] *Derouen*, Civ. A. No. 13-4805, 2016 WL 5869786 at *3 ("Hercules acknowledges that Fifth Circuit precedent establishes that medical malpractice claims are not maritime.  (citing *Joiner*, 677 F.2d at 1035).  However, it contends that it is not clear 'whether the tendered claim itself [in a Rule 14(c) tender] must be a maritime claim.") (citing *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035 (5th Cir. 1982).

[118] The Court assumes that counsel did not intend to mislead the Court.

[119] R. Doc. 116-1 at p. 14.

law indicates that state law—not maritime law—governs third-party claims maritime tortfeasors bring against treating physicians."[120]  The *Derouen* court cites *Joiner v. Diamond M. Drilling Co.* to support that position, a case involving an onshore physician who treated a seaman when he was hospitalized at a shoreside facility after suffering an injury while working on an offshore drilling vessel.[121]  In *Joiner*, the Fifth Circuit held that, "We can find absolutely no support for the proposition that an ordinary, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce.  Rather, it has been consistently held that it is state law which controls in cases such as this."[122]  The instant case is clearly distinguishable from the facts of *Joiner* and *Derouen* because the alleged harmful acts in both of those cases – the alleged malpractice – occurred on land at shoreside medical facilities.[123]  Indeed, the *Derouen* court made clear that, "Plaintiffs were not seamen," and, further, "the alleged harmful acts all occurred on land."[124]  In contrast, Dr. Davis knew at the time of his medical consultation that he was providing a consultation for an injured seaman who was aboard an Oceaneering vessel while the vessel was at sea.  Thus, unlike in *Joiner* and *Derouen*, the Court

---

[120] *Derouen*, Civ. A. No. 13-4805, 2016 WL 5869786 at *4 (citing *Joiner*, 677 F.2d at 1038).

[121] *Joiner*, 677 F.2d at 1037.

[122] *Id*. at 1037-38.

[123] *See*, *Joiner*, 677 F.2d at 1037 ("After the accident, the injured seaman was hospitalized and placed under the care and treatment of a private physician, Dr. C Babson Fresh.  Unfortunately, the patient's condition steadily deteriorated and on August 31, 1977, Ronald Joiner died. . . . Diamond M in turn filed a third-party complaint against C. Babson Fresh, the doctor whose alleged onshore malpractice was said to have ultimately caused Joiner's death."); *Derouen*, Civ. A. No. 13-4805, 2016 WL 5869786 at *4 ("The tort claim in the present case does not meet either condition of federal admiralty jurisdiction.  The alleged harmful acts all occurred on land.  The surgical procedure was not connected to maritime activity.").

[124] *Derouen*, Civ. A. No. 13-4805, 2016 WL 5869786 at *1 & 4.

finds that Dr. Davis submitted himself to the Court's admiralty jurisdiction by acting as the vessel's physician and providing medical consultations to seamen aboard a vessel at sea.

The Court recognizes that at least one court in this Circuit has held that, "it is nationally recognized that the standards of medical malpractice are a matter of local and state concern."[125]  In that case, *Harrison v. Glendel Drilling Co.*, the district court cites *Joiner* for the notion that, "We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce.  Rather, it has been consistently held that it is *state* law which controls in cases such as this."[126]  The Court notes, however, that *Harrison*, like *Joiner* and *Derouen*, is distinguishable from this case because it involved a plaintiff who "was not working aboard a vessel on navigable waters at any time while he was receiving treatment from Dr. Blanda," and, "the medical treatment, whether negligent or otherwise, took place entirely on land and the effects of that treatment occurred entirely on land."[127]  Additionally, the Fifth Circuit authority cited in *Joiner* and relied upon by the court in *Harrison* involved claims brough against hospitals[128] or against physicians whose treatment occurred entirely on land.[129]  As such, this Court agrees with the *Harrison* court's

---

[125] *Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413, 1420 (W.D. La. 1988).

[126] *Id.* (quoting *Joiner*, 677 F.2d at 1038 (citing authority)) (emphasis in original).

[127] *Harrison*, 679 F.Supp. at 1420.

[128] *See, Joiner*, 677 F.2d at 1038-39 (citing *United States Lines, Inc. v. U.S.*, 470 F.2d 487, 491 (5th Cir. 1972) (hospital located in Texas, Texas state law applied to shipowner's third-party claim against hospital); *Penn Tanker v. United States*, 409 F.2d 514, 519 at n.9 (5th Cir. 1969) (hospital located in Georgia, Georgia state law applied to shipowner's third-party claim against hospital)).

