## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARRYL COLE**                                    **CIVIL ACTION**

**VERSUS**                                         **NO. 21-1348**

**OCEANEERING INTERNATIONAL, INC.**               **SECTION: D (5)**

### ORDER AND REASONS

Before the Court is a Motion for Summary Judgment, filed by Pharma-Safe Industrial Services, Inc. ("Pharma-Safe"), regarding its cross-claim against Huisman North American Services, LLC ("Huisman") for defense and indemnity for the claims and damages allegedly incurred by plaintiff, Darryl Cole.[1]  Huisman opposes the Motion,[2] and Pharma-Safe has filed a Reply.[3]  With leave of Court, Pharma-Safe filed a Supplemental Brief in further support of the Motion,[4] and Huisman filed a response thereto.[5]

Also before the Court is Huisman's Cross-Motion for Summary Judgment on Cross-Claim by Pharma-Safe.[6]  Pharma-Safe opposes the Motion,[7] and Huisman has filed a Reply.[8]

After careful consideration of the parties' memoranda and the applicable law, Pharma-Safe's Motion is **DENIED** and Huisman's Motion is **GRANTED**.

---

[1] R. Doc. 136.
[2] R. Doc. 139.
[3] R. Doc. 142.
[4] R. Docs. 199, 200, 202.
[5] R. Docs. 200 & 203.
[6] R. Doc. 172.
[7] R. Doc. 183.
[8] R. Doc. 191.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[9]

This is a maritime personal injury case, and the cross-motions before the Court concern a dispute between Pharma-Safe and Huisman regarding Huisman's alleged duty to defend and indemnity Pharma-Safe for the claims asserted by plaintiff, Daryl Cole, in this matter.  Cole alleges that on or about the night of February 17, 2021, while working as a crane operator aboard the M/V OCEAN PATRIOT, owned  by Oceaneering International, Inc. ("Oceaneering"), he began to feel lightheaded, became dizzy, and vomited in the trash can in his quarters.[10]  Cole alleges that he felt sick and vomited a second time around 2:00 a.m. that same night, and that at around 5:00 a.m. on February 18, 2021, he reported to the captain that he was feeling pain and numbness in his head, eyes, and neck, and was also experiencing dizziness, lightheadedness, and nausea.[11]  Cole asserts that he asked to see the onboard medic, that he reported his symptoms to the onboard medic between 5:10 a.m. and 6:00 a.m. on February 18, 2021, and that the medic examined him and diagnosed him with seasickness and an abscess in his mouth.[12]  Cole alleges that he told the medic and the captain that he was a career mariner who does not get seasick, but that the onboard medic spoke to a shoreside physician, maintained the diagnosis, and administered an antibiotic and medicine for seasickness recommended by the shoreside physician.[13]  Cole alleges that for the remainder of the day on February 18,

---

[9] The facts and procedural history of this case have been set forth in great detail in several orders issued by this Court and, for the sake of brevity, will only be summarized here.  *See*, R. Docs. 189, 205, 223, 224, 225, & 229.

[10] R. Doc. 19 at ¶ 9.

[11] *Id*. at ¶ 10.

[12] *Id*. at ¶¶ 11-12.

[13] *Id*. at ¶ 12.

2021 through February 19, 2021, the vessel was down due to bad weather, during which time he stayed in bed, but that his symptoms persisted and got worse.[14] Cole claims that he continued to complain to the medic who was checking in on him, and that the medic continued to give him crackers, antibiotics, and seasickness pills.[15]

Cole asserts that on February 20, 2021, he thought he felt good enough to relieve another crane operator for about half an hour so the other crane operator could have dinner, after which Cole returned to his bed.[16] Cole alleges that he tried to work his shift on February 21, 2021, but at around 9:00 a.m., while changing out some absorbent pads on a leak on the back of the crane, he began feeling dizzy, lightheaded, nauseated, he had the same pain/numbness from his neck to his eyes, and he vomited, became delusional, and fell in and out of consciousness.[17] Cole asserts that during this time, the medic suspected that he might have COVID-19.[18] Cole alleges that, despite his condition, the decision to evacuate him did not take place until 1:05 p.m.[19] Cole asserts that at around 3:15 p.m., he was flown back to shore and immediately taken to the emergency room at West Jefferson Medical Center, where it was determined that he had experienced a stroke.[20]

On July 15, 2021, Darryl Cole filed this suit against Oceaneering, the owner of the vessel upon which he was working at the time of his alleged injuries, asserting

---

[14] *Id.* at ¶ 13.
[15] *Id.*
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15.
[18] *Id.*
[19] *Id.* at ¶ 16.
[20] *Id.* at ¶ 17.

claims under the Jones Act, general maritime law, and Louisiana law.[21]  Although Huisman was not named as a defendant, Cole alleged in the Complaint that Huisman was his direct employer and that Oceaneering was his Jones Act employer at the time of his injuries through the borrowed servant doctrine.[22]  On December 20, 2021, with the Court's consent, Oceaneering filed a Third-Party Complaint against Huisman, asserting that Oceaneering and Huisman entered into a Purchase Order on February 9, 2021 (the "2021 Purchase Order"), through which Huisman agreed to supply a crane operator (Cole) to Oceaneering.[23]  Relying upon the terms and conditions contained in the 2021 Purchase Order, Oceaneering asserted third-party claims against Huisman for defense and indemnity and for breach of contract based upon Huisman's failure to procure adequate insurance coverage to protect/insure Oceaneering from Cole's claims.[24]  On December 27, 2021, also with the Court's consent, Cole filed an Amended Complaint for Damages, naming Huisman as an additional defendant and asserting a claim against Huisman for maintenance and cure benefits.[25]

On October 10, 2022, Huisman filed a Third-Party Complaint against Pharma-Safe and Dr. Robert Davis, asserting claims for contribution and/or indemnity against them under Fed. R. Civ. P. 14(a) and tendering Pharma-Safe and Dr. Davis as the proper defendants as to all claims asserted by Cole pursuant to Fed. R. Civ. P. 14(c).[26]

---

[21] R. Doc. 1 at ¶¶ 20-42.
[22] *Id*. at ¶ 6.
[23] R. Docs. 12-14.  *See*, R. Doc. 14 at ¶¶ 5-7.
[24] R. Docs. 12-14.
[25] R. Docs. 16, 18, & 19.  R. Doc. 19 at ¶¶ 3, 22, 46-53.
[26] R. Doc. 108.

In response, Pharma-Safe filed an Answer to Third-Party Complaint, Cross-Claim and Jury Demand, asserting a cross-claim against Huisman for defense and indemnity based upon the contract entered into between Oceaneering and Huisman.[27]

Since that time, Cole and Huisman have reached a settlement regarding Cole's claim for maintenance and cure benefits, and that claim was dismissed with prejudice at the request of the parties.[28]   The Court has also granted Huisman summary judgment on Oceaneering's third-party claims for defense and indemnity and for breach of contract, and those claims have been dismissed with prejudice.[29] Additionally, on August 10, 2023, the parties reached a settlement regarding Cole's claims.[30]

## A. Pharma-Safe's Motion for Summary Judgment

In the instant Motion, Pharma-Safe asserts that Oceaneering and Huisman entered into a 2013 Mutual Indemnity and Waiver Agreement that requires Huisman to defend, indemnify, and hold harmless Oceaneering and its contractors and subcontractors, such as Pharma-Safe, for injuries sustained by Huisman's employees, including Cole.[31]   According to Pharma-Safe, the defense and indemnity provision in the 2013 Mutual Indemnity and Waiver Agreement provides that Huisman "SHALL RELEASE, INDEMNIFY AND HOLD HARMLESS . . . THE COMPANY GROUP, FROM AND AGAINST

---

[27] R. Doc. 125.
[28] R. Docs. 179 & 180.
[29] *See*, R. Docs. 189 & 229.
[30] R. Doc. 250.
[31] R. Doc. 136-1 at pp. 5-6 & 7.  *See*, *Id*. at pp. 2-3 (*quoting* R. Doc. 136-3 at p. 2, ¶¶ 1(a) & 2).