[129] *See, Joiner*, 677 F.2d at 1038-39 (citing *McCann v. Falgout Boat Co.*, 44 F.R.D. 34 (S.D. Tex. 1968) (shipowner's third-party claim against doctor arises under state law).  *See, McCann*, 44 F.R.D. at 40

contention that, "the facts and authorities establish and recognize the need for local and state control of medical malpractice claims"[130] *when* the alleged malpractice and corresponding injuries occur within the state and not on navigable waters.  But that is not the case here, where the alleged malpractice was committed by a shoreside physician who knew that he was providing a medical consultation to a seaman who was aboard a vessel at sea.  Dr. Davis has failed to direct the Court to any authority indicating that Louisiana has a special interest in regulating medical malpractice claims brought against physicians rendering medical treatment to someone aboard a vessel while the vessel is at sea.

To the extent Dr. Davis cites *Williams v. Reiss* to support his argument that the Court should supplement maritime law with the LMMA,[131] the facts of that case are clearly distinguishable from the case at bar.  The plaintiff in *Williams* alleged that he injured his back while working aboard a tugboat that was on the Mississippi River because a physician who conducted his pre-employment physical "failed to warn Williams that he had a back condition."[132]  Although the plaintiff argued that his suit was cognizable in admiralty under the saving to suitors clause, 28 U.S.C. § 1333, the Louisiana Fourth Circuit Court of Appeal held that, "this case is not within admiralty jurisdiction, and even if it were, Williams would still be required to proceed before a

---

& 42 ("Admiralty jurisdiction depends upon the maritime nature of the event out of which the claim arises.  In the case of a tort, such jurisdiction depends upon the locality of the injury. . . . The medical malpractice tort alleged in the third-party complaint against Dr. Metzner arose in San Antonio, Texas, and by no stretch of the imagination occurred upon the high seas or upon navigable waters.") (internal citation omitted).

[130] *Harrison*, 679 F.Supp. at 1421.
[131] R. Doc. 116-1 at p. 16 (citing *Williams*, 94-0672 (La. App. 4 Cir. 9/29/94), 643 So.2d 792 (1994)).
[132] *Williams*, 94-0672, 643 So.2d at 793-94.

medical review panel in accordance with the Louisiana Medical Malpractice Act."[133] The *Williams* court held that, "Williams's claims, which are medical malpractice in nature and are only fortuitously and incidentally connected to maritime activities, fail to meet the two-part test of *Executive Jet*."[134]   Although the *Williams* court determined that the claims did not fall within federal admiralty jurisdiction, it nonetheless further held that, "even if this case did fall within admiralty jurisdiction, application of federal maritime law does not preclude application of state law to supplement any interstitial gaps in maritime law."[135]

The *Williams* court further stated that, "As mentioned above, regulation of medical malpractice has traditionally been reserved to the states; consequently there is no federal legislation or admiralty common law pertaining to recovery in medical malpractice."[136]   In doing so, the court seems to refer back to its citation of *Harrison* and *Joiner* for the notion that "it is nationally recognized that the standards of medical malpractice are a matter of local and state concern."[137]   As the Court previously explained, however, *Harrison* and *Joiner* (like *Williams*) involved medical malpractice that allegedly occurred at an onshore facility in Louisiana.  The *Williams* court also cited *Miller v. Griffin-Alexander Drilling Co.* to support its position, but that case is also distinguishable because it involved "physicians who practiced

---

[133] *Id*. at 794 (citations omitted).

[134] *Id*. at 795 (citing *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 273, 93 S.Ct. 493, 507, 34 L.Ed.2d 454 (1972)).

[135] *Williams*, 94-0672, 643 So.2d at 797.

[136] *Id*.

[137] *Id*. at 796 (quoting *Harrison v. Glendel Drilling Co.*, 679 F.Supp. 1413, 1420-21 (W.D. La. 1988); citing *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1038 (5th Cir. 1982)) (internal quotation marks omitted).

medicine and treated the plaintiff on shore."[138]  The Court therefore agrees with Cole that *Williams* is not controlling and that the foregoing language in *Williams* constitutes mere dicta.[139]

The Court further finds that there is a national interest in uniformity of law and remedies for seamen who seek medical treatment while aboard a vessel at sea. The Court agrees with Cole that subjecting medical malpractice claims like these, which stem from a shoreside physician rendering a medical consultation to a seaman aboard a vessel at sea, to the law of whatever state in which the onshore physician happens to be located at the time of consultation, could result in inconsistent, and even contradictory, results depending upon the location of the onshore physician. Moreover, physicians like Dr. Davis, who are contracted to provide medical care to crew members while they are aboard a vessel at sea, have knowingly submitted themselves to the Court's admiralty jurisdiction.[140]

The Court also finds persuasive a case cited by Cole in his opposition brief, *Adams v. Liberty Maritime Corporation*.[141]  Although *Adams* is a case from the Eastern District of New York, it involves medical malpractice claims arising out of a Louisiana doctor's provision of telemedicine to a seaman who was aboard the

---

[138] *Miller v. Griffin-Alexander Drilling Co.*, 873 F.2d 809, 812 (5th Cir. 1989).

[139] *See*, R. Doc. 118 at pp. 6-7.