ANY AND ALL CLAIMS . . . FOR INJURY TO, ILLNESS OR DEATH OF ANY MEMBER OF THE CONTRACTOR GROUP . . . WHICH INJURY, ILLNESS, DEATH, DAMAGE OR LOSS ARISES OUT OF OR IS INCIDENT TO THE SERVICES."[32] Pharma-Safe argues that Huisman's narrow reading of the indemnity provision, which requires Huisman to provide defense and indemnity only if Cole suffered his stroke while operating a crane, is not supported by the 2013 Mutual Indemnity and Waiver Agreement or the jurisprudence.

Pharma-Safe asserts that Cole's injuries "arise out of or are incident to" Huisman's crane operating services because "It is undisputed that but for the Purchase Order between Huisman and Oceaneering that [sic] Cole would not have been aboard the OCEAN PATRIOT."[33] Citing *Fontenot v. Mesa Petroleum Co.*, Pharma-Safe argues that the broad language in the indemnity provision applies to Cole's injuries because it encompasses "***all*** activities reasonably incident or anticipated by the principal activity of the contract."[34] Pharma-Safe also cites *Tinoco v. Marine Systems, Inc.* to support its position that the indemnity provision applies here because Cole was aboard the M/V OCEAN PATRIOT as part of his work duties for Huisman.[35] Pharma-Safe asserts that the intent of the 2013 Mutual Indemnity and Waiver Agreement was to avoid disputes regarding whether Huisman's employee was acting in the limited scope of work, as argued by Huisman, and for Huisman and

---

[32] R. Doc. 136-1 at p. 3 (*quoting* R. Doc. 136-3 at p. 2, ¶ 2).

[33] R. Doc. 136-1 at p. 8.

[34] *Id.* at p. 9 (quoting *Fontenot*, 791 F.2d 1207, 1214-15 (5th Cir. 1986)) (internal quotation marks omitted and emphasis added by Pharma-Safe).

[35] R. Doc. 136-1 at pp. 9-11 (citing *Tinoco*, Civ. A. No. 07-6845, 2009 WL 1405029 (E.D. La. May 19, 2009) (Lemmon, J.)).

Oceaneering to each be responsible for their respective employees and to provide the other with defense and indemnity.[36]

Huisman argues that the Motion should be denied for several reasons, but mainly because Cole's alleged illness did not arise out of the crane services Huisman agreed to provide to Oceaneering.[37] Huisman points out that there is no evidence before the Court that Cole's stroke was related to his work as a crane operator or the services that Huisman agreed to provide to Oceaneering.[38] Huisman also asserts that the outcome of Pharma-Safe's Motion depends upon "several contested issues that are awaiting resolution by the Court, any of which could render Pharma-Safe's Motion moot," including whether Oceaneering and Huisman's relationship is governed by the 2021 Purchase Order or by the 2013 Mutual Indemnity and Waiver Agreement, whether Cole is a borrowed servant of Oceaneering and not an employee of Huisman, and whether Cole is a Jones Act seaman.[39] Huisman then asserts that Pharma-Safe is not entitled to defense and indemnity because Pharma-Safe is a third-party that does not fall within the definition of "The Company Group," as set forth in the 2013 Mutual Indemnity and Waiver Agreement.[40]

Huisman further asserts that Pharma-Safe's Motion fails for the same reasons that Oceaneering's third-party claims for defense and indemnity fail, namely because Cole's illness arose completely independent of any crane services Huisman agreed to

---

[36] R. Doc. 136-1 at p. 11.
[37] R. Doc. 139 at p. 1.
[38] *Id*. at pp. 4-5.
[39] R. Doc. 139 at pp. 6-8 (*citing* R. Docs. 45, 55, 57, 67, & 70). The Court notes that since the filing of Huisman's Opposition brief on January 16, 2023, the Court has ruled on all of the motions referenced therein. *See*, R. Docs. 189, 223, & 224.
[40] R. Doc. 139 at pp. 8-10 (*quoting* R. Doc. 139-5 at p. 2, ¶ 1).

provide to Oceaneering.[41]  Huisman points out that Pharma-Safe relies on only two authorities in its Motion, *Fontenot* and *Tinoco*, and ignores the correct and current Fifth Circuit authority regarding indemnity clauses in maritime contracts, *Marathon Pipe Line Co. v. M/V Sea Level II* and *International Marine, LLC v. Integrity Fisheries, Inc.*[42]  Huisman claims that under *Marathon Pipe* and *Int'l Marine*, defense and indemnity is not owed when, like here, the accident occurs completely independent of the services a potential indemnitor agreed to provide under its contract.[43]  Alternatively, Huisman asserts that the Court should defer ruling on Pharma-Safe's Motion until Huisman receives certain outstanding discovery regarding the issue of indemnities owed between the parties.[44]

In response, Pharma-Safe maintains that it is owed defense and indemnity as a contractor or subcontractor of Oceaneering under the 2013 Mutual Indemnity and Waiver Agreement, and argues that the cases cited by Huisman are distinguishable from the facts of this case.[45]  Pharma-Safe further asserts that the Court should not defer ruling on its Motion because the discovery propounded by Huisman will have no effect on the interpretation of the defense and indemnity provisions at issue.[46]  In its Supplemental Brief, Pharma-Safe asserts that Cole's recent deposition testimony demonstrates that he was performing crane services when his symptoms became

---

[41] R. Doc. 139 at pp. 11-12.
[42] *Id*. at pp. 13-15 (citing *Marathon Pipe*, 806 F.2d 585, 591 (5th Cir. 1986); *Int'l Marine*, 860 F.3d 754 (5th Cir. 2017)).
[43] R. Doc. 139 at pp. 14-15.
[44] *Id*. at pp. 19-20.
[45] R. Doc. 142 at pp. 1-7.
[46] *Id*. at pp. 7-8.

exacerbated and exaggerated on February 21, 2021.[47]  Pharma-Safe also asserts that Cole's expert neurologist, Dr. Mohnot, has opined that Cole "developed full blown stroke on February 21, 2021," which, according to Cole's testimony, occurred when he was acting as a crane operator.[48]  Thus, Pharma-Safe argues that, "it is undoubted that [Cole's] alleged symptoms arose in the services of the contract."[49]

In its response to Pharma-Safe's Supplemental Brief, Huisman asserts that Pharma-Safe has not provided the Court with new or relevant evidence, and that the Court should enter judgment for Huisman on the same basis that it granted Huisman's motion for summary judgment on Oceaneering's cross-claim for defense and indemnity on March 31, 2023.[50]  Huisman claims that it is evident from Pharma-Safe's Motion and the Court's March 31, 2023 Order and Reasons that both Pharma-Safe and the Court were aware of the fact that Cole was attempting to work his shift in the crane on February 21, 2021 when "his four-day old symptoms worsened causing him to be evacuated from the boat."[51]  Huisman asserts that the instant Motion is controlled by the same principles and legal precedents cited by the Court in its March 31, 2023 Order and Reasons, and points out that Pharma-Safe did not address the order in its Supplemental Brief.[52]  Huisman argues that Pharma-Safe fails to offer any evidence that Cole's stroke was "reasonably incident or anticipated by the

---

[47] R. Doc. 202 (*citing* R. Doc. 202-1).

[48] R. Doc. 202 at pp. 2-3 (*citing* R. Doc. 202-2).

[49] R. Doc. 202 at p. 3.

[50] *Id*. at p. 1 (*citing* R. Doc. 189).

[51] R. Doc. 203 at pp. 1-2.