[140] *See, Parker by and Through Parker v. Gulf City Fisheries, Inc.*, 803 F.2d 828, 830 (5th Cir. 1986) ("Dr. Blanks knew he was treating a seaman who was aboard a ship.  That suffices [for admiralty jurisdiction]."); *See, Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1038 (5th Cir. 1982) ("A private land-locked physician who treats a patient [at a shoreside hospital] who happens to have been injured at sea, does not thereby enter into an implied maritime contract.  We can find absolutely no support for the proposition that an ordinary, private, onshore physician who treats an injured sailor has thereby submitted himself to the rules of maritime commerce.  Rather it has been consistently held that it is state law which controls in cases such as this.").

[141] R. Doc. 118 at p. 7 (citing *Adams*, 560 F. Supp. 3d 698, 724 (E.D.N.Y. 2020)).

defendant's vessel at sea when the treatment was provided.[142]  In addressing the negligence of the doctor, the *Adams* court held that, "Future Care (and, by extension, Dr. Bourgeois) clearly provided medical services 'under contract' for Liberty 'as part of [Liberty's] operational activities,' i.e., as a means for Liberty to discharge its duty to provide medical treatment for its crew."[143]  The court explained that, "The proper standard for malpractice in Jones Act cases 'is simply whether the physician exercised the degree of care and skill of the average qualified practitioner of the art and science of medicine.'"[144]  The *Adams* court further held that, "In order to establish such malpractice, expert testimony is required to establish 'the proper standard of medical care against which to measure the defendant's actions.'"[145]  The *Adams* court ultimately concluded that the Louisiana statute of limitations applicable to medical malpractice claims did not apply to the plaintiff's claims, and that the claims were instead governed by – and fell within – the three-year limitations period for maritime tort claims.[146]

The Court reaches the same conclusion here.  Dr. Davis has failed to direct the Court to any controlling legal authority indicating that the LMMA should supplement the Court's admiralty jurisdiction in this case, where the alleged medical malpractice was committed by a shoreside physician who knew that he was providing ongoing medical consultations for seamen and crew members who were aboard a

---

[142] *Adams*, 560 F. Supp. 3d at 703-715.
[143] *Id*. at 721 (citations omitted).
[144] *Id*. (quoting *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 680 (2nd Cir. 1971)).
[145] *Adams*, 560 F. Supp. 3d at 721 (quoting *Dinnerstein v. United States*, 486 F.2d 34, 36 (2nd Cir. 1973)).
[146] *Adams*, 560 F.Supp.3d at 724 (*citing* 46 U.S.C. § 30106).

vessel at sea.  Instead, the controlling authority indicates that this Court should apply substantive admiralty law to Huisman's third-party claims against Dr. Davis for indemnity and/or contribution to the extent Huisman is held liable to Cole and to the extent that Dr. Davis's negligence, gross negligence, or fault gave rise to Cole's claim for maintenance and cure against Huisman.[147]  As such, Dr. Davis's Motion is denied to the extent that he asks this Court to dismiss Huisman's third-party claims on the basis that they are subject to a medical review panel under the LMMA through maritime supplementation.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss for Failure to State a Claim and for Lack of Jurisdiction, filed by third-party defendant, Robert Davis, M.D.[148] is **DENIED in part and DENIED in part as moot.**  The

---

[147] R. Doc. 108 at ¶¶ 17-18.  *See*, *Parker by and Through Parker v. Gulf City Fisheries, Inc.*, 803 F.2d 828 (5th Cir. 1986); *Antoine v. Zapata Haynie Corp.*, 777 F.Supp. 1360, 1364 (E.D. Tex. 1991) (concluding that the court has maritime subject matter jurisdiction over the medical malpractice claims and denying "the defendants/third-party defendants' Motion to Declare Louisiana Law as the Rule of Decision . . . ."); *Hamm v. TRTB, LLC*, Civ. A. No. 08-1710, 2010 WL 4627078, at *9 (W.D. La. July 30, 2010), report and recommendation adopted, Civ. A. No. 08-1710, 2010 WL 4607529 (W.D. La. Nov. 5, 2010), aff'd sub nom. *Hamm v. Island Operating Co.*, 450 F. Appx. 365 (5th Cir. 2011) ("It is true that, '[w]ith admiralty jurisdiction comes the application of substantive admiralty law.' *East River S.S. Corp. v. Transamerica Delaval Inc.*, 476 U.S. 858, 864, 106 S.Ct. 2295, 2298-2299, 90 L.Ed.2d 865 (1986).").
[148] R. Doc. 116.

Motion is **DENIED as moot** to the extent that Dr. Davis seeks to dismiss Huisman's Fed. R. Civ. P. 14(c) tenders, as they have been stricken by the Court.  The Motion is otherwise **DENIED.**

New Orleans, Louisiana, August 22, 2023.

**WENDY B. VITTER**
**United States District Judge**