[52] *Id*. at pp. 2-3.

principal activity of the contract."[53]  Huisman asserts that if Cole was injured as alleged, his injuries resulted from Pharma-Safe's negligent contractual performance, independent of Huisman's performance.[54]  Relying upon the Court's March 31, 2023 Order and Reasons, Huisman argues that Pharma-Safe has failed to provide any testimony or evidence showing a causal link between Cole's stroke and the crane operation services that Huisman agreed to provide to Oceaneering.[55]

### B. Huisman's Cross-Motion for Summary Judgment

In its Motion for Summary Judgment, Huisman asserts that no material fact exists that would allow Pharma-Safe to recover on its cross-claim for defense and indemnity and that it is entitled to judgment as a matter of law.[56]  Huisman incorporates by reference its Opposition brief to Pharma-Safe's Motion for Summary Judgment, and argues that the Court should enter judgment in Huisman's favor if the Court finds that either: (1) Pharma-Safe is not a member of "Company Group;" or (2) Cole's claims do not "arise out of" and are not "incident to" Huisman's services, as previously argued.[57]  Huisman also asserts that Oceaneering and Huisman have submitted cross-motions for summary judgment regarding whether Huisman's indemnity obligations are defined by the 2013 Mutual Indemnity and Waiver Agreement or by Oceaneering's 2018 Purchase Order Terms and Conditions, the resolution of which could dictate the outcome of the instant motions because

---

[53] *Id*. at p. 3 (quoting *Int'l Marine, LLC v. Integrity Fisheries, Inc.*, 860 F.3d 754, 759 (5th Cir. 2017)) (internal quotation marks omitted).
[54] R. Doc. 203 at p. 3.
[55] *Id*. at p. 4 (*quoting* R. Doc. 189 at pp. 20-21).
[56] R. Doc. 172 at p. 1.
[57] R. Doc. 172-1 at p. 1 (*citing* R. Doc. 139).

Oceaneering's 2018 Purchase Order Terms and Conditions do not extend Huisman's duty to defend and indemnify to third-parties.[58]   Huisman further asserts that Pharma-Safe's cross-claim does not allege that Cole's illness "arises out of or is incident to the services" Huisman agreed to provide, nor does it allege any facts about Cole's illness that would support such a finding.[59]   Huisman claims that it is entitled to judgment under "Rule 12(c)" on that basis alone.[60]

Huisman then directs the Court to several discovery responses in which Pharma-Safe repeatedly denied when asked to "Admit or deny that Plaintiff's alleged illness did not result directly or indirectly from any work he was abord the OCEAN PATRIOT to perform,"[61] and explained in its responses to Interrogatories that, "Plaintiff's work aboard the OCEAN PATRIOT was not the proximate cause [sic] injury/illness in that his claim arise [sic] out of a matter of nature in that he was suffering a stroke."[62]   Huisman asserts that Pharma-Safe repeatedly denied that Cole's alleged injury or illness was caused by crane services performed aboard the M/V OCEAN PATRIOT.[63]   Huisman also points out that Pharma-Safe responded to two interrogatories stating that it has no evidence that Cole's presence aboard the M/V Ocean Patriot caused or contributed to his alleged injuries or that his injuries resulted directly or indirectly from any work he was aboard the vessel to perform.[64] Huisman argues that the cases cited in its Opposition brief to Pharma-Safe's Motion

---

[58] R. Doc. 172-1 at pp. 1-2.
[59] *Id*. at p. 2.
[60] *Id*.
[61] *Id*. at pp. 2-4 (*quoting* R. Doc. 172-3 at pp. 6-8) (Request for Admission Nos. 23, 24, 25, & 27).
[62] R. Doc. 172-1 at pp. 2-4 (*quoting* R. Doc. 172-2 at pp. 4-6) (Interrogatory Nos. 13, 15, 16, 17, & 18).
[63] R. Doc. 172-1 at p. 3 (*quoting* R. Doc. 172-2 at pp. 5 & 6).
[64] R. Doc. 172-1 at pp. 3-4 (*quoting* R. Doc. 172-2 at pp. 2-3).

establish that the "arising out of or incident to" language requires a causal connection of some sort between an injury and a performance to trigger indemnity.   Huisman asserts that, in Pharma-Safe's own words, it is undisputed that Cole's illness "arises out of a matter of nature," was not caused by Cole's work aboard the OCEAN PATRIOT, and was not caused by crane services. [65]   Huisman asserts that interpreting the indemnity provision to encompass an illness under these facts would read the limiting language completely out of existence.   As such, Huisman asserts that it is entitled to judgment as a matter of law on Pharma-Safe's cross-claim.[66]

Pharma-Safe, incorporating the arguments raised in its own Motion, asserts that Huisman's Motion should be denied because the "arises out of or is incident to the Services" language in the indemnity provision is not limited to injuries caused by Huisman's services, as Huisman suggests, and is interpreted broadly under *Fontenot v. Mesa Petroleum Co.* [67]   Pharma-Safe asserts that Huisman is not entitled to judgment on the pleadings under Rule 12(c) because Pharma-Safe alleged in its cross-claim that Cole was injured while Huisman was working for Oceaneering and because the 2013 Mutual Indemnity and Waiver Agreement was not attached to Pharma-Safe's cross-claim or Huisman's Answer.[68]   Pharma-Safe claims that Cole's injuries fall within the indemnity provision because it has alleged that Cole's injury arose while he was working for Huisman when Huisman was providing "services" to

---

[65] R. Doc. 172-1 at pp. 4-5.
[66] *Id.* at p. 5.
[67] R. Doc. 183 at pp. 1 & 5-6 (citing *Fontenot*, 791 F.2d 1207, 1215 (5th Cir. 1986)).
[68] R. Doc. 183 at pp. 2-3 (*citing* R. Doc. 125 at p. 10, ¶ III).

Oceaneering.[69]  Pharma-Safe further asserts that it has never admitted that Cole's injuries did not arise out of or were not incident to Huisman's services, and that it merely admitted that Cole's claim arose out of a matter of nature in that he was suffering a stroke.[70]  Pharma-Safe points out that Huisman never asked in discovery for Pharma-Safe to admit that Cole's injury arose out of Huisman's services, and that it alleged in its cross-claim that Cole suffered a stroke while Huisman was working for Oceaneering.[71]  Pharma-Safe maintains that these allegations are sufficient to establish that Cole's injuries "arise out of or incident to" Huisman's services for purposes of the indemnity clause.[72]

Pharma-Safe then points out that its discovery responses show that it denied that Cole's alleged injury was not proximately caused by crane services, thereby admitting that the injury was caused by crane services, and that it "denied that plaintiff's alleged injury or illness was caused by crane services performed aboard the DSV OCEAN PATRIOT."[73]  Pharma-Safe asserts that these responses show that it has asserted that Cole's injury resulted from the 2021 Purchase Order entered into between Huisman and Oceaneering, which was in effect when Cole was aboard the M/V OCEAN PATRIOT, and that the services provided thereunder proximately caused Cole's injury. [74]  Pharma-Safe claims that Huisman attempts to take advantage of a typographical error in its response to Interrogatory No. 18, which

---

[69] R. Doc. 183 at p. 3 (*citing* R. Doc. 125 at p. 10, ¶ III).
[70] R. Doc. 183 at p. 4.
[71] *Id*. (*citing* R. Doc. 125 at p. 10, ¶ III).
[72] R. Doc. 183 at p. 4.
[73] *Id*. at p. 5 (*quoting* R. Doc. 172-2 at pp. 5 & 6-7).
[74] R. Doc. 183 at pp. 7-8.

should read that, "Plaintiff's work aboard the OCEAN PATRIOT *was* the proximate cause injury/illness [sic] in that his claim arise [sic] out of a matter of nature in that he was suffering a stroke."[75]  Pharma-Safe contends that the fact that it stated in its discovery responses that it did not have evidence to establish causation between Cole's injury and his work aboard the M/V OCEAN PATRIOT does not mean that his injury did not arise out of or was not incident to Huisman's services.[76]  Pharma-Safe argues that it is undisputed that Cole's injury arose while he was aboard the M/V OCEAN PATRIOT pursuant to his employment with Huisman while the 2021 Purchase Order was in effect and "That alone suffices to establish that Cole's injury arose out of or was incident to Huisman's services and does not require there to be evidence of causation under the binding Fifth Circuit precedent on this exact issue."[77]  As such, Pharma-Safe asserts that Huisman's Motion should be denied because either Huisman is contractually obligated to defend and indemnify Pharma-Safe or there is a genuine issue of material fact as to whether Cole's injury arose out of or was incident to Huisman's services.[78]

In response, Huisman maintains that it is entitled to judgment on the pleadings under Rule 12(c) because the 2013 Mutual Indemnity and Waiver Agreement is referenced in Pharma-Safe's cross claim, it is central to Pharma-Safe's cross-claim, and, out of an abundance of caution and in response to Pharma-Safe's Opposition brief, Huisman filed an Answer to Pharma-Safe's cross-claim and

---

[75] *Id.* at p. 7.
[76] *Id.*
[77] *Id.*
[78] *Id.*

attached the 2013 Mutual Indemnity and Waiver Agreement to its Answer.[79] Huisman asserts that the Opposition brief confirms that Pharma-Safe failed to plead, and has no evidence to prove, a necessary element of its claim against Huisman, namely that Cole's illness arises out of or is incident to his work aboard the M/V OCEAN PATRIOT.[80] Huisman maintains that Cole's presence aboard the M/V OCEAN PATRIOT pursuant to his employment with Huisman while the 2013 Mutual Indemnity and Waiver Agreement was in effect is insufficient to trigger the indemnity clause under Fifth Circuit authority.[81] Huisman also asserts that Pharma-Safe cannot avoid summary judgment while contradicting its own discovery responses, which Pharma-Safe has never attempted to amend in order to correct what it now terms a "typographical error" wherein Pharma-Safe admitted that Cole's work did not proximately cause his illness.[82] Huisman also claims that Pharma-Safe did not notify Huisman of any "error" in its discovery responses before filing its Opposition brief, and further asserts that Pharma-Safe's retraction and reversal "makes no sense next to its explanation that 'his claim arises out of matter of nature in that he was suffering a stroke,' which is decidedly distinct from Plaintiff's job duties."[83] While Pharma-Safe attempts to distinguish what Cole's claim arises out of ("a matter of nature") and what Cole's injury arises out of (Huisman's services), Huisman maintains that there is no evidence before the Court of any causal

---

[79] R. Doc. 191 at pp. 1-2, n.3; *See*, R. Doc. 187.
[80] R. Doc. 191 at p. 2 (*citing* R. Doc. 172-2 at pp. 2-3).
[81] R. Doc. 191 at pp. 2-5.
[82] *Id*. at p. 5.
[83] *Id*.

relationship between Cole's injuries and Huisman's services.[84]   Pointing to Cole's responses to written discovery propounded by Oceaneering, Huisman asserts that Cole has made it clear that his alleged injury and claim arise out of the medical services Pharma-Safe provided and in no way "arise out of or are incident to" the services Huisman agreed to provide.[85]

## II.   LEGAL STANDARD

### A.  Rule 12(c) Motion for Judgment on the Pleadings.

Pursuant to Fed. R. Civ. P. 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[86]   "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[87] According to the Fifth Circuit, the standard for deciding a Rule 12(c) motion for judgment on the pleadings "is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[88]   In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable

---

[84] *Id*. at p. 6.

[85] R. Doc. 191 at p. 6 (*quoting* "Rec. Doc. 11, No. 18").  The Court notes that R. Doc. 11 in this matter is a Telephone Status Conference Report from a conference held on December 2, 2021.  *See,* R. Doc. 11. Huisman did not submit a copy of Cole's discovery responses with its Reply brief.

[86] Fed. R. Civ. P. 12(c).

[87] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted).  *See, Addy's Burger, LLC v. Paradigm Investment Group, LLC*, Civ. A. No. 17-2400, 2018 WL 2569928, at *2 (E.D. La. June 4, 2018) (North, M.J.) (citing *Great Plains, supra*).

[88] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).

to the plaintiff.[89]   Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[90]   The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[91]   The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed liberally."[92]

### B. Rule 56 Motion for Summary Judgment.

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[93]   A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[94]   If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can

---

[89] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[90] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[91] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

[92] *Great Plains*, 313 F.3d at 312 (quotation and internal quotation marks omitted).

[93] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).

[94] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

satisfy a reasonable jury that it is entitled to a verdict in its favor.[95]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[96]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[97]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[98]

## III.   ANALYSIS

### A.  Huisman is Not Entitled To Judgment on the Pleadings under Rule 12(c).

At the outset, the Court notes that while Huisman's Motion is styled as a "Motion for Summary Judgment on Cross-Claim by Pharma-Safe, Inc," Huisman asserts, seemingly in passing, and then further in its Reply, that it is entitled to judgment on the pleadings "under Rule 12(c)" because Pharma-Safe's cross-claim fails to allege that Cole's injury "arises out of or is incident to the Services" Huisman agreed to provide, and fails to allege any facts about Cole's injury that would support

---

[95] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[96] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[97] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[98] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

such a finding.[99]  In doing so, however, Huisman in its Motion, and Pharma-Safe in

its Opposition brief, rely extensively upon a document outside the pleadings, namely

the 2013 Mutual Indemnity and Waiver Agreement that contains the indemnity

clause at issue.   Although the Court is normally prohibited from considering

documents beyond the pleadings in this context, the rules governing Rule 12(b)(6)

motions to dismiss apply, and those rules allow the Court to consider documents

outside of the complaint or, in this instance, Pharma-Safe's cross-claim, when they

are: (1) attached to the motion; (2) referenced in the cross-claim; and (3) central to

Pharma-Safe's claims.[100]  The Court finds that the 2013 Mutual Indemnity and

Waiver Agreement does not meet these requirements.   While the 2013 Mutual

Indemnity and Waiver Agreement is referenced in Pharma-Safe's cross-claim and is

central to Pharma-Safe's defense and indemnity claim,[101] it was not attached to

Huisman's Motion wherein Huisman seeks judgment under Rule 12(c).[102]  Huisman

acknowledges same when it states that, "Documents that a defendant attaches to a

motion to dismiss are considered part of the pleadings if they are referred to in the

plaintiff's complaint and are central to [its] claim."[103]  Huisman then asserts that the

2013 Mutual Indemnity and Waiver Agreement is "directly referenced at Paragraphs

III-IV of Pharma-Safe's Cross-Claim and is central to Pharma-Safe's claim," yet

Huisman does not address its failure to attach the 2013 Mutual Indemnity and

---

[99] *See,* R. Doc. 172 & R. Doc. 172-1 at p. 2 ("On that basis alone, judgment on Pharma-Safe's cross claim may be entered under Rule 12(c).").
[100] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[101] R. Doc. 125 at pp. 9-10, ¶¶ I-VI.
[102] *See, generally,* R. Doc. 172.
[103] R. Doc. 191 at p. 1 (quoting *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks omitted).

Waiver Agreement to its Motion.[104]  Huisman has not cited any authority indicating that this Court may consider documents outside of the pleadings that do not fit within the three parameters set forth above.  As such, and because the sole basis of Huisman's argument in favor of obtaining a judgment on the pleadings is that Pharma-Safe failed to allege sufficient facts to show that Cole's injuries "arise out of or [are] incident to" the services Huisman agreed to provide to Oceaneering, the Court finds that Huisman has failed to show that it is entitled to judgment on Pharma-Safe's defense and indemnity cross-claim based upon the pleadings.  Accordingly, the Motion is denied to the extent that Huisman requests a judgment on the pleadings under Rule 12(c).

### B. Huisman is Entitled To Summary Judgment on Pharma-Safe's Cross-Claim for Defense and Indemnity.

1. The 2018 Purchase Order Terms and Conditions apply to Huisman's defense and indemnity obligations to the extent that they do not conflict with the terms of the 2013 Mutual Indemnity and Waiver Agreement.

In determining whether either party is entitled to summary judgment on Pharma-Safe's cross-claim against Huisman for defense and indemnity, the Court first determines whether Huisman's obligations are governed by the 2018 Purchase Order Terms and Conditions or by the 2013 Mutual Indemnity and Waiver Agreement.  The parties seem to agree that the 2013 Mutual Indemnity and Waiver Agreement applies to Huisman's defense and indemnity obligations.[105]  Huisman, however, asserts that this issue is before the Court on cross-motions for summary

---

[104] R. Doc. 191 at p. 1.
[105] R. Doc. 136-1 at p. 4 (*citing* R. Doc. 57); R. Doc. 139 at p. 7.

judgment filed by Huisman and Oceaneering regarding Oceaneering's third-party demand against Huisman for defense and indemnity, and that resolution of that issue could determine the outcome of the instant dispute.[106]  Huisman claims that if the Court determines that Oceaneering's 2018 Terms and Conditions apply, then it is entitled to summary judgment because that document does not extend its defense and indemnity obligation to Oceaneering's subcontractors or contractors.[107]

The Court recently addressed this issue in two separate opinions.  On March 31, 2023, the Court issued an Order and Reasons granting in part and denying in part Huisman's Motion for Judgment on the Pleadings or, Alternatively, Motion for Partial Summary Judgment, granting Huisman summary judgment on Oceaneering's third-party claim for defense and indemnity.[108]  Although the parties disagreed regarding whether Huisman's defense and indemnity obligations were governed by Oceaneering's 2018 Terms and Conditions or the 2013 Mutual Indemnity and Waiver Agreement, the Court determined that it need not reach that issue "because both documents contain the same limiting language in their indemnity provisions," requiring Huisman to indemnify Oceaneering "from any and all suits, claims, losses, costs, damages, expenses . . . or liability . . . arising out of, as a result of or in connection with this Purchase Order or any goods supplied or services rendered hereunder . . . ."[109]  The Court, however, squarely addressed the issue in its August 1, 2023 Order and Reasons denying in part and denying in part, as moot,

---

[106] R. Doc. 139 at pp. 6-7 (*citing* R. Docs. 54 & 57); R. Doc. 172 at pp. 1-2.
[107] R. Doc. 139 at pp. 6-7; R. Doc. 172 at pp. 1-2.
[108] R. Doc. 189.
[109] *Id*. at pp. 14-15 (*quoting* R. Doc. 57-19 at p. 1, ¶ 9; *citing* R. Doc. 57-9 at p. 2, ¶ 2).

Oceaneering's Motion for Summary Judgment on its Cross-Claim Against Huisman, wherein Oceaneering sought summary judgment on its third-party demands against Huisman for defense and indemnity and for breach of contract for failing to procure adequate insurance.[110]  After determining that Oceaneering's arguments regarding its defense and indemnity claim were rendered moot by the Court's March 31, 2023 Order and Reasons, the Court held that Oceaneering's 2018 Purchase Order Terms and Conditions governed Huisman's obligation to procure adequate insurance.[111] The Court further held, however, that based upon a provision in the 2018 Purchase Order Terms and Conditions, its terms only apply to the extent that they do not conflict with the terms of the 2013 Mutual Indemnity and Waiver Agreement.[112]

The Court now finds that its prior ruling applies with equal force to Huisman's defense and indemnity obligations.  Specifically, the Court finds that Huisman's defense and indemnity obligations in this matter are governed by Oceaneering's 2018 Purchase Order Terms and Conditions to the extent that they do not conflict with the defense and indemnity obligations contained in the 2013 Mutual Indemnity and Waiver Agreement.

Turning to the specific provisions in dispute, the 2018 Terms and Conditions contain the following indemnity provision:

> 9. Indemnities.  Seller shall DEFEND, INDEMNIFY AND HOLD HARMLESS Buyer, its parent, affiliates, subsidiaries and their respective officers, directors, employees and agents from any and all suits, claims, losses, costs, damages, expenses (including, but not limited to, all expenses of litigation, court costs, expert witness fees, and

---

[110] R. Doc. 229.

[111] *Id.* at pp. 10-11 & 14-15.

[112] *Id.* at p. 15.

> attorney's fees) or liability . . . of whatsoever nature of kind, whether in contract or in tort or otherwise, whether arising under common law or state or federal statute, or arising out of, as a result of or in connection with this Purchase Order or any goods supplied or services rendered hereunder, and whether or not caused, IN WHOLE OR IN PART, by the negligence . . ., BREACH OF WARRANTY, STRICT LIABILITY or other legal fault of Buyer, EXCEPT TO THE EXTENT ATTRIBUTABLE TO BUYER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.[113]

The 2013 Mutual Indemnity and Waiver Agreement, which refers to Huisman as "Contractor" and refers to Oceaneering as "Company,"[114] contains an indemnity provision that provides, in pertinent part, the following:

> 1. In this Agreement,
>   (a) "Company Group" shall mean Company and its parent, subsidiary and other affiliated companies, its clients and customers, third parties (with respect to third parties, only when Contractor is operating the crane in the course of Company's commercial operations for Company's clients and customers) and their respective contractors (except Contractor Group) and subcontractors . . . .
> . . . .
>
> 2. CONTRACTOR SHALL BE LIABLE AND SHALL RELEASE, INDEMNIFY AND HOLD HARMLESS AND WAIVE ALL RIGHTS OF RECOURSE AGAINST THE COMPANY GROUP, FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS OR CAUSES OF ACTION OF EVERY KIND AND CHARACTER, BROUGHT BY ANY PERSON OR PARTY, FOR INJURY TO, ILLNESS OR DEATH OF ANY MEMBER OF THE CONTRACTOR GROUP OR FOR DAMAGE TO OR LOSS OF PROPERTY OWNED OR LEASED BY THE CONTRACTOR GROUP WHICH INJURY, ILLNESS, DEATH, DAMAGE OR LOSS ARISES OUT OF OR IS INCIDENT TO THE SERVICES.[115]

As highlighted by the parties in their briefs, the 2013 Mutual Indemnity and Waiver Agreement contains a broader defense and indemnity obligation than the 2018 Terms and Conditions, requiring Huisman to defend and indemnify not only Oceaneering,

---

[113] R. Doc. 136-4 at p. 1, ¶ 9.
[114] R. Doc. 136-3 at p. 1, Introductory Paragraph.
[115] R. Doc. 136-3 at p. 2, ¶¶ 1(a) & 2.

but also certain third parties and Oceaneering's contractors and subcontractors. Under a plain reading of the two provisions, the Court finds that the two indemnity provisions are in conflict. As stated earlier, the 2018 Purchase Order Terms and Conditions specify, in paragraph three, "Conflict. If this Purchase Order is made under an existing written contract between Seller and Buyer, the terms of said contract shall prevail to the extent of any conflict."[116] The Court has determined that the 2013 Mutual Indemnity and Waiver Agreement and the 2018 Purchase Order are in conflict. The Court therefore finds that the 2013 Mutual Indemnity and Waiver Agreement's indemnity provisions govern Huisman's defense and indemnity obligations in this matter.

The Court further finds that Pharma-Safe falls within the definition of "Company Group" because it was a contractor or subcontractor of Oceaneering at the time of Cole's alleged injuries. In a prior ruling, this Court determined that Oceaneering, as the owner of the M/V OCEAN PATRIOT, had a non-delegable duty to provide prompt and adequate medical care to its seaman, including Cole.[117] The Court also determined that Oceaneering delegated that duty to Pharma-Safe by contracting with Pharma-Safe on August 27, 2008 "for the supply of specialized medical management services aboard Oceaneering's vessels."[118] Thus, the Court agrees with Pharma-Safe's contention that it was a contractor or subcontractor of

---

[116] R. Doc. 136-4 at p. 1, ¶ 3.
[117] R. Doc. 225 at p. 21 (citing authority).
[118] *Id.* at p. 2 (quotations and internal quotation marks omitted). *See*, R. Doc. 136-7 at Introductory Paragraph.

Oceaneering at the time of Cole's alleged injuries.[119]  In doing so, the Court rejects Huisman's argument that Pharma-Safe is not included in the definition of "Company Group" because Pharma-Safe is a third party and "There is no allegation that at any time relevant to this suit Huisman was 'operating the crane in the course of Company's commercial operations.'"[120]  Huisman's argument ignores the language in the indemnity provision, which specifically includes Oceaneering's "contractors . . . and subcontractors" in the definition of "Company Group," and renders that language superfluous.  As the Court previously explained, the Fifth Circuit has made clear that, "Federal courts sitting in admiralty adhere to the axiom that 'a contract should be interpreted so as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.'"[121]  Thus, the Court finds that Pharma-Safe falls within the definition of "Company Group" set forth in the 2013 Mutual Indemnity and Waiver Agreement.

> 2. Cole's alleged injuries do not arise out of and are not incident to the crane operation services Huisman agreed to provide to Oceaneering.

For the same reasons that the Court previously granted Huisman summary judgment on Oceaneering's third-party demand for defense and indemnity,[122] the Court now finds that Huisman is also entitled to summary judgment on Pharma-Safe's cross-claim for defense and indemnity.  As the Court previously explained, the Fifth Circuit squarely addressed the scope of maritime indemnity provisions in

---

[119] R. Doc. 136-1 at pp. 7-8; R. Doc. 142 at pp. 1-3.
[120] R. Doc. 139.
[121] R. Doc. 229 at pp. 14-15 (quoting *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004)).
[122] R. Doc. 189.

*International Marine, LLC v. Integrity Fisheries, Incorporated*, which involved a similar indemnity provision containing the "arising out of" language.[123]  In *Int'l Marine*, Tesla Offshore, LLC ("Tesla") was tasked with performing a sonar survey in the Gulf of Mexico and contracted with two entities to provide the services: (1) International Marine, LLC and International Offshore Services, LLC ("International"), which provided a tow vessel called the M/V INTERNATIONAL THUNDER; and (2) Integrity Fishers, Inc. ("Integrity"), which was to provide a chase vessel.[124]  However, when Integrity's vessel developed mechanical issues, Integrity substituted a different chase vessel owned and operated by Sea Eagle Fisheries, Inc. called the F/V LADY JOANNA.[125]  During the survey operation, the M/V INTERNATIONAL THUNDER towed a "towfish" owned by Tesla, which was attached to a cable nearly two miles long, emitted sonar signals near the bottom of the ocean, and transmitted the echo of those signals to Tesla equipment on the chase vessel.[126]  Due to technical problems with the towfish, the tow and chase vessels were on a course that brought them closer to the M/V NAUTILUS, which was being used by Shell Offshore, Inc. for drilling operations.[127]  The towfish that was being towed by the M/V INTERNATIONAL THUNDER allided with the mooring line of the M/V NAUTILUS, giving rise to Shell's damage claim against Tesla and International.[128]

---

[123] 860 F.3d 754 (5th Cir. 2017).
[124] *Id.* at 757.
[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] *Id.*

Tesla and International then sought indemnity from Integrity and Sea Eagle, claiming the allision related to the operation of the F/V LADY JOANNA.[129]

The two master service agreements ("MSA's") governing the contractual relationships between Tesla, Integrity, and Sea Eagle required Integrity or Sea Eagle to defend and indemnify Tesla and its contractors for damage to third party property "arising out of or related in any way to the operation of any vessel owned . . . by [Integrity or Sea Eagle] . . . to perform work under this agreement except to the extent such loss, harm, infringement, destruction, or damages is caused by [Tesla's or its contractor's] gross negligence or willful misconduct."[130]  Integrity and Sea Eagle filed motions for summary judgment, and Tesla and International responded with their own cross-motions for summary judgment.[131]  The district court granted summary judgment in favor of Integrity and Sea Eagle, concluding that the damage claims "did not arise out of, and are not related to, the operation of the F/V LADY JOANNA."[132]

On appeal, the Fifth Circuit affirmed, finding that the operation of the F/V LADY JOANNA was independent of the negligent conduct that caused damage to the M/V NAUTILUS.  The Fifth Circuit held that, "Under federal maritime law, an indemnity contract covers losses within the contemplation of the parties but not those which are 'neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity

---

[129] *Id*. at 757-58.
[130] *Id*. at 758 (internal quotation marks omitted).
[131] *Id*.
[132] *Id*.

coverage.'"[133]  The Fifth Circuit explained that, "We look to the contract as a whole and can only look beyond the contract if there is an ambiguity."[134]  The Fifth Circuit recognized that, "[W]e have broadly construed language identical or similar to the 'arising in connection herewith' language in [the agreement at issue] to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract."[135]  The Fifth Circuit cautioned that, "When one party's negligent contractual performance causes third party property damage independent of the alleged indemnitor's contractual performance, indemnity is usually not required absent a clear indication that the parties agreed to such an unusual undertaking."[136]

The Fifth Circuit in *Int'l Marine* then reviewed its prior holding in *Marathon Pipe Line Co. v. M/V Sea Level II*, and held that, like in *Marathon Pipe*, Tesla and International's negligence, and the resulting damage to the NAUTILUS, was independent of the operation of the F/V LADY JOANNA.[137]  The Fifth Circuit held that the principal activity of the contract between Tesla and Integrity/Sea Eagle was for Integrity/Sea Eagle to operate the F/V LADY JOANNA as a chase vessel, and that, "The MSAs are clear that the NAUTILUS's damage must relate to or arise out of the operation of the JOANNA before an indemnity obligation arises."[138]  The Fifth Circuit

---

[133] *Id.* at 760 (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

[134] *Int'l Marine*, 860 F.3d at 759 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).

[135] *Int'l Marine*, 860 F.3d at 759 (quoting *Fontenot*, 791 F.2d at 1214) (internal quotation marks omitted).

[136] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986)).

[137] *Int'l Marine*, 860 F.3d at 760.

[138] *Id.*

concluded that, "Nothing about the JOANNA's successful operation as a chase vessel . . . related to Tesla's decisions to redeploy the towfish near the NAUTILUS and take the route back toward the grid that caused an allision with a submerged mooring line."[139]

The court  found that the "undisputed evidence" showed that Tesla and International "were solely responsible" for deploying and positioning the towfish and choosing the direction in which it would travel, and that the F/V LADY JOANNA's involvement in the sonar survey did not cause the accident and did not contribute to Tesla's and International's decision to drive the towfish across the M/V NAUTILUS's mooring line.[140]  The Fifth Circuit held that, "Indemnity is not owed merely because Tesla and International were negligent during the survey, in the absence of the requisite connection to the JOANNA's operation."[141]  The Fifth Circuit found that while the F/V LADY JOANNA was still in operation carrying out the joint sonar survey and in position over the towfish at the time of the allision, "its indisputably successful operation had no bearing on the decision to redeploy the towfish near the NAUTILUS and cross the NAUTILUS's mooring line."[142]  The court held that, "Because the summary judgment evidence supports only the conclusion that the JOANNA's operation made no contribution to the negligent act causing the NAUTILUS's damages, indemnity is not owed under the MSA's."[143]  The Fifth Circuit

---

[139] *Id*.
[140] *Id*
[141] *Id*.
[142] *Id*.
[143] *Id*. at 760-61.

then concluded that, "To be clear, we continue to subscribe to the general rule articulated in *Fontenot* that indemnity agreements containing language such as 'arising out of' should be read broadly."[144]  The Fifth Circuit further held that, "It is only when the alleged indemnitor's contractual performance is *completely independent* of another party's negligent act that caused damage that we apply a limitation to this general rule."[145]

Applying *Int'l Marine* to the facts of this case, the Court finds that Pharma-Safe has failed to show that it is entitled to summary judgment on its cross-claim against Huisman for defense and indemnity.  The Court further finds that Huisman has shown that it is entitled to summary judgment on Pharma-Safe's cross-claim and that there is no material in fact in dispute regarding whether  Cole's stroke "arose out of" or "is incident to" the crane operation services for which Huisman conceivably agreed to indemnify Oceaneering and its contractors and subcontractors.  The Fifth Circuit has repeatedly held that the "arising under" language at issue in the indemnity provision should be "broadly construed . . . to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract."[146]  Pharma-Safe, however, has failed to direct the Court to any evidence or legal authority suggesting that a stroke suffered by a seaman while aboard a vessel

---

[144] *Id*. at 761 (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)).

[145] *Int'l Marine,* 860 F.3d at 761 (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986)) (emphasis in original).

[146] *Int'l Marine,* 860 F.3d at 759 (quoting *Fontenot*, 791 F.2d at 1214) (internal quotation marks omitted).

at sea constitutes an activity "reasonably incident or anticipated by the principal activity of the contract," which, in this case, is crane operation services.

Instead, Pharma-Safe asserts, just as Oceaneering did in its motion for summary judgment, that under *Fontenot v. Mesa Petroleum Co.*, the fact that Cole's injury arose while he was aboard the M/V OCEAN PATRIOT while the 2021 Purchase Order between Oceaneering and Huisman was in effect is sufficient to establish that Cole's injury arose out of or was incident to the services Huisman agreed to provide to Oceaneering.[147] The Fifth Circuit flatly rejected that argument in *Marathon Pipe*, concluding that, "This view of the contract, however, would have us read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on TETCO's pipeline."[148] The Fifth Circuit in *Marathon Pipe* reasoned that, "The contract language in question, while broad, cannot be read in a vacuum to apply to any situation for which a colorable argument could be made that loss of property was somehow related to Oceanonics' services under the contract."[149] This Court follows the Fifth Circuit's guidance that the "arising out of" language in an indemnity provision "is not limitless."[150]

The Court reaches the same conclusion in this case. Like Oceaneering did,[151] Pharma-Safe asks this Court to take the untenable position of ignoring the "ARISES

---

[147] R. Doc. 183 at pp. 3, 4, & 7.  *See,* R. Doc. 136-1 at pp. 8-9 & 10-11; R. Doc. 142 at pp. 3 & 7; R. Doc. 183 at pp. 6-7.  *See also,* R. Doc. 61 at pp. 2, 7-8, & 8 (Oceaneering's Opposition brief to Huisman's Motion for Judgment on the Pleadings or, Alternatively, Motion for Partial Summary Judgment).
[148] *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986).
[149] *Id*.
[150] *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591).
[151] *See*, R. Doc. 61 at p. 2.

OUT OF OR IS INCIDENT TO THE SERVICES" language contained in the indemnity provision and find that any injury suffered by Cole while aboard the M/V OCEAN PATRIOT is covered by the indemnity provision. The Court declines that invitation, which runs contrary to clear Fifth Circuit authority, as set forth above. Relying upon that authority, namely *Marathon Pipe* and *Int'l Marine*, which Pharma-Safe curiously did not address in its Motion, the Court rejects as completely baseless Pharma-Safe's contention that Cole's stroke arose out of his crane operating services merely because he was on the M/V OCEAN PATRIOT at the time it occurred.

The Court further agrees with Huisman that the Fifth Circuit requires a causal connection between Cole's stroke and the services that Huisman agreed to provide to Oceaneering under the 2021 Purchase Order.[152] As Huisman points out, Pharma-Safe did not allege in its cross-claim that Cole's stroke was caused by his crane operator duties.[153] Pharma-Safe has also failed to produce any evidence showing that Cole's crane operator duties caused or contributed to his stroke. Huisman, on the other hand, has submitted evidence indicating that Pharma-Safe does not dispute that Cole's stroke was not caused by his crane operator duties. Specifically, Huisman propounded a request for admission asking Pharma-Safe to admit or deny that Cole's illness or injury was not proximately caused by crane services performed aboard the M/V OCEAN PATRIOT, and Pharma-Safe provided the following response:

---

[152] *See, Int'l Marine*, 860 F.3d at 761 (citing *Marathon Pipe,* 806 F.2d at 592) ("Indemnity is not owed merely because Tesla and International were negligent during the survey, in the absence of the requisite connection to the JOANNA's operation."); *Marathon Pipe*, 806 F.2d at 592 ("The district court's finding, which we affirm, that Oceanonics' involvement in such an effort–marking all pipelines–did not cause the accident and did not contribute to Turner's decision to drop the anchor across Marathon's pipeline also ends the viability of this position.").
[153] R. Doc. 125 at pp. 9-10. *See*, R. Doc. 172-1 at p. 2.

"Objection. This request seeks information outside the knowledge of Pharma-Safe. Subject to and without waiving the foregoing, denied." [154]   In an interrogatory, Pharma-Safe was asked to "state any and all bases" for a response to that request for admission that was anything other than "admit," and Pharma-Safe responded as follows: "Objection. This request seeks information outside the knowledge of Pharma-Safe. Subject to and without waiving the foregoing, *it is denied that plaintiff's alleged injury or illness was caused by crane services performed aboard the DSV OCEAN PATRIOT.*"[155]

In response to another request for admission, Pharma-Safe similarly denied that Cole's alleged illness or injury "did not result directly or indirectly from any work he was onboard the OCEAN PATRIOT to perform."[156]   Through an interrogatory, Pharma-Safe was asked to provide the basis for that response, and Pharma-Safe responded that, "Plaintiff's work aboard the OCEAN PATRIOT *was not* the proximate cause injury/illness [sic] in that his claim arise [sic] out of a matter of nature in that he was suffering a stroke."[157]   Pharma-Safe also denied that Cole's claims arise out of the provision of medical services by Pharma-Safe and its agents, denied that Cole's alleged illness or injury was not proximately caused by his presence aboard the M/V OCEAN PATRIOT, and denied that Cole would have experienced the same illness or injury on February 21, 2021 if he had not been aboard the M/V OCEAN PATRIOT on

---

[154] R. Doc. 172-3 at pp. 6-7 (Response to Request for Admission No. 23).
[155] R. Doc. 172-2 at p. 5 (Response to Interrogatory No. 15) (emphasis added).
[156] R. Doc. 172-3 at pp. 7-8 (Response to Request for Admission No. 27).
[157] R. Doc. 172-2 at p. 6 (Response to Interrogatory No. 18) (emphasis added).

that date.[158]  When asked, in an interrogatory, to state the basis for these responses, Pharma-Safe responded that, "Plaintiff's claim arise out [sic] of a matter of nature in that he was suffering a stroke."[159]  Additionally, when asked through interrogatories to identify and describe any evidence that Cole's presence aboard the M/V OCEAN PATRIOT caused or contributed to his alleged injuries or that Cole's alleged injuries resulted directly or indirectly from any work he was onboard the M/V OCEAN PATRIOT to perform, Pharma-Safe responded with "None."[160]

Although Pharma-Safe tries to minimize the impact of its discovery responses, the Court finds that the responses confirm that there is no evidence before the Court that Cole's job duties as a crane operator aboard the M/V OCEAN PATRIOT, or the crane operation services Huisman agreed to provide to Oceaneering, caused or contributed to his stroke.  The Court rejects Pharma-Safe's attempt to draw a distinction between its discovery responses regarding the source of Cole's injury and the source of Cole's claim, as Cole's claims are based upon his injury.  While Pharma-Safe claims that Huisman "never once asked in discovery for Pharma-Safe to admit or state that Cole's injury arose out of Huisman's services," Pharma-Safe ignores the fact that it was specifically asked in Huisman's *first* interrogatory to "State all bases upon which you contend that Huisman owes defense and/or indemnity to Oceaneering and/or Pharma-Safe for Plaintiff's alleged injuries."[161]  Pharma-Safe responded to

---

[158] R. Doc. 172-3 at pp. 3 & 6-7 (Responses to Request for Admission Nos. 9, 25, & 26).
[159] R. Doc. 172-2 at pp. 4-6 (Responses to Interrogatory Nos. 13, 16, & 17).
[160] *Id*. at pp. 2-3 (Responses to Interrogatory Nos. 5 & 6).
[161] *Id*. at p. 1.

that interrogatory by stating the following:

> When plaintiff Cole allegedly suffered a stroke aboard the OCEAN PATRIOT in February, 2021, Huisman was working for Oceaneering pursuant to a Purchase Order and Mutual Indemnity and Waiver Agreement.  In the MIWA, Huisman agreed to defend and indemnify Oceaneering and its "respective contractors" (a/k/a "Company Group") for injury/illness claims suffered by Huisman's employees which included plaintiff Cole.  At all material times, Pharma-Safe was a "contractor" working for Oceaneering and, consequently, was part of Oceaneering's Company Group.  therefore, [sic] Huisman is obligated to defend and indemnify Pharma-Safe for the claims of Cole.[162]

Noticeably absent from Pharma-Safe's answer is any suggestion that Cole's alleged injuries arose from or were incident to his work as a crane operator and, by extension, to Huisman's crane operation services.  Thus, the Court finds that it is Pharma-Safe, not Huisman, whose arguments are disingenuous.[163]

The Court likewise finds disingenuous Pharma-Safe's assertion that one of its discovery responses, in which it stated that, "Plaintiff's work aboard the OCEAN PATRIOT was not the proximate cause injury/illness [sic] in that his claim arise [sic] out of a matter of nature in that he was suffering a stroke," contains a typographical error and should read that Cole's work aboard the M/V OCEAN PATRIOT "was the proximate cause" of his injury.[164]  There is no evidence before the Court indicating that Pharma-Safe has made any attempt to amend its answer to that interrogatory. Moreover, Pharma-Safe has failed to offer any evidence that Cole's injuries arose out of or were incident to his work as a crane operator aboard the M/V OCEAN PATRIOT.

---

[162] R. Doc. 172-2 at pp. 1-2.
[163] *See*, R. Doc. 183 at p. 4 ("Second, Huisman's argument that Pharma-Safe never indicated in discovery that Cole's injury arose out of the services Huisman agreed to provide is disingenuous.").
[164] R. Doc. 183 at pp. 6-7; *See*, R. Doc. 172-2 at p. 6 (Response to Interrogatory No. 18).

The Court finds that Pharma-Safe's assertion that Cole's symptoms may have been "exacerbated and exaggerated" while he performed work as a crane operator on February 21, 2021[165] ignores the fact that Cole has alleged that his symptoms began four days earlier on or around the night of February 17, 2021, and his allegations that the symptoms grew progressively worse due to the repeated misdiagnoses by the onboard medic and the shoreside physician.[166]  Because there is no evidence before the Court that Cole's stroke was caused by anything related to his job as a crane operator aboard the M/V OCEAN PATRIOT or the services Huisman agreed to provide to Oceaneering, the Court finds that Huisman is entitled to summary judgment on Pharma-Safe's cross-claim for defense and indemnity.

Additionally, in *Marathon Pipe* and *Int'l Marine*, the Fifth Circuit made clear that, "When one party's negligent contractual performance causes third party property damage independent of the alleged indemnitor's contractual performance, indemnity is usually not required absent a clear indication that the parties agreed to such an unusual undertaking."[167]  Here, as in *Marathon Pipe* and *Int'l Marine*, Cole's stroke and the alleged negligence of the onboard medic and shoreside physician who misdiagnosed his stroke as seasickness, a mouth abscess, and/or COVID-19 occurred independently of Huisman's provision of crane operator services.  There is no evidence before the Court indicating that Oceaneering sought, and Huisman agreed, to such an "unusual undertaking" of Huisman agreeing to indemnify Oceaneering and its

---

[165] R. Doc. 202.
[166] R. Doc. 19 at ¶¶ 9 17.
[167] *Int'l Marine, LLC v. Integrity Fisheries, Inc.*, 860 F.3d 754, 759 (5th Cir. 2017) (citing *Marathon Pipe Line Co. v. M/V Sea Level II*, 806 F.2d 585, 591 (5th Cir. 1986)).

contractors and subcontractors for *any* injury or illness that Cole might experience while aboard the M/V OCEAN PATRIOT, regardless of its connection to his duties as a crane operator and regardless of whether one of Oceaneering's other contractors or subcontractors caused or contributed to the injury or illness. The Fifth Circuit has expressly "refused to extend the reach of an indemnity provision beyond the intent of the parties to the agreement where the undertaking urged would create 'an unusual and surprising obligation.'"[168] The Court finds that obligating Huisman to provide a defense and indemnity to Pharma-Safe for Cole's claims stemming from a stroke that he alleges was caused by inadequate medical care provided by Pharma-Safe's onboard medic and offshore physician would create such an "unusual and surprising obligation."

As in *Marathon Pipe,* this Court declines to characterize Cole's stroke as "ARIS[ING] OUT OF OR [] INCIDENT TO THE SERVICES" that Huisman agreed to provide to Oceaneering. While Pharma-Safe, like Oceaneering, claims that, "Although Cole was not actively working as a crane operator when his alleged symptoms allegedly began, that does not allow Huisman to avoid the defense and indemnity obligations. Such a result would render many defense and indemnity obligations meaningless," [169] Pharma-Safe cites no legal authority to support its assertion. To the extent Pharma-Safe may be relying upon *Fontenot* for this position, the Court has already pointed

---

[168] *Marathon Pipe*, 806 F.2d at 591 (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)).

[169] R. Doc. 136-1 at pp. 10-11. *See*, R. Doc. 61 at p. 8 ("Huisman cannot avoid its contractual responsibilities simply because Plaintiff was not performing the specific services contemplated by the Purchase Order at the moment of injury, as such attempts to do so have been rejected by the Fifth Circuit.").

out that the Fifth Circuit explicitly rejected such a construction of *Fontenot* in *Marathon Pipe*, and reaffirmed that position in *Int'l Marine*.[170]  Accordingly, Pharma-Safe has failed to raise a genuine issue of material fact as to whether Cole's stroke arose out of or incident to his crane operator services aboard the M/V OCEAN PATRIOT, and the Court finds that Huisman is entitled to summary judgment on Pharma-Safe's cross-claim for defense and indemnity.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Pharma-Safe Industrial Services, Inc.'s Motion for Summary Judgment[171] is **DENIED** and Huisman's Cross-Motion for Summary Judgment on Cross-Claim by Pharma-Safe[172] is **GRANTED.** Pharma-Safe's cross-claim against Huisman for defense and indemnity is hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, August 22, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[170] *See*, *Int'l Marine*, 860 F.3d at 759 (citing *Marathon Pipe*, 806 F.2d at 591 (rejecting a construction that would "read the 'occurring in connection with' language to cover a limitless number of unforeseeable casualties that might have occurred during the pendency of the construction work on [the company's] pipeline.")) (internal quotation marks omitted).
[171] R. Doc. 136.
[172] R. Doc. 172.